IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| CALEB HERNANDEZ & JASON | § | |
| WHALEY, RELATORS; ET AL.; | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:16-CV-00432-JRG |
| | § | |
| TEAM FINANCE, L.L.C., TEAM | § | |
| HEALTH, INC., TEAM HEALTH | § | |
| HOLDINGS, INC., AMERITEAM | § | |
| SERVICES, L.L.C., | § | |
| | § | |
| *Defendants*. | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Team Health Holdings, Inc., Team Finance, LLC, Team Health, Inc., and AmeriTeam Services, LLC's Motion to Dismiss Relators' First Amended Complaint Based on Improper Venue Pursuant to Fed. R. Civ. P. 12(b)(3), or in the Alternative, to Transfer Venue (the "Motion"). (Dkt. No. 38.) The Court held an evidentiary hearing on the Motion on July 24, 2019. (Dkt. No. 73.) Having considered the parties' briefing, the record evidence, and the relevant authorities, the Court **DENIES** the Motion for the reasons described herein.

## I. BACKGROUND

On April 25, 2016, Relators Caleb S. Hernandez and Jason W. Whaley (collectively, "Relators") filed suit against Defendants Team Health Holdings, Inc. ("THHI"), Team Finance, LLC ("TF"), and Team Health, Inc. ("THI") under the *qui tam* provisions of the Federal False Claims Act, 31 US.C. §§3729 *et seq.* ("FCA"), and analogous state statutes. (Dkt. No. 1

(complaint).)[1]  On June 28, 2018, the United States of America and the Plaintiff state governments declined to intervene.  (Dkt. No. 20.)  Relators subsequently amended the Complaint on November 12, 2018 to add AmeriTeam Services, LLC ("AmeriTeam") as a defendant to the action.  (Dkt. No. 33 (First Amended Complaint).)

The following introductory paragraphs from Relators' First Amended Complaint succinctly summarize the respective parties in this action as well as Relators' key allegations against the Defendants:

> 1. TeamHealth is an emergency room management company that operates hospital emergency departments across the nation.   TeamHealth provides staffing, operation, and billing services to emergency departments as an outside contractor, promising to increase efficiency and profitability in exchange for a share of the emergency departments' earnings.  TeamHealth emergency departments frequently render healthcare services to beneficiaries of public healthcare programs administered by the Centers for Medicare and Medicaid Services ("CMS") and the Plaintiff States.  This case is about two fraudulent schemes (the "Schemes") that TeamHealth has used for years to obtain grossly overpaid reimbursements from these public healthcare programs.

> 2. **The first Scheme is the "Mid-Level Scheme."**  Under the Mid-Level Scheme, TeamHealth overbills for services provided by "mid-level" practitioners. The term "mid-level" refers to non-physician healthcare providers, such as Physician Assistants ("PAs") and Nurse Practitioners ("NPs").   Under CMS rules, a mid-level's services are reimbursed at 85% of the standard physician rate, while services rendered by a physician are reimbursed at 100% of the standard physician rate. . . .

> 3. . . . TeamHealth—through its billing policies, procedures, and protocols (which include training and guidelines), and through its coordinated operation and influence over its subsidiaries and affiliated professional entities—systematically submits claims for mid-level services. . . triggering the 100% rate when in fact the 85% rate applied.  TeamHealth does this intentionally and has done so for years. . . . .

> 7. **The second Scheme is the "Critical Care Scheme."** This Scheme is a classic upcoding scheme.  Under the Critical Care Scheme, TeamHealth bills CMS for "critical care"—the highest level of emergency treatment—when in fact critical

---

[1] Relators sued Defendants on behalf of the following state governments: Connecticut, Florida, Georgia, Indiana, Louisiana, Massachusetts, Tennessee, and Texas.  (Dkt. Nos. 1, 33.)

care services were not rendered and/or were not medically necessary, thereby submitting false claims through fraudulent billing. . . . .

10. Relator CALEB S. HERNANDEZ, D.O., is a citizen of the United States of America and is a resident of the State of New York. . . . He brings this *qui tam* action based upon direct and unique information he obtained during his employment at the following hospital emergency departments managed and/or operated by TeamHealth: the North Colorado Medical Center in Greely, Colorado (from 2011 to 2015); Sterling Regional Medical Center in Sterling, Colorado (from 2013 to 2015); and Juan Luis Phillipe Hospital in St. Croix, United States Virgin Islands (in 2010). . . .

11. Relator JASON W. WHALEY, PA-C, is a citizen of the United States of America and is a resident of the State of Colorado. . . . He brings this *qui tam* action based upon direct and unique information obtained during his employment at the emergency department at North Colorado Medical Center, located in Greeley, Colorado (from 2011 to 2013), which was and is operated and/or managed by TeamHealth. . . .

12. Defendants are a system of affiliated entities operating as and collectively referred to herein as "TeamHealth." TeamHealth is a national healthcare practice management company that is one of the largest suppliers of outsourced physician staffing and administrative services to hospitals in the United States. TeamHealth operates in at least forty-seven states and employs at least 13,000 healthcare professionals.

13. Defendant, TEAM HEALTH HOLDINGS, INC., is a corporation that is organized under the laws of Delaware and has its principal place of business in Knoxville, Tennessee. Team Health Holdings, Inc. was acquired in 2017 in a $6.1 Billion take-private deal. Team Health Holdings, Inc. professes to be a holding company that conducts no operations, with no employees. Further, Team Health Holdings, Inc. claims its only material asset(s) to be its membership interests in Team Finance, L.L.C.

14. Defendant, TEAM FINANCE, L.L.C. is a subsidiary of Team Health Holdings, Inc. that is organized under the laws of Delaware. Because Team Finance, L.L.C. takes the citizenship of its member, Team Health Holdings, Inc., it is likewise a citizen of the States of Delaware and Tennessee.

15. Defendant, TEAM HEALTH, INC., is a subsidiary of Defendant Team Health Holdings, Inc., and does business under the name of "TEAMHEALTH." Team Health, Inc. is a Delaware corporation with its principle place of business at 265 Brookview Centre Way, Suite 400, Knoxville, Tennessee. Although—as of October of 2014—it has claimed to be a holding company that conducts no operations and has no employees, Team Health, Inc., alone or through its

subsidiaries, has carried out operations and employed employees within the TeamHealth system.

16. Defendant, AMERITEAM SERVICES, L.L.C., is [a] Tennessee Limited Liability Company and is an administrative and support services subsidiary of Defendant Team Health Holdings, Inc., which employs officers and other TeamHealth affiliated representatives, including those who are members of the referenced departments, committees and TeamHealth's purported [FCA] Compliance Advisory Group. Its principal place of business and mailing address is 265 BROOKVIEW CENTRE WAY, STE 400 KNOXVILLE, TN 37919-4052 USA—the same address as the other TeamHealth defendants. It does business under the name of "TEAMHEALTH." It was created in Tennessee in October 2014 and reportedly has one member, Tennessee Parent, Inc., which Blackstone created to facilitate the take-private deal.

(Dkt. No. 33 ¶¶ 1–16 (emphasis in original).)

## II. DISCUSSION

### A. Venue Is Proper in this District

Defendants move to dismiss Relators' First Amended Complaint for improper venue under Federal Rule of Civil Procedure 12(b)(3). (Dkt. No. 38.) In resolving a motion to dismiss for improper venue, the Court may consider both the complaint and evidence outside the complaint. *See Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 493 (5th Cir. 2018) ("[T]he court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments.") (quoting *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 237 (5th Cir. 2009)); *Kranos IP Corp. v. Riddell, Inc.*, No. 2:17-cv-00443, 2017 WL 3704762, at *2 (E.D. Tex. Aug. 28, 2017); *see also* 14D Wright & Miller, Federal Practice & Procedure § 3826 (4th ed. 2017). The Court must accept all well-pleaded and uncontroverted facts as true and resolve any factual conflicts in the plaintiff's favor. *See Trois*, 882 F. 3d at 492–93; *but see U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) ("If such an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls."). "Once a defendant raises improper venue by motion, 'the burden of

sustaining venue will be on [the] Plaintiff.'" *Rex Real Estate I, L.P. v. Rex Real Easter Exchange, Inc.*, No. 4:18-cv-00371, 2019 WL 2524830, at *1 (E.D. Tex. June 19, 2019) (internal citation omitted); *see also Gutierrez v. Drill Cuttings Disposal Co., L.L.C.*, 319 F. Supp. 3d 856, 861 (W.D. Tex. 2018) ("Once challenged, the burden of sustaining venue lies with the plaintiff.").

An action under the FCA "may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." 31 U.S.C. § 3732(a); *see also* 28 U.S.C. § 1391(a)(1) ("*Except as otherwise provided by law*, this section shall govern the venue of all civil actions brought in the district courts of the United States.") (emphasis added); *United States ex rel Cook-Reska v. Cmty. Health Sys, Inc.*, No. H-09-1565, 2014 WL 5500710, at *4 (S.D. Tex. Oct. 30, 2014) (identifying 31 U.S.C. § 3732(a) as the venue provision for the FCA). Relators allege that venue is proper because "(a) Defendants transact business here; (b) acts proscribed by the FCA occurred here; and/or (c) Defendants reside here." (Dkt. No. 53 at 1.) Relators rely on, *inter alia*, the following factual allegations to support each of these contentions:

- "TeamHealth is an emergency room management company that operates hospital emergency departments across the nation. . . . TeamHealth emergency departments frequently render healthcare services to beneficiaries of public healthcare programs administered by the Centers for Medicare and Medicaid Services ('CMS') and the Plaintiff States." (Dkt. No. 33 ¶ 1.)

- "Specifically, during the relevant time period, TeamHealth has transacted business with and/or on behalf of at least the following hospital emergency departments located within the Eastern District of Texas: (1) the Christus St. Mary Hospital in Port Arthur, Texas; (2) the Longview Regional Hospital in Longview, Texas; and (3) Methodist Urgent Care in The Colony, Texas." (*Id.* ¶ 21.)

- "TeamHealth—through its billing policies, procedures, and protocols (which include training and guidelines), and through its coordinated operation and influence over its subsidiaries and affiliated professional entities—systematically submits claims for mid-level services under various physicians' NPIs (as assigning charts to a physician by a midlevel is usually based on shift assignments and how shifts overlap), triggering the 100% rate when in fact the 85% rate applied.

TeamHealth does this intentionally and has done so for years." (*Id.* ¶ 3; *see also id.* ¶¶ 39–74 (supporting factual allegations).)

- "TeamHealth systemically perpetrates the Mid-Level Scheme nationwide and extends to and through all TeamHealth subsidiaries and affiliated entities. It is operated, administered, and supported throughout all of the Team Health Holdings, Inc. subsidiaries and affiliated entities through the subsidiaries Team Health Inc. and AmeriTeam Services LLC and their subsidiaries. Relators observed the exact same policies regarding Mid-Level charting and physician countersignatures at every TeamHealth emergency department that employed them. The uniform nature of the Mid-Level Scheme is also corroborated by former TeamHealth employees, including CW1 and CW2." (*Id.* ¶ 73.)

- "TeamHealth bills CMS for 'critical care'—the highest level of emergency treatment—when in fact critical care services were not rendered and/or were not medically necessary, thereby submitting false claims through fraudulent billing. . . ." (*Id.* ¶¶ 7–8; *see also id.* ¶¶ 39–43, 75–95 (supporting factual allegations).)

- "Relators observed the same policies with respect to critical care at every TeamHealth emergency department they have worked in . . . It is evident that the Critical Care Scheme is a company-wide policy. National and regional TeamHealth administrators often send emails to TeamHealth physicians and Mid-Levels instructing and reminding them of TeamHealth's critical care policy." (*Id.* ¶¶ 93, 95.)

Relators argue that since the FCA prohibits anyone who "knowingly . . . *causes* to be made . . . a false record or statement material to a false or fraudulent claim," (Dkt. No. 53 at 9 (emphasis in original and quoting 31 U.S.C. § 3732(a)(1)(B)), FCA liability attaches to all who participated in the alleged scheme "without regard to 'who actually submitted the claim forms'" to the government for reimbursement. (*Id.* (quoting *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 378 (5th Cir. 2004).) Relators contend that the foregoing allegations demonstrate that Defendants caused TeamHealth-affiliated healthcare providers to falsify medical records—both in this District, *e.g.*, Longview Regional Hospital, and nationwide—that were then used to generate bills submitted for reimbursement to the government. (*Id.* at 10, 12.) As a result, Relators submit

that venue is proper because they have plead sufficient facts showing that an "an[] act proscribed" by the FCA occurred here and that Defendants "transact business" here.  (*Id.* at 12, 19.)[2]

Relators further argue that Defendants have failed to controvert any of these allegations, and that the parties' venue discovery only reinforces this conclusion.  (*Id.* at 10–11, 15–19.)  To support venue on the basis that "any act proscribed" by the FCA occurred here, Relator Hernandez submitted a declaration, in which he discusses (1) "[the] ways in which Defendants required Relators to commit acts that resulted in the false records for the Mid-Level [] and Critical Care [Schemes];" (*id.* at 11), (2) "acts [he] was required to perform at TeamHealth's direction at the local or facility level;" (*id.* at 12 n.7), and (3) "the many reasons why [he] believes and concludes that TeamHealth directs the same acts and conduct nationwide, including in this district."  (*id.*) (*See also* Dkt. No. 53-3 (Relator Hernandez's Declaration in support of Relator's Opposition to Defendants' Motion).)

Relators also contend that venue discovery uncovered facts showing that at least one of the Defendants "transacts business" in this District.  (*Id.* at 12–19.)   Relators specifically identify, *inter alia*, the following evidence: (1) TeamHealth recruits emergency physicians in Longview, Texas, (Dkt. Nos. 73-7 (LinkedIn profile of TeamHealth recruiter for Texas), 73-8 (job posting for TeamHealth emergency physician in Longview, Texas); 73-13 (job posting for TeamHealth post-acute care physician in Longview, Texas)); (2) Health Care Financial Services, LLC ("HCFS"), a TeamHealth subsidiary, coded and billed for emergency department services rendered at Longview Regional Hospital, (Dkt. No. 73-3 ¶ 9 (Declaration of Paula Dearolf, Executive Vice

---

[2] Relators also argue that venue is proper because Defendants "reside" in this District because "Defendants have transacted business and . . . violated the FCA in this district."  (Dkt. No. 53 at 22.)  According to Relators, Defendants concede residency in this District because they failed to formally move under Federal Rule of Civil Procedure 12(b)(2).  (*Id.* at 19–20.)  Since the Court finds that venue is otherwise proper, the Court need not address these alternative arguments.

President of Revenue Cycle Operations at HCFS, in support of Defendants' Motion), Dkt. No. 53 at 15–17 (citing deposition transcript of John Stair)); (3) John Stair, an executive employed by Defendant AmeriTeam, serves as secretary for HCFS, (Dkt. No. 73-10 (Texas Franchise Tax Public Information Report for HCFS)); (4) TeamHealth requires all affiliated clinicians to complete TeamHealth's compliance training nationwide, (Dkt. No. 53 at 17 (citing deposition transcript of John Stair)); and (5) TeamHealth-affiliated entities in Texas, such as physician practice groups, report to executives at AmeriTeam, (*id.* at 18 (citing deposition transcript of John Stair)).

Defendants disagree and assert that venue is improper in this District. (Dkt. No. 38.)[3] Specifically, Defendants argue that: (1) each Defendant is a corporate resident of either Delaware or Tennessee, and each maintains a principle place of business in Tennessee, (*id.* at 8); (2) Defendants THHI and TF are holding companies and conduct no business activities, (*id.* at 6); (3) none of the Defendants have any contracts for the provision of emergency department clinician staffing or other services with any healthcare facilities in this District, (*id.* at 6–7; Dkt. No. 56 at 2–3); (4) non-party Quantum Plus, LLC ("Quantum") provides staffing and management services for Longview Regional Medical Center and none of the Defendants have any role in that contract, (Dkt. No. 56 at 3); and (5) non-party HCFS is the billing subsidiary for TeamHealth, and conducts all coding and billing for any services rendered in this District in one of its three centers in Tennessee, Ohio, or Florida, (Dkt. No. 38 at 4–5; Dkt. No. 56 at 3, 5, 7–9).

Defendants also argue that the activities of Quantum or HCFS cannot be attributed to Defendants to establish venue. (Dkt. No. 56 at 3–7.) According to Defendants, Relators have

---

[3] Defendants incorrectly argued that venue was improper under 28 U.S.C. § 1391. (Dkt. No. 38.) However, Defendants did properly analyze venue under the correct statute in their reply brief and at the evidentiary hearing held on July 24, 2019. (Dkt. Nos. 56, 73.)

failed to show that Defendants are liable under a veil piercing or an alter ego theory, and evidence of "common board members, use of a website, a universal corporate Code of Conduct and a single, conclusory statement that AmeriTeam 'manages' affiliated corporations through those common board members and employees are insufficient" to make this showing. (*Id.* at 4.)

In light of the record evidence and the parties' arguments, the Court finds that venue is proper in this District. At the evidentiary hearing, the Court heard testimony from John Stair, the Chief Operations Counsel of Defendant AmeriTeam, (Dkt. No. 78 at 6:8–22 (Transcript of July 24, 2019 evidentiary hearing)), that establishes that at least one defendant "transacts business" in this District. In particular, Mr. Stair testified to the following: (1) AmeriTeam provides administrative support services to local practice groups that work in this District, (*id.* at 12:1–19, 37:1–3); (2) AmeriTeam "set[s] compliance policies that are then utilized throughout the organization" (*id.* at 13:14–21), and "physicians working in the Emergency Department at Longview Regional, which is contracted with [*sic*] Team Health entity, have gone through Team Health's compliance training," (*id.* at 14:11–14: *see also id.* at 14:18–19), (3) TeamHealth recruits emergency physicians in Longview, Texas, and the job postings are listed on a TeamHealth website that is created and maintained by AmeriTeam, (*id.* at 18:1–8, 19:24–20:2, 21:4–7, 35:21–24, 36:10–23); (4) AmeriTeam procures malpractice insurance for physicians working at TeamHealth affiliated hospitals in this District, (*id.* at 24:21–25:1, 25:22–25); (5) TeamHealth creates policies in Knoxville, Tennessee that are implemented nationwide in all TeamHealth affiliated facilities, including those in this District, (*id.* at 29:23–30:3, 30:11–14); (6) at least one defendant "may have a contract with the operating subsidiary that supports the Longview hospital," (*id.* at 34:4–7); and (7) Mr. Stair, an executive of AmeriTeam, is also a manager of

Quantum, an entity owned by one of the defendants and that has a contract with Longview Regional Hospital, (*id.* at 39, 17–29, 39:23–40:10.).

Courts in other cases have found venue under similar facts. *See In re DRC, Inc.*, 358 Fed. Appx. 193, 194 (D.C. Cir. 2009) (per curiam) (affirming district court's decision that Petitioner "transacts business" under the FCA venue statute because "Petitioner had numerous business dealings with federal entities headquartered in the District of Columbia"); *United States ex rel. Grand v. Northrop Corp.*, 811 F. Supp. 330, 331 (S.D. Oh. 1992) (finding that Northrop "transacts business" in the district under the FCA venue statute because Northrop was responsible for overseeing business activities that were conducted by its subcontractor in the District).[4]

### B. Leave Is Granted to Amend the Complaint

Relators alternatively argue that "even if TeamHealth did not technically transact business in the Eastern District of Texas, [Defendants] admit[] that [their] subsidiaries absolutely did." (Dkt. No. 57 at 6.) Relators contend that "the appropriate remedy would not be dismissal for lack of proper venue," but rather to grant "leave to [allow Relators] to make minor amendments to the Complaint to add the subsidiaries TeamHealth has identified." (*Id.*)

---

[4] While not expressly raised under Federal Rule of Civil Procedure 12(b)(6), Defendants also argue that this Court lacks personal jurisdiction over the Defendants. (Dkt. No. 56 at 8–11.) The Court finds that all Defendants maintain systematic contacts with Texas such that the exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945); *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). At the evidentiary hearing, the Court heard testimony from Mr. John Stair, Chief Operations Counsel for Defendant AmeriTeam, that shows that Defendants purposefully avail themselves of doing business in Texas, including in this District. (Dkt. No. 78 at 15:8–16:23 (explaining that Texas is a "key jurisdiction for Team Health's business" and that while the Defendants themselves are not incorporated or have headquarters in Texas, Defendants conduct business in Texas through local practice groups), 34:14–24 (explaining that TeamHealth wants local practice groups to use its brand name to recruit physicians in Texas).)

Even though venue is otherwise proper, the Court finds that amending the complaint is appropriate. The alleged schemes concern Defendants' coding and billing practices. (Dkt. No. 78 at 30:8–10 (Transcript of July 24, 2019 evidentiary hearing).) HCFS is a TeamHealth subsidiary and "performs the actual coding and billing services for ('Emergency Department') ED patient encounters provided by [TeamHealth] affiliated clinicians." (Dkt. No. 38-3 ¶ 4 (Declaration of Paula Dearolf on Behalf of Defendants); *see also* Dkt. No. 78 at 43:5–8, 44:7–11.) Defendants admit that the Akron, Ohio billing center for HCFS coded and billed for emergency department services performed by TeamHealth affiliated clinicians at Longview Regional Hospital. (Dkt. No. 38-3 ¶ 9; *see also* Dkt. No. 78 at 44:18–20, 63:1–17, 77:13–21.) There is no doubt HCFS "transacts business" in this District or that its role in Defendants' business will be relevant to Relators' case-in-chief. Accordingly, the Court grants Relators leave to amend the complaint to add HCFS as a co-defendant.

### C.  Transfer Is Not Appropriate Under 28 U.S.C. § 1404(a)

Defendants also move to transfer this case to the Eastern District of Tennessee under 28 U.S.C. § 1404(a). (Dkt. No. 38.)  Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A party seeking transfer under § 1404(a) must show that transfer is "clearly more convenient" than the venue chosen by the plaintiff. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) [hereinafter *Volkswagen II*]. When deciding such a motion, the court may consider undisputed facts outside of the pleadings, such as affidavits or declarations, and must resolve all factual conflicts in favor of the non-moving party. *See Sleepy Lagoon, Ltd., v. Tower Grp., Inc.*, 809 F.

Supp. 2d 1300, 1306 (N.D. Okla. 2011); *see also Cooper v. Farmers New Century Ins. Co.*, 593 F. Supp. 2d 14, 18–19 (D.D.C. 2008).

### i. Venue Is Proper in the Proposed Transferee Forum

The first inquiry in the § 1404(a) analysis is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) [hereinafter *Volkswagen I*]. As stated above, venue is proper in FCA cases in any judicial district in which any one defendant "can be found, resides, transacts business, or in which any act proscribed by [S]ection 3729 occurred." 31 U.S.C. § 3732(a). Since each of the Defendants is incorporated, or has its principle place of business, in Knoxville, Tennessee, the Court finds that this case could have been properly filed in the Eastern District of Tennessee. (Dkt. No. 33 ¶¶ 13–16.)

### ii. The Private and Public Interest Factors Do Not Warrant Transfer

Once the threshold inquiry is met, the court then weighs various private and public factors. *Volkswagen I*, 371 F.3d at 203; *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) (applying Fifth Circuit law). These factors "are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Volkswagen II*, 545 F.3d at 314–15.

#### 1. Private Interest Factors

##### a. Relative Ease of Access to Sources of Proof

When considering the relative ease of access to sources of proof, a court looks to where documentary evidence, such as documents and physical evidence, are stored. *Volkswagen II*, 545 F.3d at 316. For this factor to weigh in favor of transfer, Defendants must show that transfer to the Eastern District of Tennessee will result in more convenient access to sources of proof. *See*

*Diem LLC v. BigCommerce, Inc.*, No. 6:17-cv-186, 2017 WL 6279907, at *2 (E.D. Tex. Dec. 28, 2017).

Defendants argue that this factor favors transfer because "a great majority of the evidence . . . would either be located in or more easily accessible in Knoxville, Tennessee." (Dkt. No. 38 at 12.) HCFS allegedly performs "the actual coding and billing services" at issue in this case, and HCFS's records are "securely stored . . . and retrievable in bulk only from Knoxville, Tennessee." (*Id.* at 12–13.) Defendants also explain that its headquarters are in Knoxville, Tennessee, and so any documents relating to "[o]verall business decisions," such as the creation of policies on coding, "submissions to governmental and non-governmental payors, and [the] maintenance and management of medical records" are also located there. (*Id.* at 13.)

Relators argue that this factor does not favor transfer because the alleged schemes involve false records created in several states, including in this District. (Dkt. No. 53 at 23.) "Relator Hernandez identifies [various] . . . records and evidence maintained at the local level" that would be relevant to this case. (*Id.*) These include "personnel files of non-party physicians and mid-level providers" and "emails and documents" relating to Defendants' coding policies and procedures. (*Id.*) Relators also argue that "much of this data is in the hands of the federal government" and that any documents from Defendants can easily be retrieved electronically from Tennessee. (*Id.* at 23–24.)

Relators accuse Defendants of falsely coding medical records that are then used to generate bills for reimbursement to Medicare/Medicaid. According to Ms. Dearolf, the Executive Vice-President of Revenue Cycle Operations at HCFS, any documents relating to Defendants' coding and billing practices are physically stored in and can only be accessed in the transferee forum. (Dkt. No. 38-3 ¶ 15 (Declaration of Paula Dearolf on Behalf of Defendants).) Even though

Relators identify potentially relevant documents in other jurisdictions, the vast majority of relevant documents will likely be located at Defendants' headquarters in Knoxville, Tennessee.[5] Accordingly, the Court finds that this factor weighs slightly in favor of transfer.

### b. Availability of Compulsory Process

The second private interest factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by a court order. *In re Volkswagen II*, 545 F.3d at 216. A district court's subpoena power is governed by Federal Rule of Civil Procedure 45. For purposes of § 1404(a), there are three important parts to Rule 45. *See Virtual Agility, Inc. v. Salesforce, Inc.*, No. 2:13-cv-00011, 2014 WL 459719, at *4 (E.D. Tex. Jan. 31, 2014) (explaining 2013 amendments to Rule 45). First, a district court has subpoena power over witnesses that live or work within 100 miles of the courthouse. Fed. R. Civ. P. 45(c)(1)(A). Second, a district court has subpoena power over residents of the state in which the district court sits—a party or a party's officer that lives or works in the state can be compelled to attend trial, and non-party residents can be similarly compelled as long as their attendance would not result in "substantial expense." Fed. R. Civ. P. 45(c)(1)(B)(i)–(ii). Third, a district court has nationwide subpoena power to compel a non-party witness's attendance at a deposition within 100 miles of where the witness lives or works. Fed. R. Civ. P. 45(a)(2), 45(c)(1).

---

[5] Relators contend that Defendants' documents can be accessed electronically. (Dkt. No. 53 at 23–24.) However, the Fifth Circuit has made clear that for purposes of this factor, the relevant inquiry is the ease of access to where information is *physically* stored. *Implicit v. Trend Micro*, No. 6:16-cv-00080, 2016 U.S. Dist. LEXIS 191571, at *5 (E.D. Tex. Sept. 1, 2016) (citing *Volkswagen II*, 545 F.3d at 316) ("Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be a private interest factor to be considered."). The Court is bound by this precedent despite its clear obsolescence.

Defendants argue that this factor weighs in favor of transfer because: (1) none of the parties reside within the subpoena power of this District; and (2) "it is assumed that knowledgeable witnesses will be from Colorado, New York, and Knoxville, Tennessee" since Relators are residents of Colorado and New York and Defendants are headquartered in Tennessee. (Dkt. No. 38 at 13–14.) "Relators, on the other hand, believe there are several witnesses in this district" whose testimony could be compelled by this Court. (Dkt. No. 53 at 25.) These witnesses include the following "emergency physicians: Terry Moslander, M.D., Jerry Jenkins, M.D., Carmen Gonzales, M.D., Gene Kelly, M.D., Ricky Swaim, M.D.; and mid-level providers: Alex Lawrence F.N.P.-C, Lorie Reeves, N.P., Kelly Hodge, N.P., and Judson Lawrence, M.S.N., R.N. F.N.P." (*Id.* at 25 (citing exhibit to John Stair deposition and Relator Hernandez's declaration).)

The Court finds that this factor weighs against transfer. Defendants have failed to identify any witnesses whose testimony could be compelled by the transferee forum whereas Relators have identified several witnesses who would be subject to this Court's subpoena power. *See Godo Kaisha IP Bridge 1 v. Intel Corp.,* No. 2:17- cv- 00676, 2018 WL 5728524, at *5 (E.D. Tex. Aug. 29, 2018) ("[T]he party seeking transfer bears the burden of demonstrating and identifying unwilling witnesses that would benefit from the transfer.").

### c. Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009) (applying Fifth Circuit law). "When the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* at 1343 (citing *Volkswagen II*, 545 F.3d at 317).

Defendants argue that the Eastern District of Tennessee is more convenient for its witnesses: (1) Paula Dearolf, Executive Vice-President of Revenue Cycle Operations at HCFS; (2) Joe Carman, Chief Administrative Officer of HCFS; (3) Hamilton Lempert, Chief Medical Officer of Coding Policy; (4) Kelli Kirkendall, Vice President of Clinician Documentation Education; and (5) Chris Murrell, Vice President of Akron Billing Center. (Dkt. No. 38 at 13.) Defendants explain that "[o]ther than Chris Murrell, who is located in Akron, Ohio, these witnesses are located or regularly appear in Knoxville, Tennessee." (*Id.*) As such, "the cost to have Defendants' witnesses . . . appear in the Eastern District of Texas [is] prohibitive and unnecessary" and it would be more convenient to litigate the case in Tennessee. (*Id.*)

In contrast, Relators provide that this District is more convenient for their witnesses: (1) Dr. Robert Frantz, who is located in Moore, Oklahoma and "responsible for the operations of the emergency medicine and hospital medicine operations in the TeamHealth West Group;" (2) Dr. Matt Ledges who "provided instructions and oversight to Relators in a TeamHealth-affiliated emergency department" in Denver, Colorado; (3) Dr. Alix Gilman, who served as a TeamHealth Regional Medical Director ("RMD") in Dallas, Texas from October 2013 to May 2014; (4) Dr. David Pelini, who served as a TeamHealth RMD in Houston, Texas from 2015 to 2017; (5) Dr. Joseph Kim, who served as a TeamHealth RMD in Dallas, Texas from 2015 to 2016; (6) Dr. Chris Lagan who served as a TeamHealth RMD in Houston, Texas from 2013 to 2015; (7) James Gulliver, who is based in Houston, Texas and responsible for recruiting emergency physicians in Longview, Texas, and (8) a host of other non-party witnesses located in various states that Relators contend are closer to this District than Tennessee. (Dkt. No. 53 at 26–27.)

The Court finds this factor is neutral as both parties have identified several witnesses for whom the competing forums are respectively more convenient.

### d. All Other Practical Problems

Practical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer. *Eolas Techs., Inc. v. Adobe Sys., Inc.*, 6:09-cv-446, 2010 WL 3835762, at *6 (E.D. Tex. Sept. 28, 2010), *aff'd In re Google, Inc.*, 412 Fed. Appx. 295 (Fed. Cir. 2011) (applying Fifth Circuit law).

Defendants "believe[] that [the first three] factors . . . are subsumed in demonstrating ease, expeditiousness and reduction of costs," and that "[it] would . . . make it more economical to transfer the case to the forum where the alleged actions have occurred or from which they emanated." (Dkt. No. 38 at 15.) Relators do not respond with any particular arguments and simply state that this factor does not favor transfer. (Dkt. No. 53 at 28.) On balance, the Court finds this factor neutral as neither party has provided any additional facts that would either weigh in favor of or against transfer.

### 2. Public Interest Factors

### a. Administrative Difficulties Flowing from Court Congestion

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor." *Genentech*, 566 F.3d at 1347 (applying Fifth Circuit law). Defendants argue that while certain statistical data shows that the median time to trial is faster in this District, such data is not helpful because "it doesn't break the matters down by case type and otherwise" fails to factor in the mandatory seal provisions under the federal FCA. (Dkt. No. 38 at 15–16.) Relators argue that this factor weighs against transfer because "[t]he time from filing to trial averages about 50% longer in the Tennessee venue than in this district." (Dkt. No. 53 at 29.)

Though the statistics vary slightly by source, this Court has consistently found that the median time to trial in this District is several months faster than other venues. *See, e.g.*, *ContentGuard Holdings, Inc. v. Amazon.com, Inc.*, 2:13-cv-1112, 2015 WL 1885256, at *10 (E.D. Tex. Apr. 24, 2015); *ContentGuard Holdings, Inc. v. Google, Inc.*, No. 2:14-cv-61 (Dkt. No. 38) (E.D. Tex. Apr. 16, 2014) ("The six-month difference in median time, though not substantial, is not negligible."). Accordingly, the Court finds that this factor weighs against transfer.

### b. Local Interests of Various Forums

Defendants argue that the Eastern District of Tennessee has a strong interest in this case because any alleged schemes would have emanated from Defendants' headquarters in Knoxville, Tennessee. (Dkt. No. 38 at 16.) Relators argue that this factor is neutral given that Relators' allegations are nationwide and not tied to any specific state. (Dkt. No. 53 at 29.) The Court agrees with Relators and finds this factor neutral.

### c. Avoidance of Unnecessary Conflicts of Law

Defendants submit this factor is neutral, (Dkt. No. 38 at 16), and Relators provide no alternative argument (Dkt. No. 53 at 30). The Court does not anticipate any conflicts of law issues that would favor or disfavor one district over the other. Accordingly, this factor is neutral.

### d. The Familiarity of the Forum with the Governing Law

Defendants state that this factor is neutral, (Dkt. No. 38 at 16), and Relators present no alternative arguments, (Dkt. No. 53 at 30). Given the high volume of FCA cases filed in this District relative to Tennessee, the Court finds that this factor weighs slightly against transfer. (Dkt. No. 78 at 102:22–103:4.)

On balance, the Court finds that Defendants have failed to sufficiently move the scales in a manner adequate to show that the transferee forum is "clearly more convenient." *Volkswagen*

*II*, 545 F.3d at 315.  Accordingly, the Court declines to transfer the case to the Eastern District of Tennessee under § 1404(a).

## III.    CONCLUSION

Based on the foregoing, the Court hereby **DENIES** Defendants' Motion to Dismiss Relators' First Amended Complaint Based on Improper Venue Pursuant to Fed. R. Civ. P. 12(b)(3), or in the Alternative, to Transfer Venue, (Dkt. No. 38).   It is further **ORDERED** that Relators are granted leave to amend the complaint to add Health Care Financial Services, LLC as a co-defendant to the above-captioned case within 30 days of the issuance of this Order.

**So ORDERED and SIGNED this 21st day of August, 2019.**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE