IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ET AL., EX REL. CALEB HERNANDEZ & JASON WHALEY, RELATORS; | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | CIVIL ACTION NO. 2:16-CV-00432-JRG |
| TEAM FINANCE, L.L.C., TEAM HEALTH, INC., TEAM HEALTH HOLDINGS, INC., AMERITEAM SERVICES, L.L.C., HCFS HEALTH CARE FINANCIAL SERVICES, L.L.C., & QUANTUM PLUS, L.L.C. | § § § § § § § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Team Health Holdings, Inc., Team Finance, L.L.C., Team Health, Inc., AmeriTeam Services, L.L.C., HCFS Health Care Financial Services, L.L.C. and Quantum Plus, L.L.C.'s (collectively, "TeamHealth" or "Defendants") Renewed Motion to Transfer Venue (the "Motion"). (Dkt. No. 86.) Having considered the Motion, the briefing, and the relevant authorities, the Court is of the opinion that the Motion should be and hereby is **DENIED**.

### I. BACKGROUND

#### A. Procedural History

On April 25, 2016, Relators Caleb S. Hernandez and Jason W. Whaley (collectively, "Relators") filed suit as Relators against Defendants Team Health Holdings, Inc., Team Finance, LLC , and Team Health, Inc. under the *qui tam* provisions of the Federal False Claims Act, 31 US.C. §§ 3729 et seq. ("FCA"), and analogous state statutes. (Dkt. No. 1.) On June 28, 2018, the

United States of America and the Plaintiff state governments declined to intervene. (Dkt. No. 20.) Relators subsequently amended their Complaint on November 12, 2018 (the "First Amended Complaint") to add AmeriTeam Services, LLC as a defendant. (Dkt. No. 33.)

On December 23, 2018 Defendants moved to dismiss this action under Federal Rules of Civil Procedure 12(b)(3) or, in the alternative Defendants sought a change of venue, under 28 U.S.C. § 1404 (the "First Transfer Motion"). (Dkt. No. 38.) In the First Transfer Motion, Defendants argued that venue was not proper in the Eastern District of Texas and, in the alternative argued, that the Eastern District of Tennessee was a clearly more convenient forum. (*Id.* at 7, 10.) The Court denied the First Motion to Transfer finding that venue is proper in the Eastern District of Texas and that the Eastern District of Tennessee is not clearly more convenient that this District. (Dkt. No. 82.)

However, prior to denying the First Motion to Transfer, the Court granted Defendants' Motion to Dismiss the Relators' First Amended Complaint which was urged on Rule 12(b)(6) grounds. (Dkt. No. 37.) In the Court's Order dismissing this action without prejudice, the Court granted leave to Relators to replead their claims. (Dkt. No. 81 at 14.)

Relators subsequently filed its Second Amended Complaint ("SAC") on September 19, 2019 adding new allegations and adding HCFS Health Care Financial Services, L.L.C. and Quantum Plus, L.L.C. as additional defendants. (Dkt. No. 83.)

Defendants now seek to transfer this action to the District of Colorado, or in the alternative to the Eastern District of Tennessee, pursuant to 28 U.S.C. § 1404(a). (Dkt. No. 86 at 2.) The Court has previously considered the convenience of this District in relation to the Eastern District of Tennessee and the Court is of the opinion that there has been no change in the material facts as they related to that analysis. Accordingly, the Court does not reconsider whether the Eastern

District of Tennessee is clearly more convenient than this District., and in fact, has already determined it is not. (*See* Dkt. No. 82.) However, the Court now takes up the new issue as to whether or not venue in the District of Colorado is clearly more convenient than this District.

### B. The Parties and the Alleged Fraud

The following introductory paragraphs from the SAC succinctly summarize the respective parties in this action as well as Relators' key allegations against Defendants:

> 1. TeamHealth is an emergency room management company that operates hospital emergency departments across the nation. TeamHealth, who is currently being investigating by the United States House of Representatives, provides staffing, operation, and billing services to emergency departments as an outside contractor, promising to increase efficiency and profitability in exchange for a share of the emergency departments' earnings. TeamHealth emergency departments frequently render healthcare services to beneficiaries of public healthcare programs administered by the Centers for Medicare and Medicaid Services ("CMS") and the Plaintiff States. This case is about two fraudulent schemes (the "Schemes") that TeamHealth has used for years to obtain grossly overpaid reimbursements from these public healthcare programs.
>
> 2. **The first Scheme is the "Mid-Level Scheme."** Under the Mid-Level Scheme, TeamHealth overbills for services provided by "mid-level" practitioners. The term "mid-level" refers to non-physician healthcare providers, such as Physician Assistants ("PAs") and Nurse Practitioners ("NPs"). Under CMS rules, a mid-level's services are reimbursed at 85% of the standard physician rate, while services rendered by a physician are reimbursed at 100% of the standard physician rate. . .
>
> 3. . . . TeamHealth—*through its billing policies, procedures, and protocols* (which include training and guidelines)*, and through its coordinated operation and influence over its subsidiaries and affiliated professional entities*—systematically submits claims for mid-level services under various physicians' NPIs (*as assigning charts to a physician by a midlevel is usually based on shift assignments and how shifts overlap*), triggering the 100% rate when in fact the 85% rate applied. TeamHealth does this intentionally and has done so for years. . .
>
> 8. **The second Scheme is the "Critical Care Scheme."** This Scheme is a classic upcoding scheme. Under the Critical Care Scheme, TeamHealth bills CMS for "critical care"—the highest level of emergency treatment reserved for life-threatening situations—when in fact critical care services were not rendered and/or were not medically necessary, thereby submitting false claims through fraudulent billing. . .

3

14. Relator CALEB S. HERNANDEZ, D.O., is a citizen of the United States of America and is a resident of the State of Colorado. Since becoming a licensed physician, Dr. Hernandez has been employed as an emergency physician in numerous emergency departments in Arizona, Colorado, Kansas, Missouri, and the Caribbean. He brings this *qui tam* action based upon direct and unique information he obtained during his employment at the following hospital emergency departments managed and/or operated by TeamHealth: the North Colorado Medical Center in Greely, Colorado (from 2011 to 2015); Sterling Regional Medical Center in Sterling, Colorado (from 2013 to 2015); and Gov. Juan F. Luis Hospital in St. Croix, United States Virgin Islands (in 2011). . .

15. Relator JASON W. WHALEY, PA-C, is a citizen of the United States of America and is a resident of the State of Colorado. Mr. Whaley holds active PA licenses in Colorado and Wyoming and inactive licenses in California, Nebraska and Alaska. He brings this *qui tam* action based upon direct and unique information obtained during his employment at the emergency department at North Colorado Medical Center, located in Greeley, Colorado (from 2011 to 2013), which was and is operated and/or managed by TeamHealth. . .

16. . . . TeamHealth is a national healthcare practice management company that is one of the largest suppliers of outsourced physician staffing and administrative services to hospitals in the United States. TeamHealth operates in at least forty-seven states and employs at least 13,000 healthcare professionals.

17. Defendant, TEAM HEALTH HOLDINGS, INC., is a corporation that is organized under the laws of Delaware and has its principal place of business in Knoxville, Tennessee. Team Health Holdings, Inc. was acquired in 2017 in a $6.1 Billion take-private deal. Team Health Holdings, Inc. professes to be a holding company that conducts no operations, with no employees. . .

18. Defendant, TEAM FINANCE, L.L.C. is a subsidiary of Team Health Holdings, Inc. that is organized under the laws of Delaware. Because Team Finance, L.L.C. takes the citizenship of its member, Team Health Holdings, Inc., it is likewise a citizen of the States of Delaware and Tennessee.

19. Defendant, TEAM HEALTH, INC., is a subsidiary of Defendant Team Health Holdings, Inc., and does business under the name of "TEAMHEALTH." Team Health, Inc. is a Delaware corporation with its principal place of business at 265 Brookview Centre Way, Suite 400, Knoxville, Tennessee. Although—as of October of 2014—it has claimed to be a holding company that conducts no operations and has no employees, Team Health, Inc., alone or through its subsidiaries, has carried out operations and employed employees within the TeamHealth system.

20. Defendant, AMERITEAM SERVICES, L.L.C., is Tennessee Limited Liability Company and is an administrative and support services subsidiary of Defendant Team

Health Holdings, Inc., which employs officers and other TeamHealth affiliated representatives, including those who are members of the referenced departments, committees and TeamHealth's purported [FCA] Compliance Advisory Group. Its principal place of business and mailing address is 265 BROOKVIEW CENTRE WAY, STE 400 KNOXVILLE, TN 37919-4052 USA—the same address as the other TeamHealth defendants.

21. Defendant, HCFS HEALTH CARE FINANCIAL SERVICES, L.L.C., is Florida Limited Liability Company and subsidiary of Defendant Team Health Holdings, Inc. Its principal place of business and mailing address is 265 BROOKVIEW CENTRE WAY, STE 400 KNOXVILLE, TN 37919-4052 USA—the same address as the other TeamHealth defendants.

22. Defendant, QUANTUM PLUS, L.L.C., is a California Limited Liability Company and subsidiary of Defendant Team Health Holdings, Inc. with its principal place of business at 5000 HOPYARD RD STE 100, PLEASANTON, CA 94588. It does business under the name of "TEAMHEALTH WEST." Its mailing address is the same as the other TeamHealth defendants: 265 BROOKVIEW CENTRE WAY, STE 400 KNOXVILLE, TN 37919-4052 USA. TeamHealth West is an operational division that covers the western region of the United States, including Colorado and Texas.

(Dkt. No. 83 ¶¶1–3, 8, 14–22.)

## II. LEGAL STANDARD

If venue in the district in which the case is originally filed is proper, the court may nonetheless transfer a case based on "the convenience of parties and witnesses" to "any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The threshold inquiry when analyzing eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) [hereinafter *Volkswagen I*]. As such, to prove that transfer is proper, the movant must establish that, as of the time of filing, each party "would have been amenable to process in . . . the transferee court" and that "venue as to all [parties] would have been proper [there]." *See Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1148 (5th Cir. 1984), *overruled on other grounds by In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147 (5th Cir. 1987); *accord Hoffman v.*

5

*Blaski*, 363 U.S. 335, 342–44 (1960). There is no live assertion presently before this Court asserting that venue in this district is improper.

Once this initial threshold has been met, courts determine whether the case should be transferred by analyzing various public and private factors. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *accord In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* These factors are to be decided based on "the situation which existed when suit was instituted." *Hoffman*, 363 U.S. at 343. Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) [hereinafter *Volkswagen II*].

To prevail on a motion to transfer under § 1404(a), the movant must show that transfer is "clearly more convenient" than the venue chosen by the plaintiff. *Id.* at 315; *accord In re Apple Inc.*, 456 F. App'x 907, 909 (Fed. Cir. 2012) (holding that a movant must "meet its burden of demonstrating [] that the transferee venue is 'clearly more convenient.'") (internal citation omitted). Absent such a showing, plaintiff's choice of venue is to be respected. *Volkswagen II*, 545 F.3d at 315. When deciding a motion to transfer under § 1404(a), the court may consider

undisputed facts outside of the pleadings such as affidavits or declarations, but it must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party. *See Sleepy Lagoon, Ltd., v. Tower Grp., Inc.*, 809 F. Supp. 2d 1300, 1306 (N.D. Okla. 2011); *see also Cooper v. Farmers New Century Ins. Co.*, 593 F. Supp. 2d 14, 18–19 (D.D.C. 2008).

### III. DISCUSSION

#### A. This Action Could Have Been Filed in the District of Colorado.

An action can only be transferred under 28 U.S.C. § 1404(a) if the action could have originally been brought in the proposed transferee court. *Volkswagen I*, 371 F.3d at 203. Thus, as a threshold matter, it must be determined whether or not Relators could have properly initiated this suit in the District of Colorado. Venue is proper in FCA cases in any judicial district in which any one defendant "can be found, resides, transacts business, or in which any act proscribed by [S]ection 3729 occurred." 31 U.S.C. § 3732(a). Based on Relators allegations that TeamHealth carried out and covered up its national schemes in Colorado, venue is proper in Colorado and neither party disputes this. (Dkt. No. 86 at 6; Dkt. No. 94 at 8 n.8.) This threshold issue is met.

#### B. The Private and Public Interest Factors do not Weigh in Favor of Transfer.

1. Private Transfer Factors

    a) *Relative Ease of Access to Sources of Proof*

When considering the relative ease of access to sources of proof, a court looks to where documentary evidence, such as documents and physical evidence, are stored. *Volkswagen II*, 545 F.3d at 316. Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be a private interest factor to be considered. *See Volkswagen II*, 545 F.3d at 316. For this factor to weigh in favor of transfer, Defendants must show that transfer to the District of Colorado will result in more convenient access to sources of proof.

7

*See Diem LLC v. BigCommerce, Inc.*, No. 6:17-cv-186, 2017 WL 6729907, at *2 (E.D. Tex. Dec. 28, 2017).

Defendants argue that, based on Relators allegations in the SAC, "effectively nothing will be found" in this District. (Dkt. No. 86 at 7.) Defendants contend that the new allegations in the SAC focus on Relators experiences in Colorado, and as such, Colorado likely has more relevant documents than this District. (*Id.*) Previously, when considering the First Motion to Transfer, the Court found that this factor only weighed slightly in favor of transfer. (Dkt. No. 82 at 14.) Now Defendants in effect, argue the Court should now give more weight to this factor than previously allocated. (Dkt. No. 86 at 7.)

Conversely, Relators respond that no circumstances have changed between the First Motion to Transfer and the current motion which would justify the Court affording more weight to this factor. (Dkt. No. 94 at 8.) Relators argue that Defendants have already taken the position in the First Motion to Transfer that "a great majority of the evidence and witnesses" are located in Tennessee, not Colorado. Having done so Defendants cannot now credibly argue that this factor should be given more weight than before. (*Id.*) Furthermore, Relators argue that the SAC have provides more detailed allegations concerning Longview Regional Medical Center which indicates there is more evidence in this District than previously known. (*Id.* at 9.)

Defendants have the burden to establish that the District of Colorado is clearly more convenient than this District, yet Defendants have presented nothing concerning the actual quantum of evidence is located in Colorado other than stating that the SAC references documents that are stored in Colorado. (*See* Dkt. No. 100 at 3.) By Defendants' own admission, much of the relevant evidence will be located in Tennessee, so whether this case is tried in Texas or Colorado, Defendants' sources of proof must be transported hundreds of miles. Considering this reality and

Defendants' failure to describe quantified evidence in Colorado, the Court finds that this factor is neutral.

### b) *The Availability of a Compulsory Process to Secure the Attendance of Witnesses*

The second private factor instructs the Court to consider the availability of compulsory process to secure the attendance of witnesses, particularly non-party witnesses whose attendance may need to be secured by court order. *In re Volkswagen II*, 545 F.3d at 216. The Court gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum. *See Novelpoint Learning v. Leapfrog Enter.*, No. 6:10-cv-229, 2010 WL 5068146, at *6 (E.D. Tex. Dec. 6, 2010).

Defendants argue that this factor weighs in favor of transfer because the witnesses specified by Relators are largely from Colorado and Tennessee. (Dkt. No. 86 at 8.) Defendants also argue that Relators have only made "vague assertions" about the knowledge of the witnesses that are present in this District. (*Id.*) As a result, Defendants contend such witnesses should be given little weight. (*Id.*)

Relators respond that this Court should again find that this factor weighs against transfer, as it did when ruling on the First Motion to Transfer. (Dkt. No. 94 at 9.) Specifically, Relators argue that it has identified several witnesses that reside in this District whose testimony could be compelled by this Court. (*Id.* at 10.) In fact, the SAC specifically identifies two witnesses who reside in this District that participated in and have direct knowledge of the fraud allegations. (*Id.* (citing Dkt. No. 83 ¶93).)

The parties appear to agree that many of the witnesses identified are outside the subpoena power of both this Court and the Colorado court. Relators have identified at least two witnesses in the SAC who are subject to the subpoena power of this Court and there is evidence in the record

of other witnesses located within this District.[1] However, as Defendants point out, many of the other witnesses Relators allude to are not located in this District, but are in Colorado, California, Oregon, Arizona, and elsewhere in Texas. (Dkt. No. 86-1.) Furthermore, Defendants have previously argued that the Eastern District of Tennessee, not the District of Colorado, has "the ability to enforce the presence of most, if not all, of Defendants' witnesses." (Dkt. No. 38 at 14.) Neither the District of Colorado nor this District will have subpoena power over the witnesses located in California, Oregon, Arizona, or Tennessee and neither party has indicated that these witnesses would otherwise be willing to testify at trial. Since both this District and the District of Colorado could only compel a handful of witnesses each, this factor is neutral. *See Odom v. Microsoft Corp.*, 596 F. Supp. 2d 995, 1002 (E.D. Tex. 2009) (finding this factor neutral because each court could only compel one witness to testify).

*c)     Cost of Attendance of Willing Witnesses*

In analyzing this factor, all parties and witnesses must be considered. *Volkswagen I*, 371 F.3d at 204. "The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009) (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* at 1343 (citing *Volkswagen II*, 545 F.3d at 317).

---

[1] Relators previously identified several witnesses located in this District in its Response to the First Motion to Transfer. (Dkt. No. 53 at 25 ("TeamHealth affiliated clinicians who work in this district at Longview will all have knowledge regarding TeamHealth's policies and practices with regarding both of the schemes alleged herein, including emergency physicians: Terry Moslander, M.D., Jerry Jenkins, M.D., Carmen Gonzales, M.D., Gene Kelly, M.D., Ricky Swaim, M.D.; and mid-level providers: Alex Lawrence F.N.P.-C, Lori Reeves, N.P., Kelly Hodge, N.P., and Judson Lawrence M.S.N., R.N., F.N.P.").)

Defendants argue that the cost to have Defendants' witnesses appear in this District is "prohibitive and unnecessary." (Dkt. No. 86 at 9.) Defendants contend that an "overwhelming" number of key witnesses reside in Colorado or Tennessee and these witnesses would sustain significant costs if forced to travel to this District. (*Id.*)

Relators respond that there has been no material change in the facts between the instant motion and the First Motion to Transfer. (Dkt. No. 94 at 11.) Specifically, Relators have identified nine witnesses in this District, and numerous other witnesses that are located closer to this District than the District of Colorado. (*Id.*) As such, Relators contend that the Court's prior finding that this factor is neutral should not change because both parties have identified several witnesses for whom the competing forums are respectively more convenient. (*Id.* at 12.)

The Court is persuaded by Relators argument and finds that there have been no material factual changes between the instant motion and First Motion to Transfer which would cause this factor to favor transfer. In fact, Defendants arguments in support of transfer to Tennessee cut against Defendants arguments in support of transfer to Colorado. Throughout the First Motion to Transfer and the instant motion, Defendants argue that many of its witnesses are located in Tennessee, which would make significant travel inevitable for such witnesses regardless of whether the case moves to Colorado or remains in this District. As such, the Court again concludes that this factor is and remains neutral.

### d) Other Practical Problems

Practical problems include those that are rationally based on judicial economy. Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer. *Eolas Techs., Inc. v. Adobe Sys., Inc.*, No. 6:09-cv-446, 2010 WL 3835762, at *6 (E.D. Tex. Sept. 28, 2010), *aff'd In re Google, Inc.*, 412 F. App'x. 295 (Fed. Cir. 2011).

Defendants argue that the additional detail included in the SAC shows that Relators and their allegations have no bona fide connection to this District. (Dkt. No. 86 at 10.) Instead, all of the additional detail provided by the SAC points to the home district of Relators in Colorado. (*Id.* at 11.)

Relators respond that if the Court were to transfer the case, it would encourage the same type of piecemeal motion practice on transfer issues that these defendants have engaged in and it would disrupt the Court's docket and schedule. (Dkt. No. 94 at 13.) Furthermore, Relators contend that fact discovery has commenced in this District and if this case were to be transferred, Relators would be "forced back to square one in a new court that—unlike this one—is unfamiliar with the facts of this case." (*Id.*)

The Court is not persuaded by Defendants. The Defendants contend that the additional detail provided in the SAC justifies transfer to Colorado because these additional details largely deal with persons and events in Colorado. Implicit in Defendants' judicial economy argument is that the location of evidence and witnesses favor transfer to the District of Colorado, but the Court has already addressed these factors and declines to improperly double-dip on the same facts when considering other practical problems associated with transferring this case.

The Court finds that transferring this case would be unavoidably inefficient. This case has been pending in this Court since 2016, during which time discovery has been ongoing, and the Court has expended material time and resources regarding several motions in this case. Further, transferring this case now would encourage future, dilatory transfer motions in similarly situated cases. The Court notes that Defendants could have raised the District of Colorado as a possible transferee forum at the time of their First Motion to Transfer, but failed to do so. Apparently, the facts supporting a transfer to Colorado were known when the First Motion to Transfer was filed.

In fact, in the First Motion to Transfer, Defendants point out that Relators are residents of Colorado and that knowledgeable witnesses would be from Colorado. (Dkt. No. 38 at 14.) The Court finds that Defendants did not seek this change of venue with reasonable promptness. *See Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (finding that a party's failure to seek a venue change with reasonable promptness weighs against transfer). Considering all matters related to judicial economy, the Court finds that this factor weighs against transfer.

        2.        Public Transfer Factors

                *a)*        *Administrative Difficulties Flowing from Court Congestion*

"To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor." *Genentech*, 566 F.3d at 1347 (applying Fifth Circuit law). Defendants declined to address this factor in the instant motion, but Relators point out that the average time to trial in the District of Colorado is 30.3 months while the average time to trial in this District is 17.5 months. (Dkt. No. 94 at 13–14.) Accordingly, this factor weighs against transfer.

                *b)*        *Local Interest in Having Localized Interests Decided at Home*

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of community which has no relation to the litigation." *In re Volkswagen I*, 371 F.3d at 206. Defendants focus their public factors argument on this factor, arguing that this District has no local interest in this litigation. (Dkt. No. 86 at 11.) Specifically, Defendants contend that all of the allegations are based on observations, documents, and witnesses located in Colorado or Tennessee. (*Id.*) Relators respond that the Court previously found this factor to be neutral and nothing has changed which would merit a new finding. (Dkt. No. 94 at 14.) Relators argue that this is a nationwide scheme, not limited to the local interests of Colorado or Tennessee. (*Id.*)

Furthermore, unlike Texas, Colorado is not a named plaintiff in this case. (*Id.*) Based on these arguments, the Court does not find any material change regarding this factor. Accordingly, this factor continues to be neutral.

      *c)     Familiarity of the Forum with the Governing Law and Avoidance of Unnecessary*

Again, Defendants failed to address this public factor. Relators argue that this factor weighs against transfer because this District has presided over more *qui tam* cases, based on publicly available data, than the District of Colorado. (Dkt. No. 94 at 14.) Without an argument to the contrary, this Court finds that this factor weighs against transfer.

      *d)     Avoidance of Unnecessary Conflicts of Law*

Neither party argues that this factor weighs for or against transfer and this Court has previously held that "it does not anticipate any conflicts of law issues that would favor or disfavor one district over the other." (Dkt. No. 82 at 18.) Accordingly, this factor is neutral.

## IV.   CONCLUSION

Having analyzed the factors, the Court finds that Defendants have failed to meet its significant burden to show that the District of Colorado is clearly more convenient than the Eastern District of Texas. Therefore, Defendants' Renewed Motion to Transfer Venue (Dkt. No. 86) is hereby **DENIED**.

**So ORDERED and SIGNED this 12th day of February, 2020.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE