**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., *ex rel.* Caleb Hernandez & Jason Whaley, Relators | ) ) ) ) |
| *Plaintiffs*, | ) No. 2:16-cv-00432-JRG ) |
| v. | ) ) |
| TEAM HEALTH HOLDINGS INC., et al. | ) ) |
| *Defendants*. | ) ) |
| _____ | ) |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR PARTIAL SUMMARY
JUDGMENT IN THE ALTERNATIVE**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF ISSUES TO BE DECIDED BY THE COURT ............................... 4

STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................ 5

     A.     Background and Procedural History ........................................ 5

     B.     Relators' Allegations ............................................................ 8

   1.   The Alleged "Mid-Level Scheme".................................................. 9

   2.   The Alleged "Critical Care Scheme" .............................................. 12

LEGAL STANDARD .............................................................................................. 14

ARGUMENTS AND AUTHORITIES....................................................................... 15

I.     Defendants Are Entitled to Summary Judgment as to Counts One Through Ten Because Relators Cannot Establish Essential Elements of a FCA Violation................................. 15

     A.     Relators Cannot Establish Defendants Submitted a False or Fraudulent Claim as to the "Mid-Level Scheme" Because Sub-Regulatory Guidance Cannot Form the Basis of an Alleged False Claim. ......................................................... 15

     B.     Relators Cannot Establish that Defendants Submitted a False or Fraudulent Claim as to the "Critical Care Scheme" Because a Difference in Medical Judgment Cannot Support the Basis of an Alleged False Claim. ......................... 18

     C.     Relators Cannot Establish Materiality Because the Government Has Continued to Pay Claims Despite Actual Knowledge of the Alleged Fraud and Declined to Intervene Following its Investigation. ........................................ 23

     D.     Relators Cannot Establish the Requisite Scienter as to the Alleged Mid-Level Scheme or Critical Care Scheme. ................................................................. 27

     E.     Relators Cannot Establish that THHI, TF, THI, or AmeriTeam Submitted Any False Claims or Participated in the Claims Process..................................... 33

II.    Relators Have Neither Identified Evidence Nor Made Specific Allegations of False Medicaid Claims Submitted By Defendants, and, Therefore, Defendants are Entitled to Summary Judgment on the State Law Claims (Counts Three through Ten). ................... 37

III.   The Six-Year Statute of Limitations in 31 U.S.C. § 3731(b)(1) Governs Relators' FCA Claims. ............................................................................................................. 38

     A.     There is No Evidence that Relators Informed the Government of the "Facts Material to the Right of Action," Necessary to Trigger Application of Subsection 3731(b)(2)............................................................................. 41

     B.     Independently, Relators' Claims Against Quantum and HCFS, Raised for the First Time in the Second Amended Complaint More Than Three Years After Submitting the Disclosure, Are Not Entitled to Any Extended Limitations Period Under 3731(b)(2)................................................................................. 43

CONCLUSION ...................................................................................................... 45

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott v. BP Expl. & Prod., Inc.*,
  851 F. 3d 384 (5th Cir. 2017) ...............................................................................25

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ...............................................................................................14

*Azar v. Allina Health Services*,
  139 S. Ct. 1804 (2019) ...............................................................................16, 17, 18

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...............................................................................................14

*Cochise Consultancy, Inc. v. United States ex rel. Hunt*,
  139 S. Ct. 1507 (2019) ...........................................................................39, 42, 43, 44

*Crescent Towing & Salvage Co. v. M/V Anax*,
  40 F. 3d 741 (5th Cir. 1994) ..................................................................................41

*Croteau v. CitiMortgage, Inc.*,
  No. 4:12CV693, 2014 WL 119968 (E.D. Tex. Jan. 13, 2014) .............................21

*D'Agostino v. ev3, Inc.*,
  845 F. 3d 1 (1st Cir. 2016)......................................................................................24

*Dewan v. M-I, L.L.C.*,
  858 F. 3d 331 (5th Cir. 2017) ................................................................................41

*Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*,
  220 F. 3d 380 (5th Cir. 2000) ................................................................................21

*Eason v. Thaler*,
  73 F. 3d 1322 (5th Cir. 1996) ................................................................................15

*United States ex rel. Escobar v. Universal Health Services, Inc.*,
  842 F. 3d 103 (1st Cir. 2016).............................................................................23, 24

*United States ex rel. Fadlalla v. DynCorp Int'l*,
  402 F. Supp. 3d 162 (D. Md. 2019)........................................................................40

*United States ex rel. Fisher v. Ocwen Loan Servicing, LLC*,
  No. 4:12-cv-461, 2016 WL 3031713 (E.D. Tex. May 25, 2016) .....................16, 38

*Gonzalez v. Fresenius Med. Care N. Am.*,
689 F. 3d 470 (5th Cir. 2012) ...................................................................15

*United States ex rel. Harman v. Trinity Indus.*,
872 F. 3d 645 (5th Cir. 2017) .......................................................24, 25, 26

*United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*,
498 F. Supp.2d 25 (D.D.C. 2007) ........................................33, 34, 35, 36

*Houpt v. Wells Fargo Bank, N.A.*,
800 F. App'x 533 (9th Cir. 2020) .............................................................39

*United States ex rel. Jamison v. McKesson Corp.*,
No. 2:08cv214-SA-JMV, 2012 WL 487998 (N.D. Miss. Feb. 14, 2012).................................34

*United States ex rel. Janssen v. Lawrence Memorial Hospital*,
949 F. 3d 533 (10th Cir. 2020) ..................................................................24

*United States ex rel. Johnson v. Kaner Med. Grp., P.A.*,
641 F. App'x 391 (5th Cir. 2016) ..............................................................27

*United States ex rel. Johnson v. Kaner Med. Grp, PA*,
No. 4:12-CV-757-A, 2015 WL 631654 (N.D. Tex. Feb. 12, 2015) ...........................................2

*Kalis v. Colgate-Palmolive Co.*,
231 F. 3d 1049 (7th Cir. 2000) ..................................................................21

*Latimer v. SmithKline & French Labs.*,
919 F. 2d 301 (5th Cir. 1990) ....................................................................14

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)....................................................................................14

*United States ex rel. McBride v. Halliburton Company*,
848 F. 3d 1027 (D.C. Cir. 2017) ...............................................................25

*Polansky v. Exec. Health Res., Inc.*,
422 F. Supp. 3d 916 (E.D. Pa. 2019) ............................................. *passim*

*United States ex rel. Porter v. Magnolia Health Plan, Inc.*,
810 F. App'x 237 (5th Cir. 2020)...............................................................25

*United States ex rel. Taylor-Vick v. Smith*,
513 F. 3d 228 (5th Cir. 2008) ....................................................................14

*United States v. Comstor Corp.*,
308 F. Supp. 3d 56 (D.D.C. 2018), *reconsideration denied sub nom. United States ex rel. Folliard v. Comstor Corp.*, No. CV 11-731 (BAH), 2018 WL 5777085 (D.D.C. Nov. 2, 2018)..................................................................26

*United States v. Kindred Healthcare, Inc.*,
No. CV 16-683, 2020 WL 3529438 (E.D. Pa. June 29, 2020) ...............................26

*United States v. Lawrence*,
276 F. 3d 193 (5th Cir. 2001) ...................................................................21

*United States v. Pfizer*,
No. 16-CV-7142, 2019 WL 1200753 (N.D. Ill. Mar. 14, 2019).............................24

*United States v. Southland Mgmt. Corp.*,
326 F. 3d 669 (5th Cir. 2003) ...............................................................27, 33

*United States v. Universal Health Servs., Inc.*,
No. 1:07CV00054, 2010 WL 4323082 (W.D. Va. Oct. 31, 2010)...................34, 35

*Universal Health Servs., Inc. v. United States ex. rel. Escobar*,
136 S. Ct. 1989 (2016)...................................................................... *passim*

*Viazis v. Am. Ass'n of Orthodontists*,
182 F. Supp. 2d 552 (E.D. Tex. 2001), *aff'd*, 314 F.3d 758 (5th Cir. 2002).........................28

*United States ex rel. Wall v. Vista Hospice Care, Inc.*,
No. 3:07-cv-00604-M, 2016 WL 3449833 (N.D. Tex. June 20, 2016) ...................18, 19, 23

*United States ex rel. Willard v. Humana Health Plan of Texas Inc.*,
336 F. 3d 375 (5th Cir. 2003) ...............................................................27

*United States ex rel. Wood v. Allergan, Inc.*,
No. 19-cv-4029, 2020 WL 3073293 (S.D.N.Y. June 10, 2020) ...............................39

## Statutes

Federal False Claims Act, 31 U.S.C. § 3729, et seq. ................................................ *passim*

## Other Authorities

3 CCR 713-7 ............................................................................................30

Colorado Medical Board Rule 400, § 2(C)(5) ...............................................30

Fed. R. Civ. P. 26 ......................................................................................2

Fed. R. Civ. P. 56 .............................................................................1, 14, 45

Local Rule CV-56 ..............................................................................1, 45

https://www.cms.gov/Medicare/Medicare-Contracting/Medicare-Administrative-
     Contractors/...........................................................................................................................8

https://www.sec.gov/Archives/edgar/vprr/1300/13002271.pdf.....................................................44

v

Defendants, Team Health Holdings, Inc. ("THHI"), Team Finance, L.L.C. ("TF"), Team Health, L.L.C. ("THI"), AmeriTeam Services, L.L.C. ("AmeriTeam"), HCFS Health Care Financial Services, L.L.C., ("HCFS") and Quantum Plus, L.L.C. ("Quantum") (collectively, "Team Health" or "Defendants"), by and through their undersigned counsel, hereby file this Motion for Summary Judgment, or Partial Summary Judgment in the Alternative, and Memorandum of Law in Support Thereof pursuant to Fed. R. Civ. P. 56 and Local Rule CV-56.

**<u>PRELIMINARY STATEMENT</u>**

After a broad discovery process ██████████████████████████████, there is no factual basis underpinning the False Claims Act ("FCA") causes of action and related state causes of action of Relators Caleb Hernandez, D.O. and Jason Whaley, PA-C (individually "Relator Hernandez" or "Relator Whaley"; collectively "Relators"). There have been no false claims or any concerted schemes to defraud. The facts do, however, show:



Relators have been unable to gather any factual support for their fraud allegations. Thus, Defendants request that the Court enter summary judgment, or alternatively partial summary judgment, in their favor as to the Second Amended Complaint, and as to the specific allegations addressed in this motion to the extent that they are also alleged in the Third Amended Complaint.[1]

Relators allege two separate schemes involving improper billing to the Medicare Program, one for "split/shared" services and the other for critical care services. For each alleged scheme, Relators must demonstrate that Defendants submitted a false claim to the Government, with the requisite knowledge, that was material to the Government's decision to remit Medicare payment to Defendants. After extensive and broad discovery, Relators are unable to carry their burdens of proof on any of these essential elements.

First, as to Relators' allegations that Defendants billed the Medicare Program for critical care services when those services were not medically necessary, it is well established that a mere difference in medical judgment cannot form the basis for falsity under the FCA. But that is all Relators have here. Relators have put forth a physician expert who merely second-guesses the

---

[1] Despite numerous opportunities to do so over the past several months of extensive non-expert and expert discovery, Relators waited until the last possible day—September 15, 2020—to file their Third Amended Complaint, which includes more than 50 additional pages and paragraphs and completely alters Relators' previous theories. (Third Am. Compl. [Dkt. 162]). Relators also elected to supplement their Fed. R. Civ. P. 26(a)(1) disclosures for the first time on September 16, 2020 by disclosing 21 previously-unidentified witnesses. This amended complaint not only adds unnecessary breadth that does nothing to strengthen Relators' bare fraud allegations, but it, along with Relators' new Fed. R. Civ. P. 26(a)(1) disclosures, effectively prevents Defendants from conducting discovery regarding these new theories, the basis for which Relators developed through "discovery in this action." (*Id.* at ¶ 65). This entirely circumvents the intent of the FCA and should not be tolerated. *See United States ex rel. Johnson v. Kaner Med. Grp, PA*, No. 4:12-CV-757-A, 2015 WL 631654, at *5 n. 7 (N.D. Tex. Feb. 12, 2015) (in granting summary judgment, holding that "[t]he volume of discovery that has been conducted in this action, and the attempts by plaintiff to build her case exclusively on that discovery, are disturbing. The court does not believe that the intent of the FCA was to allow a relator to file a fictitious complaint to the end of opening the door to discovery, hoping that the discovery might uncover facts that could be used in asserting an FCA claim. In this action, if now-abandoned claims had not been asserted in plaintiff's original complaint, her action might well have been subject to summary dismissal at that time for failure to state a claim and for noncompliance with Rule 9(b) of the Federal Rules of Civil Procedure."). Defendants intend to comply with the Court's Second Amended Docket Control Order (Dkt. 151 at p. 3) by filing their response to this amended pleading on September 25, 2020, and to seek other appropriate relief.

subjective clinical judgment of the physicians who actually treated these Medicare patients and made real time decisions about the appropriate care to provide.

Second, Relators cannot show materiality. Relators directly informed the Government of Defendants' purported schemes, yet the Government investigated, chose not to intervene, and has continued to remit Medicare payments to Defendants for these very same services notwithstanding the Relators' allegations.

Third, Relators cannot prove that Defendants acted knowingly. Defendants' efforts to have their policies in continuous alignment with evolving Medicare Program requirements for split/shared and critical care services belies any allegation by Relators that Defendants knowingly or recklessly disregarded Medicare billing requirements.

Nor can Relators hold THHI, TF, THI, or AmeriTeam liable. Relators' scattershot approach in naming defendants demonstrates how little Relators understood of the way Defendants operate. Relators brought suit against six entities—the majority of which are not connected in any way to Relators' allegations. For a parent corporation to be held liable under the FCA, a relator must demonstrate that the corporation is liable under either a veil piercing/alter ego theory or that the corporation is directly liable for the FCA violation. Relators cannot put forth any evidence that would pierce the corporate veil of each of these four separate, corporate entities. And, it is undisputed that THHI, TF, THI, and AmeriTeam played no role in the preparation or submission of Relators' allegedly false claims. Summary judgment should be entered in their favor.

Defendants are further entitled to summary judgment because there is no evidence to support Relators' Medicaid state claims (Counts Three through Ten). Not only have Relators failed to identify a single false Medicaid claim, but Relators' own experts focused exclusively on

Medicare claims. In the absence of any supportive evidence, Defendants are entitled to summary judgment on Counts Three through Ten.

Finally, there is also a question of the FCA statute of limitations, 31 U.S.C. § 3731(b)(1), which limits the span of time Relators can allege false claims and seek damages against Defendants. Because Relators' section 3730(b) disclosure statement does not constitute "facts material to the right of action" necessary to invoke the benefit of section 3731(b)(2)'s extended statute of limitations period, Relators' allegations are subject to the six-year statute of limitations in section 3731(b)(1). Thus, any claims arising more than six years before Relators brought suit against each of the named Defendants is barred. Even if Relators' section 3730(b) disclosure statement does satisfy the prerequisite under section 3731(b)(2), Relators' claims against Quantum and HCFS were raised for the first time more than three years after Relators' April 19, 2016 disclosure statement. Accordingly, any claim against Quantum and HCFS that arises more than six years before the Second Amended Complaint was filed is time-barred by section 3731(b)(2).

## <u>STATEMENT OF ISSUES TO BE DECIDED BY THE COURT</u>

Defendants respectfully submit that:

1. Defendants are entitled to summary judgment as to Counts One through Ten because Relators cannot establish essential elements of a FCA violation, including falsity, materiality, scienter, or the submission of claims.

2. Defendants are entitled to summary judgment as to Counts Three through Ten because Relators have not produced evidence that any false claims were submitted to any State Medicaid Program for reimbursement.

3. To the extent any claims go forward, they are subject to the six-year statute of limitations in 31 U.S.C. § 3731(b)(1) because Relators failed to satisfy the necessary prerequisites of 31 U.S.C. § 3731(b)(2) to obtain the benefit of the extended ten-year period.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

**A.** *Background and Procedural History*

███████████████████████████████████████████████████

████████████████████████████████████████████████ Team

Health staffing company subsidiaries provide emergency department ("ED") staffing services

through corporations that contract with Team Health-affiliated clinicians, who provide ED services

at various hospitals. (John Stair Decl., ¶ 30 [Dkt. 38-2]).

███████████████████████████████████████████████████

████████████████████████████████ *Id*. at ¶¶ 32-33; Ex. A, Stair Dep.

at 68:4-10; 2012 SEC Form 10-K Disclosures, p. 102, attached as Ex. B). ████████████

██████████████ are responsible for all of the ED coding and billing services for ED patient

encounters provided by Team Health-affiliated clinicians, including medical coding, patient

billing, claims submission, payment posting, denial management, and accounts receivable follow-

up. (*Id*.). █████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████ ██████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████ ██████████████

. THHI and TF have never:



THI never provided ED clinician staffing and related services, which were provided by staffing company subsidiaries in the Team Health system. (Dkt. 38-2 at ¶ 27). AmeriTeam replaced THI as an employer and provider of administrative and support services on January 1, 2015, at which time THI became a non-operating holding company without any employees or business operations. (*Id*. at ¶ 29).

Relators filed their original *qui tam* complaint, alleging THHI, TF, and THI violated the FCA, on April 25, 2016. (Compl. [Dkt. 2]; Second Am. Compl., ¶¶ 14-15, [Dkt. 83]).

The Government subsequently initiated an investigation. During the Government's lengthy investigation that followed, it had access to extensive information from Defendants related to their various billing and coding policies and procedures, claims data, and related patient records regarding shared services and critical care services. On or about July 2, 2018, the United States and the Plaintiff States declined to intervene

in the action after investigating Relators' allegations for more than two years. (Order & Government's Notice of Election to Decline Intervention [Dkt. 21]).

On November 12, 2018, Relators filed their First Amended Complaint, adding AmeriTeam as a Defendant. (First Am. Compl. [Dkt. 33]). Subsequently, on September 19, 2019, Relators filed their Second Amended Complaint, adding HCFS and Quantum as Defendants. (Dkt. 83).

**B.** *Relators' Allegations*

Relators allege Defendants violated the FCA by engaging in two fraudulent schemes: the "Mid-Level Scheme" and the "Critical Care Scheme." (*Id*. at ¶¶ 2, 8). Relators further allege that Defendants have submitted false claims to eight different states, violating requirements of those states' Medicaid programs. (*Id*. at ¶¶ 148-218). ██████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

The Centers for Medicare & Medicaid Services ("CMS"), which administers the Medicare Program and works in partnership with state governments to administer the Medicaid Program, outlines the requirements for when split/shared and critical care services can be billed to Medicare. (Dkt. 83 at ¶ 1, n. 3). MACs are regional contractors that process the claims and work as fiscal intermediaries to help administer the Medicare Fee-for-Service ("FFS") Program. (*See* https://www.cms.gov/Medicare/Medicare-Contracting/Medicare-Administrative-Contractors/ Archives). ██████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████

██████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

### *1.   The Alleged "Mid-Level Scheme"*

Under the alleged "Mid-Level Scheme," Relators claim that Defendants overbilled the Medicare Program for services provided by mid-level providers ("MLP") (also known as non-physician providers ("NPP")) by requiring them "to indicate on medical records that a physician was involved in each patient encounter" and by requiring "on-duty physicians to sign [MLP] medical records." (Dkt. 83 at ¶¶ 2-6).

The Medicare Program allows a split/shared service to be billed under the physician's National Provider Identifier ("NPI") if the "physician provides any face-to-face portion of the E/M encounter with the patient." *See* Medicare Claims Processing Manual ("MCPM"), Ch. 12, §

30.6.1.B. If the physician does not provide any face-to-face encounter, "then the service may only be billed under the NPP's" NPI (for a lower payment amount). (*Id.*) ████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████████

████████████████████ ███████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███

████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████ ███████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████ ████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

11

██████████████████████████████████████████████

████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████

### 2. The Alleged "Critical Care Scheme"

The basis for Relators' claims regarding the "Critical Care Scheme" is that Defendants knowingly billed the Medicare Program for critical care services "when in fact critical care services were not rendered and/or were not medically necessary." (Dkt. 83 at ¶ 8). Relators allege that, to further this scheme, Defendants "require[d] physicians to falsify medical charts to show that critical care was performed when it was not required" and "set[ ] monthly or quarterly quotas for critical care." (*Id.* at ¶ 101).

Critical care services are "the direct delivery by a physician(s) [of] medical care for a critically ill or critically injured patient," which "involves high complexity decision making to assess, manipulate, and support vital system function(s) to treat single or multiple vital organ system failure and/or to prevent further life threatening deterioration of the patient's condition." *See* MCPM, Ch. 12, § 30.6.12(A). The Medicare Program provides guidance as to what services qualify as critical care. (*Id.*) ████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████





## LEGAL STANDARD

Summary judgment is appropriate when the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *United States ex rel. Taylor-Vick v. Smith*, 513 F.3d 228, 230 (5th Cir. 2008). The moving party has the initial burden of establishing the absence of a genuine issue of material fact either by: (1) presenting evidence that negates an essential element of the nonmoving party's case; or (2) demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322-23; *see also Latimer v. SmithKline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990).

The nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), nor is the "mere existence of a scintilla of evidence

in support of the nonmoving party's position" sufficient. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Conclusory allegations or unsubstantiated assertions of a dispute will not defeat summary judgment. *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

## ARGUMENTS AND AUTHORITIES

### I.   Defendants Are Entitled to Summary Judgment as to Counts One Through Ten Because Relators Cannot Establish Essential Elements of a FCA Violation.

To prevail on a False Claims Act ("FCA") cause of action, a relator must establish four elements, including that: (1) "there was a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim)." *Gonzalez v. Fresenius Med. Care N. Am.*, 689 F.3d 470, 475 (5th Cir. 2012) (quoting *United States ex rel. Longhi v. Lithium Power Techs., Inc.,* 575 F.3d 458, 467 (5th Cir. 2009)). Relators cannot establish or even create a dispute of any material fact as to any of the four elements required to succeed in a FCA cause of action alleging a national scheme to defraud. Therefore, summary judgment is appropriate here.

### A.   *Relators Cannot Establish Defendants Submitted a False or Fraudulent Claim as to the "Mid-Level Scheme" Because Sub-Regulatory Guidance Cannot Form the Basis of an Alleged False Claim.*

Alleged violations of Medicare Program MAC sub-regulatory guidance cannot form the basis of an FCA enforcement action as a matter of law. *See Polansky v. Exec. Health Res., Inc.*, 422 F. Supp. 3d 916, 935-36 (E.D. Pa. 2019). That is because such sub-regulatory guidance has not gone through the notice-and-comment rulemaking process expressly required by the Medicare Act. *See id.* (citing *Azar v. Allina Health Services*, 139 S. Ct. 1804 (2019)). Even Medicare Program policies that provide "mere guidance on a preexisting standard when the policy, in substance, is a gap-filling exercise prompted by the ambiguity of the prior policy" cannot avoid

the requisite notice-and-comment process. *Id*. at 936 (citing *Select Specialty Hosp.-Denver, Inc. v. Azar*, 391 F. Supp. 3d 53, 70 (D.D.C. 2019)).[2]

*Polansky* considered whether the Medicare Program standards contained in agency manuals, which formed the basis for some of the relator's FCA claims, were a "substantive legal standard" that "trigger[ed] a requirement for notice and comment under the Medicare Act" in accordance with *Allina*. *Id*. at 933-34. The court held that "substantive legal standard "'at a minimum includes a standard that creates, defines, and regulates the rights, duties, and powers of parties.'" *Id*. at 934 (quoting *Allina Health Servs. v. Price*, 863 F.3d 937, 943 (D.C. Cir. 2017)). The court concluded that, because the policy at issue "determined entitlement to reimbursement" and "delineate[d] the circumstances in which a hospital is entitled to higher inpatient reimbursement," it was a "substantive legal standard" under the Medicare Act. *Id*. at 935. The court ultimately found no FCA liability because there was no public notice-and-comment rulemaking process, and so the policy could not satisfy *Allina*. *Id*. at 935-36.

███████████████████████████████████████████████

███████████████████████    █████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

---

[2] The basis for the mid-level provider allegations amounts to—at most—a non-actionable regulatory violation that does not arise to the level of fraud violating the FCA. This alone provides grounds for this Court to enter summary judgment in favor of Defendants as to the mid-level scheme. Minor or insubstantial noncompliance or "insignificant regulatory or contractual violations" are not material for purposes of FCA liability. *Escobar II*, 136 S.Ct. at 2003, 2004 (citations omitted). This is because the "materiality standard is demanding" and the FCA "is not 'an all-purpose antifraud statute,' or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Escobar II*, 136 S.Ct. at 2003 (citations omitted). Relators have not alleged that the attestations for the mid-level scheme are false; instead, they have merely alleged that such attestations are not sufficient documentation. This is not fraud. Without further allegation that any errors are in fact false, rather than mere regulatory noncompliance, Relators will not be able to prove their case on the mid-level scheme. *See United States ex rel. Fisher v. Ocwen Loan Servicing, LLC*, No. 4:12-cv-461, 2016 WL 3031713, at *3 (E.D. Tex. May 25, 2016).

[3] As argued in Defendants' *Daubert* motion, Relators' experts offer unqualified and inadmissible opinions based on an inaccurate assumption that sub-regulatory guidance can form the basis for an alleged false claim. This provides additional separate grounds to preclude portions of the proffered testimony and reports.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████ This cannot form the basis for fraud as a matter of law.

As an initial matter, it is undisputed that this MAC sub-regulatory guidance, on which Relators' expert relies, constitutes a "substantive legal standard" pursuant to *Allina*. *See Polansky*, 422 F. Supp. 3d at 935. ███████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████ Thus, the MAC sub-regulatory guidance, on which Relators rely for their alleged mid-level scheme and which was not subject to any public notice or comment process, does not withstand scrutiny as a matter of law under *Allina*. *Id*. at 935-36.

█████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████. *Polansky* and *Allina* make clear that Relators'

reliance on MAC guidance as support for the alleged mid-level scheme cannot constitute FCA

false claims. Thus, Relators' cannot satisfy the first element required to establish an FCA cause of

action with respect to the alleged mid-level scheme, and summary judgment should be granted.

**B.  *Relators Cannot Establish that Defendants Submitted a False or Fraudulent Claim as to the "Critical Care Scheme" Because a Difference in Medical Judgment Cannot Support the Basis of an Alleged False Claim.***

"'[E]xpressions of opinion, scientific judgments, or statements as to conclusions about

which reasonable minds may differ cannot'" constitute fraud, and so an FCA claim predicated

solely on questioning the exercise of a physician's subjective clinical judgment necessarily fails.

*United States ex rel. Wall v. Vista Hospice Care, Inc.*, No. 3:07-cv-00604-M, 2016 WL 3449833,

at *17 (N.D. Tex. June 20, 2016) (citing *United States ex rel. Morton v. A Plus Benefits, Inc.*, 139

F. App'x. 980, 982-83 (10th Cir. 2005), *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*,

355 F. 3d 370, 376 (5th Cir. 2004), and *United States v. AseraCare, Inc*, 176 F. Supp. 3d 1282,

1285 (N.D. Ala. 2016), *vacated and remanded sub nom.*, 938 F.3d 1278 (11th Cir. 2019)) (holding

that a "testifying physician's disagreement with a certifying physician's prediction of life

expectancy is not enough to show falsity."). Indeed,

> [i]f all that was necessary to prove falsity was to put up a medical expert to review medical records and provide an opinion at odds with that of the certifying physician, hospice providers would be subject to potential FCA liability 'any time [a relator] could find a medical expert who disagreed with the certifying physician's clinical judgment.'

*Id*. at *18 (quoting *AseraCare*, 176 F. Supp. 3d at 1285). A relator needs to demonstrate "'that the

certifying physician did not or could not have believed, based on his or her clinical judgment, that

the patient was eligible for [such] care'" to survive summary judgment. *Id*. (citing *United States*

*ex rel. Geschrey v. Generations Healthcare, LLC*, 922 F.Supp.2d 695, 703 (N.D. Ill. 2012)).

Like in *Wall*, Relators here cannot create a triable issue of fact as to Defendants' determinations about patient eligibility for critical care services. The Medicare Program defines critical care services as "the direct delivery by a physician(s) [of] medical care for a critically ill or critically injured patient." *See* MCPM, Ch. 12, § 30.6.12(A). Further, a "critical illness or injury accurately impairs one or more vital organ systems such that there is a <u>high probability of imminent or life threatening deterioration</u> in the patient's condition." *Id*. (emphasis in original). The Medicare Program provides examples of "vital organ system failure," but nevertheless indicates that "critical care may be provided in life threatening situations when these elements are not present." *Id*. According to the Medicare Program, "[c]ritical care services must be medically necessary and reasonable." *Id*. at § 30.6.12(B). While there are certain "[e]xamples of critical care billing that may require further review," such as "submitting claims for more than 12 hours of critical care time by a physician for one or more patients on the same given calendar date," the physician generally need only "document the total time that critical care services were provided" for "each date and encounter entry" to comply with CMS requirements. *Id*. at § 30.6.12(E). Thus, based on the Medicare Program's policies, whether "there is a high probability of imminent or life threatening deterioration in the patient's condition" ultimately depends on the actual treating physician's subjective determination that the patient meets this definition.

Under the alleged "Critical Care Scheme," Relators claim that Defendants knowingly billed the Medicare Program for unnecessary critical care services by "requir[ing] physicians to falsify medical charts to show that critical care was performed when it was not required" and "set[ting] monthly or quarterly quotas for critical care." (Dkt. 83 at ¶¶ 8, 101).

19





███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████   ████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████   ██████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████

    Unless Relators can provide objective evidence that the clinicians, ████████████████████

████████████████████████████████████████████ did not or could not

have believed that, based on their clinical judgment, the patient was eligible for critical care

services, Relators' evidence does not arise to fraud. Relators have not and cannot do so.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████   ██████████████████████████

███████████████████████████████████████████████████████

_____

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████

Ultimately, conflicting expert opinions regarding the provision of critical care services, even when coupled with ████████████████████████████████████████████████████ ████████, do not create a triable issue of fact regarding the falsity of the physician certifications. *See Wall*, 2016 WL 3449833, at \*17-18. To find otherwise would mean that a health care defendant could be subject to FCA liability anytime an outside expert disagreed with the clinical judgment of the physician actually providing the care at issue. *Id*. at \*18. Accordingly, Relators cannot establish that any alleged claims tied to the purported Critical Care Scheme are fraudulent, and Defendants are entitled to summary judgment as to the same.

**C.** ***Relators Cannot Establish Materiality Because the Government Has Continued to Pay Claims Despite Actual Knowledge of the Alleged Fraud and Declined to Intervene Following its Investigation.***

For FCA liability to attach, a violation must be material to the Government's payment decision, meaning it has a "natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." *See Universal Health Servs., Inc. v. United States ex. rel. Escobar*, 136 S. Ct. 1989, 2001 (2016) ("*Escobar II*"); 31 U.S.C. § 3729(b)(4).

In "determining materiality in connection with a payment decision" under *Escobar II*'s demanding and holistic materiality standard, the court can consider numerous factors "with no one factor being necessarily dispositive." *United States ex rel. Escobar v. Universal Health Services, Inc.*, 842 F.3d 103, 109 (1st Cir. 2016) ("*Escobar*"); *see also Escobar II*, 136 S. Ct. at 2001 (quoting *Matrixx Initiatives, Inc. v. Siracusano,* 563 U.S. 27, 39 (2011)). Ultimately, "the fundamental inquiry is 'whether a piece of information is sufficiently important to influence the behavior of the recipient,'" which considers both "'the likely or **actual behavior** of the recipient

of the alleged misrepresentation.'" *Escobar*, 842 F.3d at 110; *Escobar II*, 136 S. Ct. at 2002 (citations omitted) (emphasis added).

Relators cannot establish materiality because, as discussed above, the basis for the alleged "Mid-Level Scheme" amounts, at best, to an insignificant MAC sub-regulatory guidance violation regarding what a MAC believes to be proper documentation. Further, the Government has continued to pay Medicare claims in full to the Defendants despite actual knowledge of the alleged violations, and the Government has declined to intervene in the case following its lengthy investigation.

1. It is Undisputed that the Government Has Continued to Pay Medicare Claims in Full Despite Actual Knowledge of Alleged Violations.

If the Government pays a particular claim in full "despite its actual knowledge that certain requirements were violated, and has signaled no change in position, that is very strong evidence that those requirements are not material." *Escobar II*, 136 S. Ct. at 2003-04. It is the Government's **actual** behavior following **actual** knowledge of the allegations under these circumstances that matters for the materiality analysis. *Escobar*, 842 F. 3d at 109-110 (citing *Winkelman*, 827 F.3d at 211) (emphasis added); *Escobar II*, 136 S. Ct. at 2002.

The Fifth Circuit has implied that the Government can be charged with "actual knowledge" for purposes of *Escobar II*'s materiality analysis when a relator files suit and prompts the Government's investigation into the allegations.[6] For example, *United States ex rel. Harman v.*

---

[6] Courts in the First, Third, Seventh, and Tenth Circuits have similarly held that a relators' allegations trigger the Government's "actual knowledge" for materiality purposes. *See, e.g.*, *D'Agostino v. ev3, Inc.*, 845 F.3d 1, 7 (1st Cir. 2016) (noting that it "casts serious doubt on the materiality of the fraudulent representations" when CMS has not denied reimbursement "in the wake of" a relator's allegations); *Polansky*, 422 F. Supp. 3d at 939 (holding that "the Government's decision not to reject reimbursement claims…—despite full knowledge of Relator's theory of the alleged fraud since July 2012 when Relator first filed his complaint—confirms that Defendant's noncompliance is likely not material under the FCA"); *United States v. Pfizer*, No. 16-CV-7142, 2019 WL 1200753, at *1, 8 (N.D. Ill. Mar. 14, 2019) (finding lack of materiality when, inter alia, the relator failed to allege "that the Government's *actual* decision to pay was different" or was in any way altered "in response to his suit") (emphasis in original); *United States ex rel. Janssen v. Lawrence Memorial Hospital*, 949 F.3d 533, 541-542, n. 12 (10th Cir. 2020) (finding the allegations

*Trinity Industries, Inc.*, 872 F.3d 645 (5th Cir. 2017), concluded that "though not dispositive, continued payment by the federal government after it **learns of the alleged fraud** substantially increases the burden on the relator in establishing materiality." *Id*. at 663 (emphasis added); *see also United States ex rel. Porter v. Magnolia Health Plan, Inc.*, 810 F. App'x 237, 242 (5th Cir. 2020) (quoting *Harman*, 872 F.3d at 663); *Abbott v. BP Expl. & Prod., Inc.*, 851 F.3d 384, 388 (5th Cir. 2017) (holding that the DOJ's decision to allow the defendant to continue drilling "after a substantial investigation into Plaintiffs' allegations…represents 'strong evidence' that the requirements in those regulations are not material"). In finding that the alleged FCA violations were not material, *Harman* cited to *United States ex rel. McBride v. Halliburton Co.*, 848 F.3d 1027 (D.C. Cir. 2017), which held the fact that the Government investigated the allegations "'and did not disallow any charged costs'" was "'very strong evidence'" that the alleged violations were not material. *Id*. at 663 (quoting *McBride*, 848 F.3d at 1034).

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

2.   It is Undisputed that the Government Declined to Intervene Following Its Investigation.

Since *Escobar II* clarified the rigorous materiality analysis required for FCA cases, "numerous federal courts have found insufficient FCA materiality where the government

---

at issue were immaterial given CMS's "inaction in the face of detailed allegations from a former employee" and the fact that the defendant's "alleged misconduct affected only a subset of the data reported under the" programs at issue).

investigated a relator's allegations but chose not to intervene or otherwise address the defendant's allegedly improper behavior." *Polansky*, 422 F. Supp. 3d at 938 (citing *Cressman v. Solid Waste Services, Inc.*, No. 13-5693, 2018 WL 16933489, at \*6 (E.D. Pa. Apr. 6, 2018); *United States v. Sanford-Brown, Ltd.*, 840 F.3d 445, 447 (7th Cir. 2016)); *see also United States v. Comstor Corp.*, 308 F. Supp. 3d 56, 86 (D.D.C. 2018), *reconsideration denied sub nom. United States ex rel. Folliard v. Comstor Corp.*, No. CV 11-731 (BAH), 2018 WL 5777085 (D.D.C. Nov. 2, 2018) (holding that the relator failed to adequately plead materiality when the government investigated the allegations for almost five years, but declined to intervene); *United States v. Kindred Healthcare, Inc.*, No. CV 16-683, 2020 WL 3529438, at \*10-11 (E.D. Pa. June 29, 2020) (noting that "courts have held, post-*Escobar*, that the Government's decision not to intervene in the action weighs against materiality"); *Harman*, 872 F.3d at 665 (noting that not only was the Government's continued payment "'very strong evidence'" of the lack of materiality, but "all but one [of the nine states involved] declined to intervene in the action).

Not only has the Government never refused to pay a Medicare or Medicaid claim submitted by Defendants, but the United States and the Plaintiff States declined to intervene in the action after investigating the allegations for more than two years. (Order on the Government's Notice of Election to Decline Intervention, Dkt. 21). It is the Government's actual behavior that ultimately matters with respect to materiality. So the fact that the United States and Plaintiff States all declined to intervene, coupled with the Government's continued payment of Medicare and Medicaid claims despite actual knowledge of Relators' allegations, evidences the lack of materiality under *Escobar II* and its progeny. Thus, Defendants are entitled to summary judgment as a matter of law.

**D.** *Relators Cannot Establish the Requisite Scienter as to the Alleged Mid-Level Scheme or Critical Care Scheme.*

"[W]here disputed legal issues arise from vague provisions or regulations, a [defendant's] decision to take advantage of a position [cannot] result in his filing a 'knowingly' false claim." *United States v. Southland Mgmt. Corp.*, 326 F.3d 669, 681–82 (5th Cir. 2003) (citations omitted). To survive summary judgment in the Fifth Circuit as to the elevated scienter standard for FCA violations, the relator "must raise a genuine dispute of material fact that [the defendants] acted with either 1) actual knowledge, 2) deliberate ignorance, or 3) reckless disregard." *United States ex rel. Johnson v. Kaner Med. Grp., P.A.*, 641 F. App'x 391, 394 (5th Cir. 2016) (affirming summary judgment in favor of a defendant when the defendant's completion of a Form 1500, which at most arose to negligence, formed the basis of the FCA action); *see also* 31 U.S.C. § 3729(b). FCA liability does not attach "merely for a health care provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe." *United States ex rel. Willard v. Humana Health Plan of Tex.*, 336 F. 3d 375, 381 (5th Cir. 2003); *see also Johnson*, 641 F. App'x at 394; 31 U.S.C. § 3729(b).

Relators cannot create a triable issue of fact that the Defendants acted with actual knowledge, deliberate ignorance, or reckless disregard sufficient to survive summary judgment as to the elevated FCA scienter standard.

1. Relators Cannot Establish Defendants Knowingly Presented Any False Claims Related to their Mid-Level Allegations.



<hr />

[7] ████████████████████████████████████████████ expressly responsible for offering guidance on how to reconcile varying formal and informal guidance on Medicare regulations, binds Medicare under an agency theory. *See Viazis v. Am. Ass'n of Orthodontists*, 182 F. Supp. 2d 552, 560 (E.D. Tex. 2001), *aff'd*, 314 F.3d 758 (5th Cir. 2002) ("An elementary and widely accepted principle of agency law is that apparent authority results when a principal does something to make third parties believe its agents have authority to act in a certain way").

██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████. This is also

consistent with the Colorado Medical Board's licensing regulations for physician assistance, which

require physician supervisors to review and sign patient charts of services provided by physician

assistants. *See* 3 CCR 713-7, Rule 400, § 2(C)(5). ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████

    ██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████



Given Defendants' extensive efforts to ensure that their internal policies, procedures, and practices with respect to billing the Medicare Program for split/shared services complied with all federal and state requirements, Relators cannot show Defendants knowingly asked the Government to pay any amounts for split/shared services that were not owed.

2.   <u>Relators Cannot Establish Defendants Knowingly Presented Any False Claims Related to their Critical Care Allegations</u>.

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

Additionally, ████████████████████████████████████████████████

████████████████████████████████████, which have been and are more rigorous than CMS's

requirements. *See* MCPM Section 30.6.12. ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████



Thus, Defendants reasonably believed that they were complying with both the Medicare Program and state-specific requirements at all times and consistently reviewed, discussed, and revised split/shared and critical care services policies to comport with evolving guidance. To the extent any claims were mistakenly billed as split/shared or critical care services, a mistake in guidance does not satisfy the elevated scienter standard required under the FCA. *See Southland Mgmt. Corp.*, 326 F.3d at 681-82. Accordingly, Relators cannot demonstrate that Defendants knowingly submitted any false claims stemming from either the alleged mid-level scheme or critical care scheme.

**E.** ***Relators Cannot Establish that THHI, TF, THI, or AmeriTeam Submitted Any False Claims or Participated in the Claims Process.***

It is well established that "merely '[b]eing a parent corporation of a subsidiary that commits a FCA violation, without some degree of participation by the parent in the claims process, is not enough to support a claim against the parent for the subsidiary's FCA violation.'" *United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 59–60 (D.D.C. 2007) (citations omitted). Thus, the parent company will not be liable unless the relator can demonstrate either that the company "is liable under a veil piercing or alter ego theory, or that it is directly

liable for its own role in the submission of false claims." *Hockett*, 498 F. Supp. 2d at 60. Relators cannot establish THHI, TF, THI, and AmeriTeam are liable under either of these theories.

1. Relators Cannot Establish that THHI, TF, THI, and AmeriTeam Are Liable Under a Veil Piercing or Alter Ego Theory.

In determining whether a parent company can be liable for an FCA violation under a veil piercing theory, courts apply federal law and ask two questions: "(1) is there such unity of interest and ownership that the separate personalities of the [parent company] and the [subsidiary] no longer exist?; and (2) if the acts are treated as those of the [subsidiary] alone, will an inequitable result follow?" *Hockett*, 498 F. Supp. 2d at 60 (quoting *Labadie Coal Co. v. Black*, 672 F. 2d 92, 97 (D.C. Cir. 1982)); *see also United States ex rel. Jamison v. McKesson Corp.*, No. 2:08cv214-SA-JMV, 2012 WL 487998, at *9 (N.D. Miss. Feb. 14, 2012).

With respect to the first question, the court examines whether the "parent 'so dominated the subsidiary corporation as to negate its separate personality.'" *Hockett*, 498 F. Supp. 2d at 60 (citations omitted). In making this determination, the court looks to whether "'the parent exercised such control over the subsidiary that the subsidiary has become its 'mere instrumentality'" and considers factors such as: the "identity of ownership; commonality of officers and directors; the financial relationship between parent and subsidiary; whether the two maintain separate books, records, offices, and the like; and whether property of one is used by the other as essentially its own." *Id.* (citations omitted).

The second question "looks to the basic issue of fairness under the facts." *Hockett*, 498 F. Supp. 2d at 60 (quoting *Labadie Coal Co*., 672 F.2d at 97); *see also Jamison*, 2012 WL 487998, at *9. Examples of such an unfair result could include "inadequate capitalization or insolvency of the subsidiaries; diversion or commingling of assets between the corporations; a failure to observe corporate formalities; or a failure to properly maintain separate corporate records." *United States*

*v. Universal Health Servs., Inc.*, No. 1:07CV00054, 2010 WL 4323082, at *4 (W.D. Va. Oct. 31, 2010). "If both elements are met, the subsidiary is deemed to be the parent's alter ego, agent, or mere instrumentality." *Id.* at *3 (citing *Hockett*, 498 F. Supp. 2d at 60).

Regardless, none of these entities—THHI, TF, THI, or AmeriTeam—has ever exercised "such control" over HCFS or Quantum that these subsidiaries have become their "mere instrumentality." *See Hockett*, 498 F. Supp.2d at 60.

Further, Relators have not and cannot put forth any evidence that fairness requires that these holding company entities be held liable for the alleged actions of their subsidiaries. Accordingly, Relators cannot establish these entities should be liable under a veil piercing or alter ego theory.

2.   Relators Cannot Establish that THHI, TF, THI, and AmeriTeam Played Any Role in the Alleged Submission of False Claims.

For FCA liability to attach, the parent company defendant must be shown to have engaged in the conduct that caused a false claim to be submitted. *See Hockett*, 498 F. Supp.2d at 59-60. A relator can create a triable issue regarding a parent company's direct involvement in submitting false claims if, for example, the company was directly involved in either finalizing, or directing another employee to finalize, the cost report or billing submitted to the Government. *See id.* at 62-63.



. The same is true with respect to THI.

. (Dkt. 38-2 at ¶ 27).



## II.   Relators Have Neither Identified Evidence Nor Made Specific Allegations of False Medicaid Claims Submitted By Defendants, and, Therefore, Defendants are Entitled to Summary Judgment on the State Law Claims (Counts Three through Ten).

Although Relators have brought eight causes of action resting on state law for alleged fraudulent Medicaid claims, they have not produced any evidence of false or fraudulent claims submitted by Defendants to the Medicaid Program and its state healthcare counterparts, nor have their experts reviewed and considered any allegedly false Medicaid claims in forming their opinions. In the absence of any evidence to support these claims, and Relators' apparent abandonment of these claims, the Court should grant summary judgment in favor of Defendants on each of the eight state causes of action.

Relators have failed to provide any examples of false Medicaid claims in discovery, and most Medicaid Programs do not even recognize the split/shared billing rules found in the Medicare Program. Indeed, when specifically asked to "[i]dentify each claim for payment that You contend was submitted to the Government in violation of the [FCA]," the Relators did not identify a single purportedly false Medicaid claim. (Ex. N, Relators' Resp. to Interrog. at pp. 30-37). Relators have also not projected any damages for Medicaid-related losses. (*Id*. at pp. 15-17).



No evidence that the Defendants submitted a single false Medicaid claim is fatal to Relators' state-law allegations. In the absence of any facts whatsoever supporting the state Medicaid causes of actions, summary judgment must be entered in favor of the Defendants. *See Fisher*, 2016 WL 303171 at *3.

**III.   The Six-Year Statute of Limitations in 31 U.S.C. § 3731(b)(1) Governs Relators' FCA Claims.**

Relators' claims are subject to the six-year statute of limitations of 31 U.S.C. § 3731(b)(1). The record demonstrates that Relators have not satisfied the statutory requirements that would be necessary to invoke the benefit of the limitations period in 31 U.S.C. § 3731(b)(2).

The FCA "contains two limitations periods." *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 139 S. Ct. 1507, 1510 (2019). An FCA claim "may not be brought—

> (1) more than 6 years after the date on which the violation of section 3729 is committed, or
>
> (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,
>
> whichever period occurs last.

31 U.S.C. § 3731(b). This limitations statutory scheme has been described as six years in (b)(1) running from the date a FCA violation was committed, or three years in (b)(2) based on when the Government had actual or constructive knowledge with a ten-year statute of repose for (b)(2)'s period): "[T]he ten-year bar is a statute of repose paired with a shorter statute of limitations, as the [Supreme] Court observed that 'the FCA's statute of limitations provision' requires 'that a qui tam action must be brought within six years of a violation or within three years of the date by which the United States should have known about a violation,' and separately that '[i]n no circumstances ... may a suit be brought more than 10 years after the date of a violation." *United States ex rel. Wood v. Allergan, Inc.*, No. 19-cv-4029, 2020 WL 3073293, at *3 (S.D.N.Y. June 10, 2020) (quoting *Kellogg Brown & Root Servs., Inc. v. United States, ex rel. Carter*, 575 U.S. 650, 135 S. Ct. 1970, 1974 (2015)).

The United States Supreme Court in *Cochise* addressed whether the limitations period in subsection 3731(b)(2) can apply in non-intervened actions, such as this one. *Cochise*, 139 S. Ct. at 1510. In holding that both (b)(1) and (b)(2) are available in non-intervened actions, *id.* at 1512, *Cochise* did not create a blanket or automatic ten-year statute of limitations. Rather, "the Court repeatedly acknowledged that § 3731(b)(2) provides a three-year limitations period." *Houpt v.*

*Wells Fargo Bank, N.A.*, 800 F. App'x 533, 534 n.1 (9th Cir. 2020) (citing *Cochise*, 139 S. Ct. at 1510, 1514).

Instead, the availability of an extended window—potentially, but not necessarily, as many as 10 years—in (b)(2) is contingent on a party first satisfying the conditions for application of (b)(2)'s three-year statute of limitations. "This provision of the FCA allows claims to be brought no more than 10 years after a violation, so long as the action is brought within three years of when certain Government officials knew or should have known the relevant facts." *United States ex rel. Fadlalla v. DynCorp Int'l*, 402 F. Supp. 3d 162, 194 (D. Md. 2019) (citing 31 U.S.C. § 3731(b)(2)). Specifically, to receive the benefit of an extended period, a claim cannot be brought "more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances." 31 U.S.C. § 3731(b)(2).

In denying Defendants' Motion to Dismiss the Second Amended Complaint based on a statute of limitations affirmative defense, rather than rejecting Defendants' limitations argument as a matter of law, this Court explained that, pursuant to Rule 12(b)(6), "Relators *may* be entitled to the FCA's extended limitations period." (Order Denying Motion to Dismiss, p. 18 [Dkt. 104]) (emphasis added) (referring to (b)(2)). Following extensive discovery, however, there is no genuine issue of material fact that might permit Relators' to assert that their claims fall within the ambit of the limitations period described in (b)(2).

Relators cannot rely on the disclosure statement submitted to the Government on April 19, 2016—which was required by 31 U.S.C. § 3730 as a prerequisite for filing suit—to bring themselves within the ambit of (b)(2) in the hopes of taking advantage of an extended limitations period. Even if the disclosure statement Relators submitted to the Government on April 19, 2016

triggered application of (b)(2)'s limitations period, at a minimum Relators' claims against two Defendants—Quantum and HCFS—would still be subject to the six-year limitation period in (b)(1) because the Relators did not bring suit against Quantum and HCFS until September 19, 2019, which was more than three years after Relators' April 19, 2016 submission of their disclosure statement to the Government. (Dkt. 83). And, even if (b)(2)'s extended period were to apply in this case—which is does not—at most it would permit an additional three years, not a ten-year lookback period.

A. **There is No Evidence that Relators Informed the Government of the "Facts Material to the Right of Action," Necessary to Trigger Application of Subsection 3731(b)(2).**

For the (b)(2) limitations period to apply, a relator must first notify the Government of "facts material to the right of action." 31 U.S.C. § 3731(b)(2). There is no evidence this was done here. As a result, Relators are not eligible for the extended period of 31 U.S.C. § 3731(b)(2) and this Court should enter summary judgment in favor of Defendants on this affirmative defense and find that this action is subject to a six year limitations period.

When a defendant moves for summary judgment on an affirmative defense, that defendant must establish the defense as a matter of law. *Crescent Towing & Salvage Co. v. M/V Anax*, 40 F.3d 741, 744 (5th Cir. 1994). Once the defendant carries this burden, the burden shifts and the plaintiff then must produce evidence demonstrating a genuine issue of material fact on the defense. *Dewan v. M-I, L.L.C.*, 858 F.3d 331, 334 (5th Cir. 2017).

Section 3730 (the section preceding the one containing the statute of limitations), sets out the required written disclosures that must be served on the Government with a copy of the complaint:

> A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure. The complaint shall be filed in camera,

> shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

31 U.S.C. § 3730(b)(2). Other than the statutory disclosures required to be made by section 3730, Relators cannot produce any evidence that the Government was notified of material facts before Relators made their section 3730 disclosures. The matter is no longer at the motion-to-dismiss stage, where every favorable inference in a complaint was granted to the Relators. Now, after complete discovery, no evidence exists that the Relators actually notified the Government.

Although Relators have relied heavily on *Cochise*, *Cochise* is distinguishable and does not support application of 3731(b)(2)'s limitations period. 139 S. Ct. 1507. In *Cochise*, the relator was interviewed by federal agents on November 30, 2010 when he "claims to have revealed [defendant]'s allegedly fraudulent scheme" that had occurred "from some time prior to January 2006 until early 2007." 139 S. Ct. at 1511. Almost three years after he revealed the alleged fraud during this interview, the relator on November 27, 2013 initiated his FCA suit. Because that date was more than six years after the last date of the allegedly fraudulent claim (early 2007) and thus barred by (b)(1)'s six-year limitations period, the relator argued that his earlier communications with the Government triggered (b)(2)'s extended time period. *Id.* There, the interview with federal agents put the Government on notice of the material facts within the meaning of section 3731(b)(2)—all of which predated the relator's statutorily required disclosures under subsection 3730(b)(2).

By contrast, no such triggering event occurred in this matter. Relators want the benefit of an extended limitations period under subsection 3731(b)(2) without there being any evidence that they previously put the Government on notice of the claims, as the *Cochise* relator did. Instead, Relators' position would require that this Court hold that merely complying with the terms of

section 3730's written disclosures requirement prior to filing suit automatically triggers 3731(b)(2)'s limitations period, giving Relators the benefit of FCA claims going back as many as ten years. *Cochise* does not support that result. Nor does the plain text of the statute.

Relators do not qualify for the extended period of limitations in section 3731(b)(2). Instead, all claims are subject to (b)(1)'s six-year statute of limitations. This Court should grant summary judgment in favor of Defendants on statute of limitations grounds, and exclude any claim to the extent it arose more than six years before Relators brought suit against a particular Defendant.

### B. *Independently, Relators' Claims Against Quantum and HCFS, Raised for the First Time in the Second Amended Complaint More Than Three Years After Submitting the Disclosure, Are Not Entitled to Any Extended Limitations Period Under 3731(b)(2).*

Even if, as Relators contend, subsection 3731(b)(2)'s three-year clock started the day that Relators notified the Government about their contentions of fraud by submitting a written disclosure in compliance with subsection 3730(b)(2)—and it did not—then, under subsection 3730(b)(2), Relators had an obligation to disclose to the United States "substantially all material evidence and information" regarding the Relators' allegations against all Defendants. 31 U.S.C. § 3730(b)(2). Under Relators' limitations theory, 3731(b)(2)'s three-year limitations period would have begun when Relators had the statutory obligation to bring suit against all supposedly liable parties. As stated, Relators failed to bring suit against Quantum and HCFS within three years after Relators claimed to have triggered 3731(b)(2) by filing their pre-suit section 3730 written disclosures on April 19, 2016, some six days before filing suit on April 25, 2016. (Dkt. 1).

Even if Relators' statutorily required section 3730 written disclosures were to qualify as a an event triggering application of subsection 3731(b)(2)'s limitation period, there is no factual dispute that, by April 19, 2016, "facts material to the right of action [were] known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances." 31 U.S.C. § 3731(b)(2). Relators have acknowledged that, on April 19, 2016,

they submitted a disclosure statement to the Government pursuant to Section 3730(b)(2). (Ex. I, Relators' Priv. Log). In fact, Relators have already represented to the Court that *because of this very disclosure*, the Government was aware, or should have been aware, of these facts for the purposes of starting the three-year clock in Section 3731(b)(2). In responding to Defendants' arguments about the inapplicability of *Cochise* and section 3731(b)(2), Relators argued that their section 3730(b)(2) disclosure statement was evidence of Relators "'[raising] concerns with the government prior to filing their initial Complaint.'" (Relators' Sur-Reply in Opposition to Defendants' Motion to Dismiss, p. 5 [Dkt. 101]).

Although Relators bought suit on April 25, 2016, Relators failed to bring claims against Defendants Quantum and HCFS until September 19, 2019 when they filed their Second Amended Complaint.[8] But September 19, 2019 is more than three years after Relators claim to have triggered 3731(b)(2)'s limitations period by filing their pre-suit section 3730 written disclosures on April 19, 2016. (Dkt. 83). Relators have thus failed to satisfy the prerequisites of applying section 3731(b)(2)—even under their theory—so its limitations period does not apply to these two Defendants.

Because the claims against Quantum and HCFS are barred by (b)(2), they are governed by (b)(1)'s six-year period. FCA claims against Quantum and HCFS thus can only reach as far back as six years from the date Relators first brought these claims against Quantum and HCFS (September 19, 2019). Accordingly, any claim by Relators against Quantum and HCFS that arises before September 20, 2013 is time-barred by subsection 3731(b)(1). This Court should grant

---

[8] Relators cannot plead ignorance and claim that they were not aware of the corporate entities Quantum and HFCS in April 2016. ████████████████████████████████████████ ████████████████████████████). Additionally, HCFS was identified as a related entity of Team Health in publicly filed SEC Form 10-K disclosures. (Ex. B, 2012 10-K Disclosure at 102).https://www.sec.gov/Archives/edgar/vprr/1300/13002271.pdf

summary judgment in favor of Quantum and HCFS to the extent that Relators seek damages against them for any claims arising prior to the start of the statute of limitations period.

## <u>CONCLUSION</u>

Based on the foregoing, Defendants respectfully request the Court grant their Motion for Summary Judgment, or for Partial Summary Judgment of Claims in the Alternative, pursuant to Fed. R. Civ. P. 56 and Local Rule CV-56 because Relators have failed to make a showing sufficient to establish the elements essential to their FCA causes of action.

Dated: September 17, 2020

Respectfully submitted,

By:  _/s/Eric H. Findlay_____
Eric H. Findlay
Roger Brian Craft
Findlay Craft, P.C.
102 N College Avenue
Suite 900
Tyler, TX 75702
Tel: (903) 534-1100
Fax: (903) 534-1137
efindlay@findlaycraft.com
bcraft@findlaycraft.com

George B. Breen
EPSTEIN BECKER & GREEN, P.C.
1227 25th Street, NW
Washington, DC 20037
Tel: (202) 861-1823
Fax: (202) 861-3523
GBreen@ebglaw.com

Christopher Farella
EPSTEIN BECKER & GREEN, P.C.
One Gateway Center
Newark, NJ 07102
Tel: (973) 639-8541
Fax: (973) 639-8739
cfarella@ebglaw.com

*Counsel for Defendants Team Health Holdings*

*Inc., Team Finance, L.L.C., Team Health Inc., Ameriteam Services, L.L.C., HCFS Health Care Financial Services, L.L.C., and Quantum Plus, L.L.C.*

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I certify that the foregoing document is authorized to be filed under seal by the Unopposed Motion for Leave to Seal Defendants' Motion for Summary Judgment, or Partial Summary Judgment in the Alternative, Dkt. 170.

*/s/ Eric H. Findlay*
Eric H. Findlay

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served on September 17, 2020, with a copy of this document via electronic mail.

*/s/ Eric H. Findlay*
Eric H. Findlay

## CERTIFICATE OF CONFERENCE

Counsel for Defendants conferred with counsel for Relators regarding this motion on September 17, 2020, and Relators oppose Defendants' Motion for Summary Judgment, or Partial Summary Judgment in the Alternative.

*/s/ Eric H. Findlay*
Eric H. Findlay

46