# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., *ex rel.* CALEB HERNANDEZ and JASON WHALEY, Relators,<br><br>Plaintiffs,<br><br>v.<br><br>TEAM HEALTH HOLDINGS INC., et al.,<br><br>Defendants. | Case No. 2:16-cv-00432-JRG<br>Chief Judge Rodney Gilstrap |

## UNITED STATES' STATEMENT OF INTEREST REGARDING CERTAIN ISSUES RAISED UNDER THE FALSE CLAIMS ACT

Recently, Defendants raised various issues under the False Claims Act ("FCA") in their Motion for Summary Judgment ("Def. MSJ") and Motion to Dismiss Relators' Third Amended Complaint ("Def. MTD"). *See* Dkt. Nos. 172 (Def. MSJ filed under seal); 178 (Def. MSJ filed with redactions); 181 (Def. MTD filed under seal); 183 (Def. MTD filed with redactions). Under 28 U.S.C. § 517, the Department of Justice is authorized "to attend to the interests of the United States in" pending suits. Although the United States has not intervened in this action, it remains the real party in interest, entitled to share in any recovery that may be obtained. *See* 31 U.S.C. § 3730(d); *United States ex rel. Eisenstein v. City of N.Y.*, 556 U.S. 928, 934 (2009); *Searcy v. Philips Electronics N. Am. Corp.*, 117 F.3d 154, 156 (5th Cir. 1997). And, because the False Claims Act ("FCA") is the United States' primary civil tool for prosecuting fraud against the Government, the United States has a significant interest in how decisions by the courts, even in declined actions, may shape future enforcement of the statute. For this reason, the United States

1

respectfully submits this Statement of Interest to provide the Court with its view on two issues raised in Defendants' recent motions: (1) the materiality of the FCA violations alleged by Relators; and (2) the purpose of the requirements set forth in Section 3730(b)(2) of the FCA.[1]

## STATUTORY FRAMEWORK

To show an FCA violation, a relator must satisfy the following four elements: (1) a false statement or fraudulent course of conduct; (2) that was made or carried out with the requisite scienter; (3) that was material; and (4) that caused the government to pay out money (*i.e.*, that involved a claim). *United States ex rel. Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014) (quoting *United States ex rel. Longhi v. United States*, 575 F.3d 458, 467 (5th Cir. 2009)). Under the element of materiality, the FCA "requires proof only that the defendant's false statements could have influenced the government's payment decision or had the potential to influence the government's decision, not that the false statements actually did so." *Longhi*, 575 F.3d at 469.

## DISCUSSION

### I. Materiality

Defendants incorrectly argue in their Motion for Summary Judgment that the United States' continued payment of the claims at issue, coupled with the government's declination to intervene in the claims being litigated, show that Relators have not pleaded material falsities. Def. MSJ at 23-26.

In *Universal Health Services v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016), the Supreme Court explained that "materiality looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation." *Id.* at 2002 (internal alterations omitted). A

---

[1] The fact that the United States is not providing its views on other arguments raised in Defendants' Motions should not be construed as signaling agreement or disagreement with those arguments.

matter is material if (1) a reasonable person would attach importance to it in determining a choice of action in the transaction, or (2) the defendant knew or had reason to know that the recipient of the representation attaches importance to the specific matter in determining his choice of action, regardless whether a reasonable person would do so. *Id.* at 2002-03 (citations omitted). Among the factors identified by the Court was "the Government's decision to expressly identify a provision as a condition of payment," which the Court viewed as "relevant, but not automatically dispositive." *Id.* at 2003. Additional relevant factors include whether the alleged violation is significant or "minor or insubstantial," *id.*, whether it goes to the "essence of the bargain," *id.* at 2003 n.5, and what actions the United States took in this or other cases when it had "actual knowledge" of such violations, *id.* at 2003-04.

      The Supreme Court was careful to observe that "materiality cannot rest on a single fact or occurrence as always determinative," *id.* at 2001 (citation omitted). It therefore did not depart from the statutory text and hold that any particular factors are dispositive. Courts have repeatedly recognized that *Escobar* set forth a "holistic approach to determining materiality in connection with a payment decision, with no one factor being necessarily dispositive." *See United States ex rel. Escobar v. Universal Health Servs., Inc.*, 842 F.3d 103, 109 (1st Cir. 2016); *accord United States v. Berkeley Heartlab, Inc.*, No. CV 9:14-230-RMG, 2017 WL 6015574, at *2 (D.S.C. Dec. 4, 2017); *United States ex rel. Duffy v. Lawrence Mem'l Hosp.*, No. 14-2256-SAC-TJJ, 2017 WL 2905406, at *8 (D. Kan. July 7, 2017); *United States ex rel. Scutellaro v. Capitol Supply, Inc.*, No. CV 10-1094 (BAH), 2017 WL 1422364, at *20 (D.D.C. Apr. 19, 2017); *United States ex rel. Emanuele v. Medicor Assocs.*, 242 F. Supp. 3d 409, 431 (W.D. Pa. 2017). Defendants do not argue with *Escobar*'s holistic approach to materiality, yet they attempt

to argue that two actions (continued payment and declination) are sufficient to negate any issue of triable fact on materiality. At a minimum, the Court should assess materiality by evaluating all of the factors set forth in *Escobar*, rather than just the factors cherry-picked by Defendants.

### A. Defendants Are Not Entitled To Summary Judgment on Materiality Based On The Government's Awareness of Allegations in Relators' *Qui Tam* Complaint.

Defendants argue that Relators cannot establish materiality in part because "the Government had actual knowledge of the alleged fraud" through its investigation of the allegations in the Relators' complaint. Def. MSJ at 25. But awareness of allegations is not the same as "actual knowledge" of violations under *Escobar*. On remand in *Escobar*, the First Circuit rejected the defendant's arguments that the government's continued payment of Medicaid claims despite its knowledge of the relator's allegations warranted dismissal on materiality grounds. *Escobar*, 842 F.3d at 112 ("mere awareness of allegations concerning non-compliance is different from knowledge of actual non-compliance"). Other courts have similarly distinguished awareness of allegations from actual knowledge of fraud. *United States ex rel. Rahimi v. Rite Aid Corp.*, 2019 WL 1426333, *8 (E.D. Mich. Mar. 30, 2019) ("Rite Aid's argument conflates 'actual knowledge that certain requirements were violated' with actual knowledge of allegations that certain requirements were violated"); *United States ex rel. Brown v. Pfizer, Inc.*, 2017 WL 1344365, *11 (E.D. Pa. Apr. 17, 2017) ("mere knowledge of allegations regarding noncompliance is insufficient to prove actual knowledge of noncompliance").

Even if it were established at some point that the government had actual knowledge of such violations, this fact would still need to be evaluated in the context of the other *Escobar* materiality factors, and would not automatically warrant a conclusion that the alleged falsities were immaterial. Indeed, there are many good reasons why the government might continue to

pay under such circumstances—including important public health and safety considerations. *United States v. Pub. Warehousing Co.*, Civ. No. 1:05-CV-2968, 2017 WL 1021745, at *6 (N.D. Ga. Mar. 16, 2017) ("The more essential the continued execution of a contract is to an important government interest, the less the government's continued payment weighs in favor of the government knowledge defense.").

> **B. The Government's Declination Decision Cannot Support an Inference That the Requirements at Issue Are Immaterial.**

Defendants erroneously argue that the United States' decision not to intervene with respect to the claims currently being litigated indicates that the alleged falsities were not material. It is well settled that the United States "may have a host of reasons" for declining to intervene that have nothing to do with the merits of a particular case. *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 n.17 (11th Cir. 2006). As the Supreme Court has recognized, there are real costs and burdens attendant to intervening in an FCA action. *Einstein*, 556 U.S. 933-34. For example, the United States may decline to intervene in a meritorious case when it has reason to believe that its resources would be better expended elsewhere, or that the burdens of litigating the case are not justified by the potential recovery.

"[A]ssuming the government looked unfavorably upon each qui tam action in which it did not intervene," as Defendants here contend, is not the law, and would be "antithetical to [the text and] purpose of the qui tam provision[,]" which authorizes relators to litigate on behalf of the United States after declination. *United States ex rel. El-Amin v. George Washington Univ.*, 533 F. Supp. 2d 12, 21-22 (D.D.C. 2008) ("[T]he simple fact that the government did not intervene has no probative value and is not relevant."). Congress expressly contemplated that if the Government declined to pursue an FCA action, the relator would have the right to conduct

5

the action on behalf of the United States.  31 U.S.C. § 3730(c)(3).  When a relator proceeds in a declined case, the United States still receives the bulk of any recovery from the action, as the relator's share is limited to no more than 30 percent of the recovery.  *Id.* § 3730(d)(2).  Through these provisions, the FCA expressly incentivizes and leverages the power of private citizens to protect the federal fisc from fraud.  The ability of a relator to proceed with an action once the Government has declined is an important feature of the FCA.  *See United States ex rel. Prather v. Brookdale Senior Living Cmty., Inc.*, 892 F.3d 822, 836 (6th Cir. 2018).

      Finally, it is worth noting that *Escobar* was itself a declined case.  *See Escobar*, 136 S. Ct. at 1998.  In *Escobar*, despite the Government's decision not to intervene, the Supreme Court did not mention the declination decision as a factor in its materiality analysis.  *Id.* at 2001-04; *see also Prather*, 892 F.3d at 836.  Nor did the First Circuit, on remand, consider the Government's declination as relevant to the materiality inquiry.  *United States ex rel. Escobar v. Universal Health Servs., Inc.*, 842 F.3d 103, 112 (1st Cir. 2016); *see also Prather*, 892 F.3d at 836.

**II.**  **Section 3730(b)(2) of the FCA**

      Defendants argue that Relators' Third Amended Complaint must be dismissed because Relators did not file the amended complaint under seal and did not provide a written disclosure to the government as required by 31 U.S.C. § 3730(b)(2).  Def. MTD at 8-10.

      First, the seal on a *qui tam* action exists to protect the interests of the United States, not to create a windfall for defendants who can point to purported breaches about which the United States has not complained.  When an amended complaint asserts new allegations that the United States requires further time to investigate, the United States can insist that the relator file them under seal so that the United States may investigate the allegations and render a separate

intervention decision as to them. But that right does not confer a benefit on any defendant. In *State Farm Fire and Casualty Company v. United States ex rel. Rigsby*, No. 15-513, 2016 WL 7078622, at *6 (Dec. 6, 2016), the Supreme Court rejected defendant's contention that a violation of the FCA seal provision mandates dismissal of a relator's complaint. In holding so, the Court reasoned that "[b]ecause the seal requirement was intended in main to protect the Government's interests, it would make little sense to adopt a rigid interpretation of the seal provision that prejudices the Government by depriving it of needed assistance from private parties." *Id*. Further, the Court noted that the remedy of a mandatory dismissal "would undermine the very governmental interests that the seal provision is meant to protect." *Id*.

Second, the written disclosure provision of section 3730(b)(2) exists primarily to "provide the United States with enough information on the alleged fraud to be able to make a well reasoned decision on whether it should participate in the filed lawsuit or allow relator to proceed alone." *United States ex rel. Woodard v. Country View Care Ctr., Inc.*, 797 F.2d 888, 892 (10th Cir. 1986). Like the seal provision, the written disclosure provision was designed to benefit the United States, not to provide Defendants with a mechanism to demand dismissal in the absence of any objection by the United States. *See United States ex rel. Wong v. Consul-Tech Engineering, Inc.*, No. 02-23081 (S.D. Fla. Mar. 16, 2005) (questioning whether defendants had standing to argue for dismissal based on non-compliance with the written disclosure provision because "section 3730(b)(2) was designed to protect the interests of the United States," but noting that even if defendants had standing, dismissal would be unwarranted since the United States raised no objection); *United States ex rel. Stinson v. Blue Cross Blue Shield*, 755 F. Supp.

1040, 1054 (S.D. Ga. 1990) (declining to dismiss complaint because section 3730(b)(2) "plainly inures to the benefit of the government," who did not raise any objection).

The Court should not dismiss Relators' Third Amended Complaint simply because Defendants protest that it should have been sealed and that the United States should have been provided with another written disclosure.

## CONCLUSION

WHEREFORE, the United States submits this Statement of Interest for the Court's consideration in assessing Defendants' Motion for Summary Judgment and Defendants' Motion to Dismiss Relators' Third Amended Complaint.

Dated: October 9, 2020

Respectfully submitted,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General
Civil Division

STEPHEN J. COX
United States Attorney

/s/ James G. Gillingham
JAMES GILLINGHAM
Assistant U.S. Attorney
Eastern District of Texas
110 N. College Street; Suite 700
Tyler, Texas 75702
E-mail: James.Gillingham@usdoj.gov
(903) 590-1400
(903) 590-1436 (fax)
Texas State Bar # 24065295

/s/ Kelly A. Quinn
JAMIE ANN YAVELBERG
ANDY J. MAO
KELLY A. QUINN
Attorneys, Civil Division,

Commercial Litigation Branch, Fraud Section
175 N Street NE, 9th Floor
Washington D.C. 20002
E-mail: kelly.a.quinn@usdoj.gov
(202) 616-5578

**ATTORNEYS FOR THE
UNITED STATES OF AMERICA**

**CERTIFICATE OF SERVICE**

    I hereby certify on this 9th day of October 2020, I caused a true and accurate copy of the foregoing to be filed using the Court's CM/ECF system, which will send an electronic notice of filing to all counsel of record.

                                                                                             */s/ James G. Gillingham*
                                                                                             JAMES G. GILLINGHAM
                                                                                             Assistant U.S. Attorney