```
 1                IN THE UNITED STATES DISTRICT COURT

 2               FOR THE EASTERN DISTRICT OF TEXAS

 3                        MARSHALL DIVISION

 4   UNITED STATES OF AMERICA,    )(

 5   ET AL., EX REL., CALEB       )(

 6   HERNANDEZ & JASON WHALEY,    )(

 7   RELATORS                     )(    CIVIL ACTION NO.

 8                                )(    2:16-CV-432-JRG

 9   VS.                          )(    MARSHALL, TEXAS

10                                )(

11   TEAM HEALTH HOLDINGS, INC.,  )(    DECEMBER 9, 2020

12   ET AL.                       )(    9:03 A.M.

13                         MOTION HEARING

14            BEFORE THE HONORABLE JUDGE RODNEY GILSTRAP

15             UNITED STATES CHIEF DISTRICT JUDGE

16

17   FOR THE PLAINTIFFS:(See Attorney Attendance Sheet docketed
                         in minutes of this hearing.)
18

19   FOR THE DEFENDANTS:(See Attorney Attendance Sheet docketed
                         in minutes of this hearing.)
20
     COURT REPORTER:    Shelly Holmes, CSR, TCRR
21                      Official Reporter
                        United States District Court
22                      Eastern District of Texas
                        Marshall Division
23                      100 E. Houston Street
                        Marshall, Texas  75670
24                      (903) 923-7464

25   (Proceedings recorded by mechanical stenography, transcript
     produced on a CAT system.)
```

```
 1                        I N D E X
 2
 3   December 9, 2020
 4                                              Page
 5       Appearances                             1
 6       Hearing                                 3
 7       Court Reporter's Certificate           59
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

09:03:23   1                COURT SECURITY OFFICER:  All rise.

09:03:25   2                THE COURT:  Be seated, please.

09:03:26   3                All right.  This is the time set for motions

09:04:16   4  pending before the Court in United States versus Team

09:04:27   5  Health.  This is Civil Action 2:16-CV-432.

09:04:31   6                This is an action brought by -- by relators on

09:04:37   7  behalf of it in the stead of the United States under the

09:04:40   8  False Claim Act.

09:04:41   9                Let me ask for announcements at this time.

09:04:44  10                Who's here on behalf of the relators?

09:04:46  11                MR. DUCK:  Good morning, Your Honor.  Trey Duck,

09:04:49  12  Cody Hill, and Nick Shodrok on behalf of the relators.

09:04:52  13  We're ready to proceed.  Thank you.

09:04:53  14                THE COURT:  All right.  What's the announcement

09:04:55  15  from the Defendants?

09:04:55  16                MR. FINDLAY:  Good morning, Your Honor.  Eric

09:04:56  17  Findlay on behalf of Defendants.  At table with me is

09:04:59  18  Mr. Tom Melsheimer, Ms. Robine Grant.  And then also here

09:05:02  19  with me, Mr. Wesley Hill, Ms. Paula Hinton, Ms. Renee

09:05:06  20  Wilkerson, and Mr. Grant Schmidt.  And we're all ready to

09:05:10  21  proceed.

09:05:11  22                THE COURT:  All right.  Thank you.

09:05:11  23                MR. MELSHEIMER:  Good morning, Your Honor.

09:05:12  24                THE COURT:  Good morning.

09:05:13  25                Counsel, before we turn to the remainder of the

09:05:20  1  motions, I'd first like to clarify on the record the

09:05:26  2  parties stat -- status with regard to Document No. 312,

09:05:30  3  which is relators' motion to voluntarily dismiss the

09:05:35  4  Plaintiff states as parties.

09:05:39  5      That motion was apparently opposed at the time of

09:05:44  6  filing, but my understanding is that opposition has

09:05:51  7  subsided, and the motion is effectively unopposed, the

09:05:55  8  motion being to dismiss the party states on the Plaintiffs'

09:06:04  9  side or the relators' side of the case, being Texas,

09:06:10 10  Tennessee, Florida, Louisiana, Connecticut, Massachusetts,

09:06:14 11  Georgia, and Indiana, unless I've missed somebody.

09:06:17 12      And my understanding is this dismissal would be as

09:06:20 13  to the entirety of these states' claims, all of which are

09:06:23 14  based upon Medicaid issues.

09:06:25 15      Let me ask for clarification from both sides as to

09:06:28 16  where we stand on that, and if, in fact, this is now an

09:06:33 17  unopposed motion.

09:06:34 18      What's the relators' posture?

09:06:37 19      MR. DUCK:  Yes, Your Honor.  Would you like me to

09:06:38 20  present from the podium?

09:06:40 21      THE COURT:  Yes, I would.

09:06:46 22      MR. DUCK:  Thank you, Your Honor.  May it please

09:06:47 23  the Court.

09:06:48 24      I think this is relatively straightforward.  Your

09:06:52 25  Honor described a situation, as we see it, exactly as it

09:06:56  1  is.

09:06:56  2          There was one clarification that was needed

09:06:58  3  amongst the parties, which was that the relators are not

09:07:02  4  intending to re-file on behalf of the Plaintiff states in

09:07:06  5  the future following dismissal.

09:07:08  6          Once we gave that assurance to Defendants, it's my

09:07:12  7  understanding that resolved any problems they had in

09:07:16  8  opposing the motion.

09:07:18  9          So long as the Plaintiff states themselves are

09:07:21  10  dismissed without prejudice and the relators have agreed

09:07:25  11  they will not re-file those claims on behalf of the

09:07:28  12  Plaintiff states, we're in agreement.  And we have a

09:07:31  13  proposed order that we can present to Your Honor.

09:07:35  14          THE COURT:  So, in effect, Mr. Duck, are you

09:07:37  15  telling me that this dismissal as to these relators would

09:07:40  16  be with prejudice but would not prejudice any potential

09:07:43  17  claims either by the states themselves or other relators

09:07:47  18  who are not active in this case?

09:07:49  19          MR. DUCK:  Yes, Your Honor.  That's exactly right.

09:07:51  20          THE COURT:  All right.  Can Defendants confirm

09:07:53  21  that that's an accurate rendition of where we stand?

09:07:57  22          MR. SCHMIDT:  Your Honor, may I approach the

09:07:59  23  podium?

09:07:59  24          THE COURT:  Please.

09:08:00  25          MR. SCHMIDT:  May it please the Court.  Your

09:08:01  1  Honor, the way that you just described is exactly our
09:08:01  2  position that the claims the relators themselves brought
09:08:04  3  would be dismissed with prejudice, but the claims on behalf
09:08:07  4  of the Plaintiff states brought by the Plaintiff states
09:08:09  5  would be dismissed without prejudice.
09:08:11  6         THE COURT:  All right.  And have both sides
09:08:13  7  reviewed the proposed order to perfect --
09:08:13  8         MR. SCHMIDT:  Yes, Your Honor.
09:08:16  9         THE COURT:  -- this dismissal?
09:08:17  10        MR. SCHMIDT:  And we have a copy -- I think I have
09:08:20  11 a copy of it for the Court if -- if you'd like to review
09:08:21  12 it.
09:08:22  13        THE COURT:  Well, let me just say this.  Based on
09:08:23  14 what you've told me on the record and subject to review of
09:08:26  15 the motion itself, I'll grant the unopposed motion by
09:08:30  16 relators to dismiss these states on the terms announced
09:08:35  17 into the record.
09:08:35  18        There's no need for me to review the document from
09:08:39  19 the bench.  If you'll submit it electronically, as long as
09:08:42  20 it comports with what you've told me, I'll get it entered,
09:08:45  21 and we'll have this disposed of.
09:08:47  22        MR. SCHMIDT:  Yes, Your Honor, we'll do that
09:08:48  23 today.
09:08:49  24        THE COURT:  Thank you.
09:08:49  25        MR. SCHMIDT:  Thank you.

| | | |
|---|---|---|
| 09:08:50 | 1 | MR. DUCK:  Thank you, Your Honor. |
| 09:08:51 | 2 | THE COURT:  Okay.  That being done, let's move to |
| 09:08:54 | 3 | the remaining matters we have set today. |
| 09:08:58 | 4 | Let's start with the Defendants' two companion |
| 09:09:05 | 5 | motions for protection regarding confidentiality |
| 09:09:08 | 6 | designations.  This is Document 263 and Document 327.  And |
| 09:09:12 | 7 | let me hear from the moving Defendants on these two |
| 09:09:14 | 8 | motions. |
| 09:09:23 | 9 | MR. FINDLAY:  Thank you, Your Honor.  May it |
| 09:09:24 | 10 | please the Court.  Eric Findlay on behalf of the |
| 09:09:25 | 11 | Defendants. |
| 09:09:26 | 12 | THE COURT:  Please proceed, Mr. Findlay. |
| 09:09:28 | 13 | MR. FINDLAY:  Thank you, Your Honor. |
| 09:09:29 | 14 | Your Honor, I think the place to start -- |
| 09:09:38 | 15 | THE COURT:  And let me stop you before we get to |
| 09:09:41 | 16 | the place to start. |
| 09:09:41 | 17 | MR. FINDLAY:  Yes, sir. |
| 09:09:42 | 18 | THE COURT:  Given the substance of these motions, |
| 09:09:45 | 19 | does the argument of this morning need to be under seal, or |
| 09:09:49 | 20 | is it appropriate for presentation in an open courtroom and |
| 09:09:52 | 21 | an open transcript? |
| 09:09:53 | 22 | MR. FINDLAY:  Thank you for that question.  It is |
| 09:09:54 | 23 | perfectly all right to have this discussion in open court, |
| 09:09:59 | 24 | Your Honor.  It does not need to be sealed. |
| 09:10:01 | 25 | THE COURT:  Okay. |

09:10:01   1          MR. FINDLAY:  That does get to where I thought it
09:10:04   2   might make sense to start, and it relates to the second
09:10:08   3   bullet point.
09:10:08   4          And, Your Honor, let me hand out some slides real
09:10:12   5   quickly if I might.
09:10:18   6          May I approach?
09:10:19   7          THE COURT:  You may.
09:10:21   8          MR. FINDLAY:  I think that the crux of the
09:10:28   9   dispute, Your Honor, really is to the second bullet point
09:10:30   10  that you see on the screen is that we believe relators are
09:10:33   11  confusing or conflating the standard with sealing and
09:10:36   12  keeping out of the public record information which contains
09:10:41   13  sensitive material at a hearing or trial as opposed to
09:10:48   14  appropriate designations of confidential material under the
09:10:50   15  protective order.
09:10:50   16         As Your Honor is well aware, this Court has a
09:10:54   17  standing order regarding protection and proprietary or
09:10:58   18  confidential information at hearing or trial, which has a
09:11:01   19  higher standard, appropriately so, for excluding materials
09:11:07   20  from the public record at a hearing such as this or at
09:11:10   21  trial as we'll have in March.
09:11:12   22         That standard is considerably higher than simply
09:11:15   23  what is provided for under the protective order.  And I
09:11:17   24  really think that's kind of the nub of the issue here.
09:11:23   25         Plain -- relators, excuse me, are, I think, taking

09:11:26  1  the position that our confidentiality designations are

09:11:29  2  somehow improper because they don't meet that higher

09:11:32  3  standard.  And that's just not the point that we're at yet

09:11:36  4  in the case, Your Honor.

09:11:38  5        THE COURT:  Is the dispute here whether these

09:11:43  6  materials should be subject to public dissemination or not,

09:11:48  7  or is the issue here whether they should be deemed

09:11:55  8  confidential or alternatively perhaps designated as

09:11:59  9  attorneys' eyes only under the protective order or some

09:12:01  10  other means by which their dissemination should be

09:12:06  11  restricted?

09:12:07  12        Is it whether or not there should be a restriction

09:12:10  13  at all, or is it they should be restricted, but we differ

09:12:13  14  on the means by which the restriction should be applied?

09:12:16  15        MR. FINDLAY:  Can you go to the next slide,

09:12:17  16  please, Ms. Grant?

09:12:18  17        My understanding, Your Honor, from the relators'

09:12:21  18  positions, is that all confidentiality designations over

09:12:24  19  these thousands of pages of material are frivolous as

09:12:28  20  they've tried to call it in their papers, which we

09:12:31  21  obviously strongly disagree with.

09:12:33  22        Most, if not all the documents, are marked

09:12:35  23  confidential, and you see the definition at the top of the

09:12:37  24  screen on Slide 4.  Confidential proprietary and business

09:12:41  25  information that bears significantly on the parties'

09:12:42  1   claims, et cetera.  That's what most of this material is,

09:12:46  2   confidential.

09:12:46  3        They are taking the position, I think

09:12:49  4   inappropriately, whether intentionally or not, that since

09:12:52  5   we haven't come forward with the sort of burden that we

09:12:55  6   would have to, Your Honor, at trial, if we were trying to

09:12:58  7   seal the courtroom because we wanted Exhibit A to be

09:13:01  8   presented but we didn't want the public to see it, they're

09:13:04  9   taking the position, I believe, that since we haven't come

09:13:07  10  forward with that sort of proof now, that they should all

09:13:11  11  be de-designated completely, and they're fair game to be

09:13:14  12  used in the public however the relators see fit, and as

09:13:20  13  we'll discuss a little bit later, we think for really

09:13:23  14  improper purposes.

09:13:23  15       But if you could go back one slide, please,

09:13:26  16  Ms. Grant.  Thank you.

09:13:27  17       The language from your standing order does have a

09:13:30  18  higher burden.  There's no question.  It indicates that the

09:13:34  19  information sought to be protected is of such a sensitive

09:13:37  20  nature that a disclosure creates a risk of harm that

09:13:41  21  outweighs the strong presumption in favor of public access.

09:13:45  22       That's the determination that will happen either

09:13:47  23  much closer to or at trial, Your Honor, in our

09:13:50  24  experience -- folks on our side, at least.

09:13:53  25       And from a very practical standpoint, as I

09:13:56   1   mentioned, the relators are challenging the confidentiality
09:13:59   2   of dozens of different PDFs which amount to thousands of
09:14:05   3   pages of material, both in terms of deposition exhibits,
09:14:08   4   emails, policies, procedures, et cetera.
09:14:11   5           We know from a very practical standpoint, Your
09:14:14   6   Honor, that a small fraction of those materials will
09:14:18   7   actually be used at trial, maybe a couple dozen.
09:14:22   8           Your Honor puts time limits on the parties.  There
09:14:25   9   has to be a real culling and a determination of what
09:14:27  10   exactly is important enough to be presented to the jury.
09:14:30  11           Out of that much, much smaller universe, it is
09:14:32  12   conceivable that we may have several documents that we
09:14:35  13   think rise to this level, and we will urge the Court to
09:14:39  14   seal the proceedings when those documents are discussed in
09:14:43  15   front of the jury.
09:14:44  16           At that time, relators surely have the right to
09:14:47  17   object and can argue that they don't think we've met that
09:14:50  18   burden, but that's a dispute for a later day, Your Honor,
09:14:53  19   we believe.
09:14:53  20           THE COURT:  Tell me this, Mr. Findlay.  Why didn't
09:14:57  21   Defendants -- and maybe I'm confused here, but why didn't
09:15:00  22   Defendants simply and more typically designate these as
09:15:04  23   attorneys' eyes only under the protective order, and then
09:15:07  24   we'll worry about what needs to be presented under seal or
09:15:10  25   not presented under seal when we get to trial?

09:15:12   1               MR. FINDLAY:  I'm not sure I -- forgive me, I'm

09:15:16   2   not sure I understand the -- the import of the distinction.

09:15:18   3               If you go to the next slide, Ms. Grant.

09:15:20   4               Again, the protective order had three categories

09:15:23   5   of type of protective documents, if you will.

09:15:28   6   Confidential, as we see at the top; highly confidential,

09:15:31   7   which had that additional, you know, risk of substantial

09:15:34   8   harm if it were disclosed; and then a health confidential

09:15:37   9   provision, which isn't on the screen here, which dealt with

09:15:40  10   protected health information.

09:15:42  11               I believe the vast majority of these documents

09:15:44  12   were just marked at the confidential level.  The -- the

09:15:49  13   lower level of confidence, which is a lower burden, doesn't

09:15:55  14   have that increased burden of substantial harm but doesn't

09:15:56  15   take away from the fact that these are all internal

09:15:59  16   sensitive materials, and subject, we think appropriately,

09:16:04  17   to not be out in the public realm.

09:16:06  18               If you can go to the next slide, please,

09:16:09  19   Ms. Grant.

09:16:10  20               And in that context, Your Honor, I think it's

09:16:13  21   important to remember what this case is about.  This is a

09:16:16  22   False Claims Act case alleging improper billing to

09:16:20  23   Medicare.

09:16:20  24               Inherently we're dealing with patient medical

09:16:20  25   records and charts.  We're dealing with medical and patient

09:16:28  1  billing information and policies, Team Health's internal

09:16:30  2  policies and mechanisms for how they handle billing, how

09:16:33  3  they handle patient information, and then, of course, the

09:16:36  4  internal communications from emails within the company and

09:16:39  5  deposition testimony about the same.

09:16:40  6       So really with respect, we don't think it should

09:16:44  7  come to a surprise to the relators that much of this

09:16:47  8  material has been marked confidential, Your Honor.

09:16:51  9       I don't know if that answers Your Honor's initial

09:16:55  10  question about the attorneys' eyes only.

09:16:57  11       But let me -- can you go to Slide 7, please,

09:17:08  12  Ms. Grant?

09:17:08  13       One of the places where relators try to push back,

09:17:12  14  Your Honor, is they somehow suggest, if I'm interpreting

09:17:15  15  their arguments correctly, that because a lot of the --

09:17:17  16  what they call challenged documents have become part of the

09:17:21  17  Court's record in this case, because they've been attached

09:17:24  18  to various motions, they've been used in depositions, that

09:17:27  19  that somehow, I guess, waives the confidentiality in their

09:17:30  20  mind.  I don't think there's any merit to that argument

09:17:32  21  whatsoever.

09:17:33  22       None of these are public documents.  They were all

09:17:35  23  filed under seal under your Court's orders and procedures.

09:17:40  24       We've filed motions for leave to seal in this

09:17:42  25  case, both sides have, numerous filings.  We've then filed

09:17:47  1  the appropriate redacted copies under the Court's rules.

09:17:50  2  To my knowledge, relators have made no objection to those

09:17:54  3  redacted versions at all.

09:17:59  4        THE COURT:  Let me -- let me try one more time.

09:18:01  5        Why did not Defendants designate these under the

09:18:05  6  protective order as highly confidential attorneys' eyes

09:18:08  7  only?

09:18:09  8        MR. FINDLAY:  I -- my -- because I don't think it

09:18:12  9  was believed that most of them met that standard of

09:18:14 10  confidentiality.

09:18:15 11        They were confidential, yes, but the highly

09:18:18 12  confidential -- I think of it in terms of a patent case

09:18:22 13  perhaps, Your Honor.  We usually reserve the highly

09:18:24 14  confidential for just that, the most extreme sensitive

09:18:28 15  materials, source code, perhaps revenue information.

09:18:31 16        I believe most -- most of these were deemed

09:18:34 17  confidential, trying to in good faith categorize them under

09:18:39 18  the Court's protective order and not overdesignate.

09:18:42 19        So many times we see that parties are criticized

09:18:45 20  for overdesignating, automatically going to the highest

09:18:49 21  level.

09:18:49 22        THE COURT:  Okay.  In other words, you didn't

09:18:51 23  overreach?

09:18:51 24        MR. FINDLAY:  We don't believe we did, Your

09:18:53 25  Honor --

09:18:53  1          THE COURT:  Okay.

09:18:54  2          MR. FINDLAY:  -- no.  But we certainly don't think

09:18:56  3  we should be penalized -- and we don't think we should be

09:19:00  4  penalized for not overreaching, if you will, not being held

09:19:03  5  to that higher standard, which as I said, I think is

09:19:06  6  appropriate under the Court's standing order when we get to

09:19:09  7  trial, but not at this point.

09:19:10  8          If you can go to Slide 9, please, Ms. Grant.

09:19:13  9  Thank you.

09:19:13  10          And, Your Honor, we think the relators' motives

09:19:19  11  here are incredibly overbroad, and frankly, inappropriate.

09:19:24  12  You can't see them now, but right behind the bar, I've got

09:19:28  13  10 boxes of material.  Those 10 boxes contain notebooks

09:19:31  14  with every page that relators are claiming need to be

09:19:36  15  de-designated.

09:19:37  16          A lot of the caselaw that relators cite -- not all

09:19:39  17  of it but most of it, you were dealing with disputes, one,

09:19:43  18  over whether a protective order should be entered.  We

09:19:45  19  don't have that here.  Or you were dealing with a dispute

09:19:48  20  where there was a finite or discrete number of documents

09:19:52  21  that were at issue.

09:19:52  22          When we had the meet and confer in this process,

09:19:56  23  initially on the first motion that we filed, I specifically

09:19:58  24  asked the relators:  Is there a finite small set of a

09:20:04  25  particular type of document that you're concerned about,

09:20:08  1  because let's talk about that, and maybe we can come to

09:20:12  2  some agreement on.

09:20:12  3          There wasn't.  Their claim of wrongful

09:20:15  4  designation, if you will, covers thousands of pages.  And

09:20:17  5  we think that's just by its definition far too many and is

09:20:22  6  overreaching.

09:20:23  7          They even want to seek to remove confidentiality

09:20:26  8  from the documents relating to the Medicare -- Medicaid

09:20:30  9  Plaintiffs' case, which as we've just heard, those claims

09:20:34  10  are no longer in the case, Your Honor.

09:20:36  11          And we are concerned with what the relators intend

09:20:44  12  to do with these materials were they to be summarily

09:20:47  13  de-designated by the Court.

09:20:51  14          If you can go to Slide 11, please.

09:20:53  15          There is good lawyer argument in relators' papers,

09:20:58  16  and they're great lawyers, and they write very well.

09:21:01  17          A lot of that language is filled with incendiary

09:21:05  18  language, such that relators are indicating they are

09:21:10  19  playing the judge and the jury, if you will, about whether

09:21:12  20  there's been fraud in this case.

09:21:13  21          These are just a couple of examples from their

09:21:17  22  papers where they claim the public has a right to know

09:21:20  23  Defendants have fraudulently drained millions of taxpayer

09:21:23  24  dollars and company's concealment of fraud or blatant

09:21:28  25  misrepresentation.

09:21:28  1          It goes on and on as though relators apparently
09:21:32  2   are taking the position that the decision has been made as
09:21:35  3   to whether -- who wins this case or not.  They think they
09:21:39  4   win the case.  They think there's fraud.
09:21:41  5          That gives us serious concern that if these
09:21:44  6   documents were de-designated, Your Honor, if they had no
09:21:46  7   protection on them and they were fair game for anybody to
09:21:49  8   do whatever they wanted with them, they would be used in an
09:21:52  9   inappropriate way.  They'd make it to the Internet.  They'd
09:21:55 10   make it to a Wikipedia page.  They'd be shared with other
09:21:59 11   counsel.  But it certainly would be highly prejudicial to
09:22:01 12   my client when these documents are used in that fashion,
09:22:05 13   and we believe grossly taken out of context.
09:22:08 14          Now, relators indicated in one of their filings
09:22:12 15   that they thought this was a sophomoric reaction on our
09:22:17 16   part or that it was hypothetical.  It's not, Your Honor.
09:22:20 17          If you go to the next slide, please, Robine.
09:22:23 18          This has already happened once in this case.  And
09:22:26 19   I don't know who's responsible for it.  I'm not saying the
09:22:29 20   relators were responsible for it.  I want that to be
09:22:32 21   abundantly clear.
09:22:33 22          But back in the spring of this year when Your
09:22:36 23   Honor denied Defendants' motion to dismiss relators' First
09:22:40 24   Amended Complaint, a couple weeks later on Team Health's
09:22:43 25   Wikipedia page, there was a long recitation of the Court's

09:22:47  1    denial of that motion.

09:22:50  2             But as you can see in the highlight here, it said:

09:22:53  3    In his opinion, Judge Gilstrap described two schemes to

09:22:56  4    defraud Medicare and several state Medicaid programs that

09:23:01  5    were intended to increase billing for patient care that did

09:23:04  6    not take place.

09:23:05  7             And then it basically verbatim listed the

09:23:08  8    allegations in the First Amended Complaint.  To the

09:23:12  9    non-legal-trained eye, the impression was clearly that this

09:23:17  10   Court had made a determination on the merits that these

09:23:21  11   schemes occurred, that they were put in place by Team

09:23:24  12   Health, and that the government was drained fraudulently of

09:23:33  13   millions of dollars.

09:23:33  14            To the non-legal opinion -- to the non-legal eye,

09:23:35  15   that is exactly what that intended.  Whoever put that up

09:23:35  16   there, I don't know.  You can look at the history, and

09:23:39  17   they're just anonymous names.

09:23:41  18            Interestingly enough, we filed our first motion

09:23:44  19   for protection on October 22nd, I believe.  About a week

09:23:47  20   later -- a week later on October 30th, the Wikipedia entry

09:23:53  21   that I just described was wiped clean.  It was gone.  And

09:23:55  22   as of two days ago, it still isn't back up.  It's no longer

09:24:00  23   there, so somebody wiped it.

09:24:02  24            I think that is proof that we have real legitimate

09:24:10  25   substantive, not hypothetical or speculative, concerns that

09:24:15 1  were those boxes of documents behind me somehow completely

09:24:18 2  de-designated with no protection, that they would be used

09:24:21 3  inappropriately and probably in a manner such as this.  It

09:24:23 4  certainly is a concern, and I don't think it's an

09:24:25 5  unreasonable concern for us to have, Your Honor.

09:24:27 6         Unless there are any additional questions or

09:24:32 7  points that I need to address, Your Honor, I think those

09:24:34 8  are the main arguments I wanted to raise.

09:24:38 9         THE COURT:  All right.  Thank you, counsel.

09:24:40 10        Let me hear a response from the relators.

09:24:43 11        MR. FINDLAY:  Thank you, Your Honor.

09:24:57 12        MR. DUCK:  Trey Duck on behalf of the relators.

09:24:59 13        Your Honor, I think the first place for us to

09:25:01 14 start is that my legal team has no idea about that

09:25:05 15 Wikipedia page.  It seemed like they were pretty strong

09:25:09 16 insinuations that we have some knowledge about it.  We do

09:25:11 17 not.  No one on my team has any knowledge of how it got up

09:25:16 18 there.  I would be happy to answer any questions from the

09:25:19 19 Court about it.

09:25:20 20        I don't think that that is really the issue here.

09:25:22 21 I think it's more of a side show to the -- the -- the

09:25:26 22 actual issues before us.  And so, I wanted to get that out

09:25:30 23 of the way before moving forward.

09:25:32 24        THE COURT:  Let me -- let me clarify just the

09:25:34 25 timeline in my mind as to how we got to where we are today,

09:25:39  1  Mr. Duck.

09:25:40  2       Relators have not affirmatively moved to

09:25:44  3  de-designate the confidentiality designation attached by

09:25:50  4  Defendants, correct?

09:25:51  5       MR. DUCK:  That is correct.

09:25:52  6       THE COURT:  Defendants have moved affirmatively

09:25:56  7  for protection regarding the confiden -- confidentiality

09:26:00  8  designations that they've attached to these disputed

09:26:03  9  documents.

09:26:08  10      Did this arise in some meet and confer, or how

09:26:14  11  did -- how did relator and Defendants come to realize we

09:26:16  12  have a different view of the world with regard to these

09:26:19  13  documents and somehow this needs to get before the Court

09:26:21  14  for some guidance?

09:26:22  15      MR. DUCK:  Sure.  It's a great question.  And it

09:26:26  16  ties into my first point, which is that we heard nothing

09:26:29  17  from the Defendants about the procedural mechanism that

09:26:31  18  brought us here, which is the protective order.

09:26:35  19      Under the Court's protective order, the way it

09:26:37  20  works is the party challenges informally by communicating

09:26:42  21  with the other party the documents that they believe have

09:26:52  22  been misdesignated.

09:26:53  23      Following that challenge, the parties meet and

09:26:54  24  confer to determine whether or not there is a dispute over

09:26:56  25  all or some of the documents.  And then if the party whose

| | | |
|---|---|---|
| 09:27:00 | 1 | documents have been challenged determine they want to stand |
| 09:27:03 | 2 | on the designations, they have to move for protection. |
| 09:27:06 | 3 | All of those procedures were followed to a T in |
| 09:27:10 | 4 | these two particular cases.  We have not blanket challenged |
| 09:27:15 | 5 | the 400,000ish documents produced in this case. |
| 09:27:21 | 6 | We challenged a subset of documents, which I can |
| 09:27:23 | 7 | explain how we selected.  And following that, a tiny |
| 09:27:26 | 8 | handful, the Defendants agreed to de-designate, and then |
| 09:27:31 | 9 | they moved for protection on the vast majority. |
| 09:27:33 | 10 | THE COURT:  You don't -- you don't differ with |
| 09:27:39 | 11 | perhaps the Court's view here that at its core this is a |
| 09:27:44 | 12 | discovery dispute, do you? |
| 09:27:45 | 13 | MR. DUCK:  I believe that it is a discovery |
| 09:27:47 | 14 | dispute that has -- that has implications for the public |
| 09:27:54 | 15 | that are very important. |
| 09:27:54 | 16 | THE COURT:  What I'm trying to figure out is why |
| 09:27:57 | 17 | with regard to relators' response to both of these separate |
| 09:28:02 | 18 | motions the Court's page limit on its standing order was |
| 09:28:07 | 19 | ignored, and instead of seven pages, I got 15 pages on each |
| 09:28:11 | 20 | response. |
| 09:28:12 | 21 | Is there a reason why I had to read 15 pages when |
| 09:28:16 | 22 | I have a standing order that limits responses to seven |
| 09:28:19 | 23 | pages in situations like this? |
| 09:28:21 | 24 | MR. DUCK:  Well, Your Honor, first let me |
| 09:28:23 | 25 | apologize.  I don't believe we viewed these -- these briefs |

09:28:26  1  as a discovery brief in the sense that it would be limited

09:28:29  2  by the Court's local rules.

09:28:31  3          And if that was misunderstood by our side, we

09:28:34  4  apologize.  And -- and I hate that you had to read more

09:28:38  5  than you believe was necessary.

09:28:40  6          It was not our intention to ignore any of your

09:28:44  7  Court's local rules, and we would never do that.

09:28:46  8          I -- I do believe there is a discovery aspect to

09:28:48  9  this.  It is a protective order issue.  I think that the

09:28:51  10  public's right to see these documents is the issue to us.

09:28:56  11  We've already got these documents.  They've been discovered

09:28:58  12  by the parties in the case.

09:28:59  13          So I hope that I'm not in total disagreement with

09:29:03  14  the Court, but we did not believe that it was a pure

09:29:06  15  discovery dispute in that sense.

09:29:07  16          So --

09:29:11  17          THE COURT:  Well, let me suggest to you a better

09:29:15  18  practice might be if there's any doubt, to get some

09:29:18  19  guidance before you just file a motion -- a response that's

09:29:21  20  twice as long as the page limit if you're wrong on how it's

09:29:24  21  going to be characterized.

09:29:26  22          MR. DUCK:  Understood.  Thank you, Your Honor.

09:29:27  23          The next point I wanted to make was about the

09:29:31  24  limited challenge here.  There was argument that this was

09:29:35  25  some broad challenge to all of these documents.

09:29:39  1          I think that we heard thousands of documents.

09:29:42  2  It's not -- it's not thousands of documents.  Maybe

09:29:45  3  thousands of pages, but what we did was we identified the

09:29:49  4  very most relevant documents that have already been made

09:29:52  5  part of the Court record.

09:29:53  6          I believe that Mr. Findlay may have misunderstood

09:29:56  7  our argument.  We mean they have been filed with the Court

09:29:59  8  under seal, not that they have just been used in

09:30:05  9  deposition -- in depositions, not that the parties have

09:30:07 10  discussed them.  We mean they are a part of the ECF court

09:30:12 11  record.

09:30:13 12          We also challenged those documents that are on the

09:30:15 13  parties' exhibit list.  There is no document to my

09:30:20 14  knowledge that we challenged that doesn't meet one of those

09:30:24 15  two criteria.  They are the documents at issue in the case.

09:30:27 16  There are thousands and thousands and thousands of

09:30:29 17  additional documents we have not challenged and don't

09:30:33 18  intend to challenge.

09:30:34 19          And the reason that --

09:30:36 20          THE COURT:  Are -- are you telling me that

09:30:38 21  Defendants or either parties' use of these documents in

09:30:43 22  development of the case such that that use is placed under

09:30:50 23  seal somehow waives the confidentiality designation that

09:30:53 24  Defendants have asserted?

09:30:55 25          MR. DUCK:  No, Your Honor, not at all.

09:30:57    1            THE COURT:  Okay.

09:30:57    2            MR. DUCK:  And we have never made an argument that

09:30:59    3    by using a document in a deposition or by having them filed

09:31:02    4    under seal with the Court waived the confidentiality.

09:31:05    5            We have always abided by the -- the sealing

09:31:07    6    requirements of the protective order, whether we liked it

09:31:10    7    or not, be -- because that's what the Court ordered.  We've

09:31:13    8    always agreed to allow the Defendants to file things under

09:31:16    9    seal because that's what the protective order requires.

09:31:18   10            However, now that we are approaching trial very

09:31:21   11    quickly, this case has progressed to where it has, and

09:31:26   12    because we believe we have confirmed exactly what we

09:31:28   13    thought we would confirm, this case is so uniquely of

09:31:33   14    public interest that we believe that this information

09:31:37   15    should be made available, including on the Court's docket,

09:31:40   16    for the public to see.

09:31:41   17            One reason for that is, Your Honor, this is --

09:31:48   18    this is a Medicare case.  This is not some private dispute

09:31:50   19    between private citizens about something that no one else

09:31:54   20    cares about.  This is something that implicates all of us.

09:31:56   21            We believe that the Defendants' actions have

09:31:58   22    caused every tax paying American to fund fraudulent dollars

09:32:03   23    into their pockets.

09:32:04   24            We know that Team Health has been under

09:32:06   25    investigation by the U.S. Senate for fraudulent billing

09:32:10  1  practices.

09:32:10  2        This is something that people are looking at.

09:32:13  3  This case is something that people are looking at because

09:32:17  4  of the behavior at issue.  I have no idea about that

09:32:21  5  Wikipedia page, but my suspicion is that that's the reason

09:32:27  6  it's on there.

09:32:28  7        THE COURT:  You're not suggesting we try the

09:32:30  8  merits of this case in the media, are you?

09:32:33  9        MR. DUCK:  Not at all.  I'm not --

09:32:34  10        THE COURT:  You're not suggesting that we

09:32:36  11  facilitate third parties trying the merits of this case in

09:32:39  12  the media by making otherwise confidential documents open

09:32:42  13  and available to the public, are you?

09:32:44  14        MR. DUCK:  Not at all.  And if they were otherwise

09:32:46  15  confidential, we wouldn't be here.  But we don't believe

09:32:50  16  that they are confidential.

09:32:50  17        THE COURT:  Is it your argument at its core,

09:32:55  18  Mr. Duck, that there's just not a nucleus of

09:32:58  19  confidentiality here, or is it that there is a nucleus of

09:33:02  20  confidentiality, but the public's right to know exceeds and

09:33:06  21  overcomes that level of confidentiality?  I'm trying to

09:33:11  22  determine which of these approaches is your real argument.

09:33:14  23        MR. DUCK:  Our view is that there is no nucleus of

09:33:17  24  confidentiality, that these documents aren't actually

09:33:20  25  confidential.

09:33:20   1          And I think one of the most telling things we've
09:33:23   2   seen today is when Your Honor first asked do we need to
09:33:26   3   seal the courtroom in order for us to have this hearing,
09:33:29   4   and the Defendant's response was no, well, that means they
09:33:32   5   have no intention of showing you any of these documents,
09:33:34   6   they have no intention of actually talking about the
09:33:36   7   substance -- the real substance of any of these documents,
09:33:40   8   and they are perfectly fine with the public, to the extent
09:33:44   9   anyone was here, listening to the argument.
09:33:46  10          Now, they haven't even attached any documents to
09:33:49  11   their papers to show the Court what exactly we're talking
09:33:53  12   about, so we did.  We filed them under seal, of course,
09:33:56  13   because they're still technically confidentially
09:33:57  14   designated.
09:33:58  15          We invite Your Honor to look at those documents.
09:34:00  16   The only thing that the Defendants have provided, Your
09:34:02  17   Honor, is what essentially amounts to a privilege log that
09:34:05  18   was submitted with the first motion and just generally
09:34:08  19   describes their view of these documents.
09:34:10  20          We don't believe that they've met their burden
09:34:14  21   under the protective order to demonstrate to this Court
09:34:17  22   that these documents should be treated confidentially.
09:34:20  23          And it is their burden under the protective order
09:34:23  24   to file the motion for protection and to prove that these
09:34:28  25   documents are confidential, but no evidence was submitted.

| | | |
|---|---|---|
| 09:34:31 | 1 | They didn't even submit an affidavit.  It may have |
| 09:34:34 | 2 | been helpful for -- for them to have done that.  They |
| 09:34:37 | 3 | didn't do that.  And I believe it's because they know these |
| 09:34:40 | 4 | documents aren't confidential.  They demonstrate that the |
| 09:34:43 | 5 | Defendants were engaged in conduct which the relators |
| 09:34:48 | 6 | allege was fraud. |
| 09:34:49 | 7 | The Defendants don't believe it was fraud, but the |
| 09:34:52 | 8 | conduct is there in black and white, nonetheless. |
| 09:34:56 | 9 | So at -- at bottom, Your Honor, we just believe |
| 09:34:59 | 10 | that they haven't carried their burden. |
| 09:35:01 | 11 | My last point is -- is about PHI.  We have said |
| 09:35:05 | 12 | from day one that to the extent there is any PHI, that it |
| 09:35:10 | 13 | needs to be redacted.  And I mean protected health |
| 09:35:14 | 14 | information under HIPAA. |
| 09:35:15 | 15 | We have been working with the Defendants over the |
| 09:35:17 | 16 | past few weeks together to redact the exhibits on our |
| 09:35:22 | 17 | joint -- on our exhibit list that contain PHI.  We've |
| 09:35:25 | 18 | agreed to share costs on doing that. |
| 09:35:28 | 19 | And so, when I hear that there's some challenge by |
| 09:35:32 | 20 | us to open up the world to see protected health |
| 09:35:36 | 21 | information, I've got to address it because we, as much as |
| 09:35:40 | 22 | anyone, want to make sure that people's private health |
| 09:35:44 | 23 | information is not made public. |
| 09:35:46 | 24 | And we will -- we will take whatever steps are |
| 09:35:50 | 25 | necessary and help bear the burden and the resource burden, |

09:35:53   1   to make sure that is -- is done.

09:35:55   2       So, Your Honor, with that, I'm finished.  I'd be

09:35:57   3   happy to answer any questions if you've got them.

09:35:59   4       THE COURT:  Thank you, counsel.

09:36:01   5       MR. DUCK:  Thank you.

09:36:01   6       THE COURT:  Let me ask for a brief response from

09:36:03   7   the Defendants.

09:36:03   8       MR. FINDLAY:  Thank you, Your Honor.

09:36:09   9       THE COURT:  Mr. Findlay, Mr. Duck just got through

09:36:11  10   telling me that there's no real underlying confidentiality

09:36:14  11   here.  Why don't you tell me your view on that.

09:36:16  12       MR. FINDLAY:  That's just not -- that's not true,

09:36:18  13   Your Honor.

09:36:18  14       THE COURT:  Why don't -- why don't you give me

09:36:20  15   something specific rather than just a global he's wrong.

09:36:23  16       MR. FINDLAY:  These documents are all internal

09:36:26  17   Team Health documents.  They deal with issues such as how

09:36:29  18   to bill Medicare for split share services, which is at the

09:36:33  19   heart of this case, for critical care services.

09:36:36  20       They deal with what sort of attestations should be

09:36:40  21   used or should not be used to support those billings to the

09:36:43  22   government.  They involve internal Team Health

09:36:46  23   communications on various committees which are designed to

09:36:51  24   determine that.

09:36:51  25       They are by any stretch -- if you look at the

09:36:55  1  definition I've put back up on the screen of the Court's

09:36:59  2  protective order, they are proprietary business information

09:37:01  3  documents.

09:37:01  4      If you go to the definition that is highly

09:37:06  5  confidential, they are commercially sensitive, they are

09:37:08  6  analysis, they're business plans, agreements.  They are at

09:37:13  7  the heart of what Team Health does, and it is very

09:37:17  8  confidential and proprietary.

09:37:19  9      To suggest that they should somehow be opened up

09:37:21  10  to the public in general, to Team Health's competitors, I

09:37:26  11  think is wholly unjustified.

09:37:27  12      And, frankly, with all due respect to Mr. Duck,

09:37:32  13  when he suggested, no, he had no intention to try this case

09:37:34  14  in the Court of public media, I think that's exactly what

09:37:38  15  is happening here, Your Honor.

09:37:38  16      You had asked about how did we get to this point.

09:37:40  17  The relators, I think it was back in the late summer, early

09:37:44  18  fall, just sent an email saying:  Here's a slew of

09:37:47  19  documents we think have been properly designated.  We want

09:37:53  20  them.

09:37:53  21      And Mr. Duck is correct, there's not thousands of

09:37:56  22  documents, but they're large PDFs.  And they do constitute

09:38:00  23  thousands of pages of documents -- over 30,000, if you add

09:38:02  24  in the medical records.

09:38:04  25      Normally in a case like this, someone is reaching

09:38:07  1  out to you to say, hey, I think you've designated something
09:38:11  2  wrong, and here's why because I want to be able to show it
09:38:14  3  to -- to Bob who is in-house counsel, or I want to be able
09:38:17  4  to show it to this particular witness for some reason and
09:38:19  5  they're not under the protective order, can we talk about
09:38:22  6  this?  This wasn't that at all.
09:38:23  7       This made us highly suspicious that the total
09:38:26  8  intent -- as you asked Mr. Duck if that's what they were
09:38:29  9  really shooting for -- was to try this case in the Court of
09:38:31 10  public opinion.
09:38:32 11       It begs the question -- the elephant in the room
09:38:35 12  is why else would you want these de-designated?  I take
09:38:38 13  Mr. Duck at his word that they had nothing to do with and
09:38:42 14  had no knowledge of the Wikipedia page, but it begs the
09:38:45 15  question, hypothetically, if they were all de-designated
09:38:47 16  and they're out there in the public now, what are you going
09:38:50 17  to do with them?  Who are you going to send them to?
09:38:53 18       I don't think there's a line of reporters waiting
09:38:56 19  around the courthouse door scrambling to get these
09:39:00 20  materials.
09:39:00 21       The trial in this case will be public, and there
09:39:04 22  may be some documents which we think rise to the
09:39:07 23  sensitivity level that have to be protected from public
09:39:11 24  view.  If so, we'll comply with that standing order.
09:39:15 25  That's why I started this argument.  And I really didn't

09:39:20  1   hear a response from Mr. Duck on that, that they are

09:39:20  2   jumping ahead to that burden.  It is a much higher burden.

09:39:25  3        We all appropriately think it should be, but

09:39:25  4   that's not the burden that's placed on us when we designate

09:39:29  5   materials pursuant to this Court's protective order, as

09:39:34  6   we've done in this case.

09:39:35  7        Lastly, Mr. Duck in his papers and to Your Honor

09:39:41  8   criticizes us because we didn't file an affidavit.  Judge,

09:39:44  9   as I said -- and I feel like I'm repeating myself, so I

09:39:49 10   apologize -- there are hundreds of documents, thousands of

09:39:51 11   pages.

09:39:51 12        I don't know how else we could present an

09:39:55 13   affidavit that would otherwise be attacked as just being

09:39:58 14   conclusory.  It's kind of a we're darned if we do, darned

09:40:02 15   if we don't on that one, I think.

09:40:04 16        If there were a discrete number of documents, as I

09:40:05 17   think is usually more appropriate and more typical, that

09:40:07 18   would have been a different scenario.  But when they put at

09:40:09 19   issue 10 bankers' boxes full of documents, I think that's

09:40:14 20   a -- a red herring.

09:40:17 21        THE COURT:  What else?

09:40:18 22        MR. FINDLAY:  Nothing else, unless you have any

09:40:20 23   additional questions, Your Honor.

09:40:21 24        THE COURT:  No, I don't think I have additional

09:40:23 25   questions.  Thank you.

09:40:23   1           MR. FINDLAY:  Thank you, Judge.

09:40:24   2           THE COURT:  All right.  With regard to the

09:40:34   3   Defendants' motion for protection, Document 263, and with

09:40:37   4   regard to the Defendants' second motion for protection,

09:40:42   5   Document 327, I'm going to grant the Defendants' motions in

09:40:50   6   both instances.

09:40:51   7           I disagree with the relators that there's not an

09:40:54   8   underlying element of confidentiality here.  I'm not

09:41:01   9   prejudging whether that confidentiality is such that would

09:41:03   10  prevent it from being used during an open trial during the

09:41:06   11  trial of the merits, but I see no reason to strike the

09:41:10   12  confidential designation that the Defendants have placed on

09:41:13   13  these documents now.

09:41:14   14          The Court will have plenty of time to look at

09:41:20   15  which of these -- and I agree with counsel it will probably

09:41:23   16  be a tiny fraction of the total -- but which of these are

09:41:26   17  actually going to be offered for presentation to the jury

09:41:30   18  during trial, and a decision about how those will or won't

09:41:35   19  be used can certainly be made at that time.  But as of now,

09:41:38   20  I see no basis to strike across the board the

09:41:44   21  confidentiality -- the confidential designation made under

09:41:46   22  the protective order by the Defendants with regard to these

09:41:49   23  documents.

09:41:49   24          So to that extent, the motions are both granted.

09:41:54   25          Now, I want to move to next and take up the

09:42:03  1  Defendants' motion for leave to file supplemental

09:42:06  2  memorandum in further support of their motion to exclude

09:42:09  3  the testimony of Kristen Folding.  That's Document 295.

09:42:14  4          I understand there's a companion Motion 337 that I

09:42:20  5  think was only fully briefed last night or yesterday.  It's

09:42:23  6  not set for today.

09:42:26  7          I'm not saying both sides might not get some

09:42:28  8  guidance out of this motion as to that motion, and perhaps

09:42:33  9  it will not have to come back for a subsequent hearing, but

09:42:36  10 I don't intend to get into that -- the merits of that

09:42:39  11 motion today.  I want to hear about the motion regarding

09:42:42  12 Ms. Folding.

09:42:43  13         All right.  With that, let me hear from the moving

09:42:45  14 Defendants.

09:42:46  15         MR. FINDLAY:  And may I approach with some slides,

09:42:48  16 Your Honor?

09:42:48  17         THE COURT:  You may.

09:43:07  18         MS. GRANT:  Good morning, Your Honor.  Robine

09:43:12  19 Grant on behalf of Team Health Defendants.  May it please

09:43:14  20 the Court.

09:43:14  21         THE COURT:  Please proceed, Ms. Grant.

09:43:16  22         MS. GRANT:  Your Honor, before you is Defendants'

09:43:18  23 motion for leave to file supplemental memorandum in further

09:43:21  24 support of Defendants' motion to exclude the opinion

09:43:24  25 testimony of relators' designated expert, Kristen Folding.

09:43:29  1          The depositions of all the experts in this matter

09:43:32  2   took place after the Defendants and relators were required

09:43:35  3   to file their initial Daubert briefs on December 17th,

09:43:42  4   2020.  Ms. Folding also served her supplemental report

09:43:47  5   after that date on October 1 of 2020.

09:43:49  6          During Ms. Folding's deposition and in her

09:43:52  7   supplemental report, she disclosed information that both

09:43:55  8   crystallized and expanded a live issue before the Court

09:43:58  9   relating to what the parties have been calling the missing

09:44:01  10  records or the unavailable record, as well as new facts

09:44:05  11  that Defendants weren't able to figure out previously from

09:44:09  12  reading relators' reports and the backup material relating

09:44:13  13  to an assistant that Ms. Folding relied upon to conduct her

09:44:18  14  analyses and render her opinions in these matters.

09:44:21  15         Given that this is a live issue before the Court,

09:44:25  16  we wanted to update the briefing and provide Your Honor

09:44:28  17  with all the information that you will need to fully

09:44:31  18  analyze and assess the motion to exclude Ms. Folding when

09:44:35  19  it's set for the pre-trial hearing in January 2021.

09:44:40  20         THE COURT:  Let me ask you this, Ms. Grant,

09:44:42  21  didn't -- didn't you have the benefit of this supplemental

09:44:44  22  report, and hadn't it been served on you before you filed

09:44:46  23  your reply brief in this situation?

09:44:48  24         MS. GRANT:  Your Honor, the reply brief was filed

09:44:54  25  after the supplemental report.  The only thing that was

09:44:58  1   updated in the supplemental report that was not included in

09:45:02  2   the original brief that we're using as a basis for our

09:45:05  3   current motion for leave to supplement is the disclosure

09:45:09  4   of -- or rather, sorry, her expansion of this spoliation

09:45:14  5   argument to make it clear that what she was doing was

09:45:17  6   including an adverse inference based on the unavailable

09:45:22  7   missing records.

09:45:22  8          We did not have any information relating to

09:45:25  9   Mr. Folding [sic] until her deposition, and that was after

09:45:28  10  the reply was filed.

09:45:29  11          THE COURT:  You mean Mr. Forrester?

09:45:32  12          MS. GRANT:  Sorry.  Well, Ms. -- Ms. -- Mr.

09:45:34  13  Forrest -- Ms. Folding's reliance on Mr. Forrester during

09:45:36  14  her deposition after the reply was filed.

09:45:40  15          THE COURT:  Too many Fs in here.

09:45:41  16          MS. GRANT:  Yes, there are.  Thank you, Your

09:45:43  17  Honor.

09:45:43  18          THE COURT:  All right.

09:45:43  19          MS. GRANT:  May I proceed?

09:45:45  20          THE COURT:  Yes, please.

09:45:47  21          MS. GRANT:  I'll start with the argument relating

09:45:49  22  to the unavailable missing records.

09:45:50  23          As you know, this was briefed in the original

09:45:53  24  Daubert briefing relating to Ms. Folding.  This is an

09:45:57  25  important issue, and I have this slide on the screen to --

09:46:00  1    to demonstrate why that is.

09:46:01  2             Ms. Folding was responsible for deriving the

09:46:03  3    universe from which relators are establishing their entire

09:46:08  4    damages theory.

09:46:08  5             The unavailable records, the -- the 20 and 54, the

09:46:13  6    74 unavailable records which account for 15 percent of

09:46:17  7    the -- the sample size account for approximately 76 percent

09:46:21  8    of relators' total damages.  And you'll see that -- well,

09:46:26  9    this is how she gets there.

09:46:28 10             So she pulls out the 20 records from the split

09:46:33 11    share claim of 97 claims, and she assigns a zero dollar

09:46:37 12    value for every single one of those claims, assuming that

09:46:40 13    it's false, assuming that full damages are owed on those

09:46:44 14    records because they don't exist today or didn't exist when

09:46:48 15    they were requested in 2020, at least in Defendants'

09:46:53 16    possession.

09:46:53 17             Defendants -- she then -- you know, for the claims

09:46:55 18    that she denied, because she found that they were

09:46:59 19    insufficient documentation -- for example, she saw the

09:47:01 20    records, she decided that it didn't meet the standards that

09:47:03 21    she applied in her review -- she did not apply a zero

09:47:07 22    damages value.  She, instead, applied a differential.

09:47:12 23             So for the split share claims that would be 85

09:47:14 24    cents on the dollar she would have said Team Health was

09:47:17 25    appropriately paid, which is how the damages are so heavily

09:47:21  1  weighted in favor of these missing records.

09:47:24  2          The same is true for the critical care claim.  The

09:47:27  3  differential is different, but the analysis is essentially

09:47:29  4  the same.

09:47:30  5          She uses 54 records and applies a zero dollar

09:47:35  6  value and says that every single dollar that Team Health

09:47:38  7  Defendants received on those claims should be returned as a

09:47:44  8  false payment to them, whereas for all of the other claims

09:47:47  9  that she denies for lack of documentation, when she

09:47:50 10  actually receives a document and reviews it, there is a

09:47:52 11  differential value associated with that based on what she

09:47:55 12  believes the documentation supports.

09:47:56 13          This is extremely important.  There's been no

09:48:03 14  motion for spoliation.  There's no evidence that there's

09:48:06 15  been any bad faith or bad conduct on the part of Defendants

09:48:10 16  in not producing these documents.

09:48:12 17          As you can see from this chart, these documents

09:48:15 18  are heavily weighted before 2013.  In fact, most of the

09:48:20 19  documents from 2006, 2007, and 2008 -- in fact, all,

09:48:25 20  rather, of the documents in the claim sample for those

09:48:28 21  three years were not provided because Defendants did not

09:48:32 22  have them in their possession.

09:48:34 23          And she included every single one of those as a

09:48:36 24  zero dollar value in what was then plugged into the damages

09:48:40 25  model.

09:48:40 1        There are no missing records from 2013 -- or,

09:48:45 2  sorry, from 2014 forward, and only one from 2013.  I

09:48:48 3  understand that Team Health Defendants moved to an

09:48:52 4  electronic medical record system around 2012.

09:48:55 5        And before then, there were paper records that

09:48:58 6  were either maintained in offsite storage or Team Health

09:49:02 7  Defendants never even took control and possession of these

09:49:05 8  records.  Rather, they had agreements -- right of access

09:49:09 9  agreements with the hospitals whereby the hospitals would

09:49:12 10 grant them access to retrieve and look at those records on

09:49:15 11 the hospital system, never take possession of them, use

09:49:18 12 them for coding, and that access was limited.  It lasts for

09:49:23 13 a limited period of time, and it's the -- Team Health's use

09:49:26 14 of those records was also limited.

09:49:28 15       The -- the -- those agreements, I understand, also

09:49:31 16 say that they are -- the document -- very clearly say that

09:49:37 17 the documents are documents of the hospitals.

09:49:39 18       Relators have admitted in -- in the briefing and

09:49:40 19 in discovery communications that they knew that they might

09:49:43 20 need to go and seek documentation from hospitals related to

09:49:47 21 these medical records, but they never did so.

09:49:49 22       And in failing to do so and in failing to bring a

09:49:54 23 motion for spoliation, they're circumventing the

09:49:57 24 required -- the Court's -- the Court's duty to make an

09:50:00 25 order and decide whether these documents are -- are missing

09:50:03  1  improperly or not, as well as the required finding that

09:50:06  2  there was some bad conduct or bad action by relator -- or,

09:50:10  3  by, sorry, Team Health Defendants in those documents not

09:50:14  4  being available.

09:50:15  5          Team Health Defendants are absolutely ready to

09:50:17  6  defend their ability and their actions in discovery, and --

09:50:21  7  and certainly would do that if that motion had been teed

09:50:24  8  up.

09:50:24  9          The key word is the word "missing" here suggests

09:50:34  10  that these records were destroyed.  And, in fact, that's

09:50:34  11  how they're being used by Ms. Folding.  She's assuming that

09:50:37  12  they're false, and she's assuming that full damages are

09:50:40  13  owed on these records.

09:50:41  14          Those are burdens of proof that belong to relators

09:50:44  15  that they're inappropriately now shifting to Team Health

09:50:48  16  Defendants based on their damages model.

09:50:51  17          THE COURT:  Aren't -- aren't we getting into the

09:50:52  18  merits of the Daubert here more than we are talking about

09:50:55  19  why you should have leave to supplement your response --

09:50:58  20          MS. GRANT:  Your Honor --

09:51:00  21          THE COURT:  -- or your motion, rather?

09:51:02  22          MS. GRANT:  -- respectfully, I am getting into the

09:51:07  23  merits to demonstrate why this is such an important issue

09:51:10  24  and why it's important for all of this briefing and

09:51:11  25  testimony to be before Your Honor.

09:51:13  1      But it's true and certainly would argue the merits

09:51:16  2  and -- and don't anticipate a -- a -- a ruling on the

09:51:18  3  merits today.  I just wanted to emphasize its importance,

09:51:22  4  and I will move on.

09:51:22  5      THE COURT:  Well, Daubert motions are so much fun,

09:51:27  6  you know.  We ought to argue them three or four times.

09:51:29  7      Go ahead.

09:51:30  8      MS. GRANT:  Thank you, Your Honor.

09:51:30  9      Well, I will turn to the next issue that we raised

09:51:34 10  in -- in the motion for leave to supplement and the

09:51:37 11  supplemental brief that we attached.

09:51:39 12      Now, this is one that is a completely new issue.

09:51:41 13  We had no idea about it when we reviewed Ms. Folding's

09:51:46 14  report, when we reviewed her supplemental report.

09:51:49 15      It was only in her deposition after all of the

09:51:51 16  briefing was done on the original Daubert motion that we

09:51:55 17  learned and knew how much Ms. Forrester -- or Ms. Folding,

09:52:00 18  I apologize, relied on Mr. Forrester.

09:52:03 19      Relators in their response brief argue that this

09:52:08 20  is just a weight of evidence issue that can be examined on

09:52:12 21  cross-examination.  And, respectfully, I disagree.  You

09:52:16 22  know, they are using -- Ms. Folding is using

09:52:20 23  Mr. Forrester's hearsay testimony and opinions to render

09:52:24 24  her own opinions.

09:52:25 25      And while Rule 703 allows that to -- the hearsay

09:52:30  1  opinions to be used, it's not appropriate in instances as

09:52:35  2  these, and we've cited a number of cases in our underlying

09:52:39  3  supplemental motion demonstrating why it's not appropriate

09:52:43  4  here.

09:52:43  5       Mainly, if an expert does not apply her own

09:52:46  6  expertise, if she does not say that she has the expertise

09:52:49  7  to scrutinize, review, evaluate what the underlying

09:52:55  8  assistant has done, if she has not designed the study, if

09:52:59  9  she has not directed how it is to be done, then that is an

09:53:03  10  admissibility issue, and caselaw indicates that it is not

09:53:06  11  appropriate to allow an expert to testify if they

09:53:12  12  ordinarily are a mouthpiece for an undisclosed expert.

09:53:17  13  And, respectfully, we -- we posit that as what is -- is

09:53:21  14  taking place here.

09:53:21  15       In your slide deck which you provided, I provided

09:53:22  16  some language that I just spoke to.  The only case that we

09:53:25  17  cited in our supplemental brief that relators included in

09:53:28  18  their response opposing our motion for leave is the case

09:53:33  19  Dura Automotive Systems of Indiana.  It's a Seventh Circuit

09:53:40  20  case from 2002.  Relators agreed with the first proposition

09:53:43  21  on this slide.  An expert witness is permitted to use

09:53:46  22  assistants in formulating his expert opinion.

09:53:47  23       We completely agree, Your Honor.  That is

09:53:49  24  appropriate.

09:53:49  25       What isn't appropriate is what the -- the case

09:53:52  1  goes on to say:  When analysis becomes more complicated and

09:53:56  2  the assistants move from assisting with experts' work to

09:54:01  3  being -- exercising their own professional judgment -- and

09:54:04  4  this is what's key -- that is outside the expert's ken.

09:54:12  5          And that's exactly the situation here.  And we had

09:54:14  6  no way to know that until Ms. Folding indicated so on --

09:54:15  7  during her deposition.

09:54:20  8          Here's some examples of what she said about her

09:54:23  9  expertise.  One of the -- the things that Mr. Forrester, we

09:54:25 10  found out, had done was he was responsible for selecting

09:54:28 11  the critical care diagnostic codes in that universe that

09:54:32 12  derived that sample of 384 claims that I showed you earlier

09:54:37 13  in the damages model.

09:54:38 14          Interestingly, we -- our experts discovered that

09:54:41 15  10 of the top 15 diagnostic codes for critical care had

09:54:47 16  been removed.  They're nowhere in that universe in the

09:54:50 17  samples that they saw.

09:54:51 18          Ms. Folding was questioned about how this was

09:54:55 19  derived at her deposition.  Each time she asked, she said:

09:55:01 20  I'm not a clinician, and I'm reticent to represent whose

09:55:03 21  activities that were clinical in nature, describing

09:55:05 22  Mr. Forrester's.  She continued that Mr. Forrester is the

09:55:06 23  subject matter expert in the area, and she's not.  So she's

09:55:09 24  --

09:55:09 25          THE COURT:  Let me stop you, Ms. Grant.

| | | |
|---|---|---|
| 09:55:11 | 1 | MS. GRANT:  Thank you, Your Honor. |
| 09:55:12 | 2 | THE COURT:  We're back into the merits again. |
| 09:55:13 | 3 | I really want to focus on why you need these |
| 09:55:19 | 4 | supplemental pages that you're asking for and not what the |
| 09:55:24 | 5 | underlying merits of the, as I say Daubert, as you say |
| 09:55:29 | 6 | Daubert motion really is. |
| 09:55:31 | 7 | MS. GRANT:  Thank you, Your Honor. |
| 09:55:31 | 8 | With respect to the Forrester issue, which is the |
| 09:55:36 | 9 | one that I'm discussing now, we need the pages because the |
| 09:55:39 | 10 | argument was not known.  We could not have known it at the |
| 09:55:42 | 11 | time that we filed our initial Daubert and -- and briefed |
| 09:55:47 | 12 | the -- the motion in full. |
| 09:55:48 | 13 | And we did not know that because all of that |
| 09:55:51 | 14 | happened before we took Ms. Folding's deposition. |
| 09:55:54 | 15 | I'll move forward and show you how he was |
| 09:55:57 | 16 | disclosed in her report.  All she says is:  David |
| 09:56:03 | 17 | Forrester, RN, supported the data analysis and review |
| 09:56:06 | 18 | process for this engagement support. |
| 09:56:09 | 19 | We agree assistants are appropriate if the expert |
| 09:56:12 | 20 | has the expertise, reviews the process, scrutinizes. |
| 09:56:16 | 21 | That's all they said about him here. |
| 09:56:19 | 22 | Then they describe his qualifications.  They don't |
| 09:56:21 | 23 | say he used them here, he used them at the exclusion of |
| 09:56:26 | 24 | Ms. Folding's qualifications. |
| 09:56:28 | 25 | He also attached a CV.  Again, there was no way |

09:56:31   1   for us to know that Ms. Folding herself felt that she did

09:56:33   2   not have the expertise to guide his review and his work.

09:56:33   3            Relators in their response indicate that they

09:56:40   4   disclosed the use of Mr. Forrester with the language that

09:56:43   5   I've highlighted here from Pages 13 and 17 of Ms. Folding's

09:56:50   6   report.

09:56:50   7            THE COURT:  Let me ask another question.  Clearly,

09:56:52   8   the original report mentions Mr. Forrester.  Clearly, the

09:56:55   9   original report mentions that he assisted Ms. Folding.

09:57:02   10            I mean, I don't see any problem that that doesn't

09:57:05   11   open the door to on the merits you making the kind of

09:57:08   12   argument that you're making.  I just don't know why I need

09:57:11   13   to read more pages of briefing on it.

09:57:14   14            I'm going to hear the argument and consider it

09:57:16   15   fully when we get to the motion itself at pre-trial.

09:57:22   16            Again, all the things that in your briefing you've

09:57:25   17   said support your motion for leave to supplement in written

09:57:31   18   form, yes, they're not as developed in the original report

09:57:34   19   as perhaps subsequently information has -- has come to your

09:57:40   20   hands, but I don't know that any of the issues you're

09:57:43   21   talking about having to raise in this supplemental briefing

09:57:47   22   are absolutely absent and have not been mentioned at all

09:57:53   23   either in the original report or the supplemental report

09:57:57   24   that you had before you filed your reply.

09:57:59   25            So if there's something that you feel you're going

09:58:02  1   to be prohibited from raising at the Daubert motion when

09:58:06  2   it's taken up on the merits because you didn't get a chance

09:58:09  3   to write about it and you need these pages so that you're

09:58:12  4   not prejudiced, tell me.

09:58:15  5           Otherwise, it looks like the topics that you want

09:58:18  6   to talk about in these additional pages are not new, and

09:58:22  7   you're not going to be barred from discussing them more

09:58:27  8   fulsomely at the hearing on the merits than you would in

09:58:30  9   your previous written replies.

09:58:33  10          So, again, if you're not going to be cut off from

09:58:38  11  arguing the merits as you fully understand them at the time

09:58:41  12  the motion is taken up, I don't see how you're prejudiced

09:58:46  13  if you don't get these additional pages you're asking for.

09:58:49  14  Does that make sense?

09:58:50  15          MS. GRANT:  It does make sense.  Thank you, Your

09:58:52  16  Honor.

09:58:52  17          In response, I'd say, I -- I understand, and I

09:58:56  18  certainly don't want to burden the Court with more briefing

09:58:59  19  on issues that you've already seen.

09:59:01  20          I agree with you in particular with respect to the

09:59:08  21  briefing that we have proposed relating to the spoliation

09:59:14  22  inference.  That one is such a key argument, and we didn't

09:59:16  23  know until after the original Daubert that that's how they

09:59:19  24  were justifying Ms. Folding's use of it.

09:59:22  25          In her original report, it was justified by saying

09:59:25  1  that, you know, if documentation doesn't exist, it never

09:59:29  2  existed.  And said that she was making an inference on that

09:59:32  3  basis, not that she as an expert witness was making a

09:59:35  4  spoliation inference.

09:59:38  5          As to the issue relating --

09:59:40  6          THE COURT:  Let me stop you -- let me stop you for

09:59:42  7  a second and just ask it this way, and I'll try to make

09:59:45  8  this as clear as I can.

09:59:47  9          Is there some substitute argument that you are

09:59:51  10  concerned you will be prohibited from making at the Daubert

09:59:54  11  motion when it's taken up on the merits if you don't get

09:59:56  12  this additional briefing?

09:59:58  13          MS. GRANT:  Yes, Your Honor.

09:59:58  14          THE COURT:  If so, tell me what that is and why

10:00:01  15  you believe you'd be barred from presenting.

10:00:05  16          MS. GRANT:  Yes, Your Honor.  And I apologize, I

10:00:06  17  didn't mean to jump in too soon.

10:00:09  18          I believe we would be barred potentially from

10:00:12  19  arguing the issue relating to -- to Mr. Forrester and her

10:00:16  20  reliance on his -- his basically undisclosed expert

10:00:22  21  opinions and expert work in the case.  That was not raised

10:00:25  22  at all in the initial briefing, and I have looked --

10:00:28  23          THE COURT:  Has there been something from the

10:00:30  24  relators that makes you believe they would try to prevent

10:00:32  25  you from arguing that?  Or is it just a self-generated

10:00:38  1  concern on your part that we need to have not only a belt

10:00:42  2  but suspenders and every other kind of backup we can

10:00:46  3  possibly have so that we can't be prohibited from arguing

10:00:49  4  it?

10:00:50  5          Did they say something or indicate in some way

10:00:52  6  they were going to oppose that, and that's why you felt you

10:00:54  7  needed to come forward and affirmatively ask for the leave

10:00:57  8  you have, or did you just decide we better ask because we

10:01:00  9  don't want to -- we don't want to be caught unawares?

10:01:05  10         MS. GRANT:  Your Honor, they opposed us asking to

10:01:08  11  supplement our Daubert.  They've opposed this brief.  They

10:01:12  12  also argue that this is a weight, not an admissibility

10:01:16  13  issue, which I believe indicates that they would oppose us

10:01:19  14  from arguing it, meaning that it's not a Daubert issue at

10:01:22  15  all.  It's for cross-examination.

10:01:23  16         We disagree.  And we had no way to raise this in

10:01:28  17  our original Daubert briefing, and so, did not specifically

10:01:31  18  move on this point because we thought that Mr. Forrester

10:01:33  19  was being used as an assistant, appropriately according to

10:01:38  20  the caselaw, and we did not know that we needed to move on

10:01:40  21  that issue in the original Daubert.

10:01:43  22         So, respectfully, yes, I -- I -- I believe based

10:01:45  23  on our discussions and what I have seen today that they

10:01:47  24  would oppose us arguing this specific issue and that we

10:01:52  25  would be significantly prejudiced based on our inability to

| | | |
|---|---|---|
| 10:01:56 | 1 | learn that until after the briefing had been completed on |
| 10:01:58 | 2 | the original Daubert motion. |
| 10:02:00 | 3 | THE COURT:  See, in my mind, if the relators say |
| 10:02:02 | 4 | it goes to the weight of the issue, then, to me, that means |
| 10:02:05 | 5 | the issue is appropriate to be fully argued, and the Court |
| 10:02:10 | 6 | has to decide whether it should be handled by |
| 10:02:13 | 7 | cross-examination or should it be handled by striking a |
| 10:02:15 | 8 | part of the report so it's not heard at all.  It's not a |
| 10:02:19 | 9 | matter of if it comes in in the argument.  It's a matter of |
| 10:02:25 | 10 | how the Court most appropriately deals with. |
| 10:02:28 | 11 | So when you say that we were concerned because |
| 10:02:30 | 12 | they said it goes to weight, that makes me feel like |
| 10:02:32 | 13 | they're admitting that it's an appropriate argument to be |
| 10:02:35 | 14 | presented to the Court, then putting the Court in the |
| 10:02:38 | 15 | position of deciding what's the appropriate remedy, not |
| 10:02:41 | 16 | whether I hear the argument, not whether you're precluded |
| 10:02:44 | 17 | and can't make it because you didn't brief it, but how do I |
| 10:02:47 | 18 | handle it? |
| 10:02:48 | 19 | MS. GRANT:  Understood, Your Honor.  And -- and, |
| 10:02:50 | 20 | respectfully, if we're able to argue both of these -- these |
| 10:02:54 | 21 | points.  I mean, certainly I, you know, respectfully |
| 10:02:58 | 22 | believe that the additional briefing is extremely helpful |
| 10:03:01 | 23 | and -- and highlights the issues in the full record for |
| 10:03:04 | 24 | Your Honor. |
| 10:03:05 | 25 | But if we are entitled to argue both of these |

```
10:03:08  1  points, then I don't think that the prejudice exists in
10:03:11  2  terms --
10:03:12  3           THE COURT:  Well, I don't want to speak for
10:03:13  4  relators, and they may get up here and tell me we didn't
10:03:16  5  say it went to -- just to the weight, and we do think it
10:03:19  6  ought to be precluded, but I'm just -- you're indicating to
10:03:22  7  me you believe that's their position.
10:03:23  8           And I'm just assuming that if that is their
10:03:28  9  position, it wouldn't in my mind preclude the issue from
10:03:31 10  being presented.  It would just go to how the Court wants
10:03:34 11  to then deal with that issue.
10:03:35 12           MS. GRANT:  Understood, Your Honor.  And I
10:03:37 13  certainly don't intend to speak for relators either.  And,
10:03:40 14  you know, so long as we have -- these arguments are
10:03:44 15  preserved, we don't, you know, have any preference as to
10:03:47 16  how your court would like us preserve them and make them at
10:03:50 17  the January hearing.
10:03:51 18           THE COURT:  Okay.
10:03:51 19           MS. GRANT:  Okay.
10:03:52 20           THE COURT:  Anything else, Ms. Grant?
10:03:54 21           MS. GRANT:  I -- I believe that's all for now.
10:03:57 22  Thank you, Your Honor.
10:03:58 23           THE COURT:  Let me -- thank you.
10:03:58 24           Let me hear a response from relators.
10:04:01 25           MR. DUCK:  Well, Your Honor, I'm -- I'm kind of in
```

10:04:13  1   a pickle because I want to respond to so much of the

10:04:16  2   substance, but I know that's not the issue.

10:04:17  3         THE COURT:  I don't want you to do that.

10:04:19  4         MR. DUCK:  I know you don't.  And that really

10:04:21  5   highlights the -- the argument here.

10:04:22  6         THE COURT:  And you're a more -- you're a more

10:04:23  7   seasoned lawyer than Ms. Grant is, and I'm not going to be

10:04:27  8   as nice to you as I was to her.

10:04:29  9         MR. DUCK:  Yes, sir.

10:04:29 10         Well, Your Honor, it really raises the -- the

10:04:32 11   whole point of why we -- why we oppose the supplement,

10:04:34 12   which is when you attached the brief that you are asking

10:04:38 13   for leave to file substantively, the issues are before the

10:04:41 14   Court.  Whether the Court decides to read those issues is,

10:04:46 15   of course, up to Your Honor.

10:04:47 16         However, the issues are now there.  They've

10:04:50 17   achieved the goal which is to raise this substance.  And

10:04:52 18   so, a ruling denying their motion for leave is in some

10:04:56 19   sense symbolic to -- to make sure that we just don't keep

10:05:01 20   doing this.  When is it going to be over?  When is the

10:05:04 21   briefing going to be finalized?

10:05:06 22         We are trying to get ready for trial.  And I know

10:05:09 23   that we exceeded page limits as we should not have, Your

10:05:12 24   Honor, but we take that seriously.

10:05:13 25         And we feel like the Court has been inundated with

10:05:16  1  papers by these Defendants, and it just hasn't stopped.

10:05:20  2       We've never taken the position that the Defendants

10:05:23  3  cannot raise something that they find out after the fact at

10:05:27  4  the hearing.

10:05:28  5       All the time, depositions occur after Daubert

10:05:33  6  motions happen.  And a lot of times, the deposition

10:05:35  7  transcript is read at the Daubert hearing.  We're not going

10:05:39  8  to object to that.

10:05:40  9       I do hope that there is -- there are some

10:05:43  10  parameters to the hearings in that if you didn't brief it,

10:05:47  11  you shouldn't be able to raise anything and everything that

10:05:50  12  you want to argue just because now we're dealing with a

10:05:55  13  hearing by surprise.

10:05:56  14       We believe everything was fully disclosed.  And

10:05:59  15  one thing that's very important for this particular motion

10:06:01  16  and its -- its companion, which we're not addressing today,

10:06:05  17  is that these Defendants didn't ask for the depositions of

10:06:08  18  our experts until after their Daubert deadline.  They could

10:06:12  19  have.  They chose not to.

10:06:14  20       We were actually under the assumption that has --

10:06:19  21  has kind of come back in style, these Defendants were just

10:06:22  22  not going to depose our experts.

10:06:24  23       It happens every now and then.  And it then after

10:06:27  24  the Daubert motions or very close thereto, we receive a

10:06:31  25  request.  We gave them dates.  The dates lapsed.

10:06:36  1          So they came back, and we gave them additional

10:06:39  2   dates.  By that time, the Daubert -- the Daubert deadline

10:06:42  3   had passed.

10:06:42  4          So, sure, they can argue that they learned

10:06:45  5   something new in the deposition.  We disagree.

10:06:46  6          But even if that were true, that they learned

10:06:52  7   something new, the dates of those depositions was the

10:06:55  8   Defendants' own doing, and we shouldn't be penalized by

10:07:00  9   having to brief and brief and brief new issues just because

10:07:03  10  they were not prioritizing these depositions.

10:07:05  11         That is why we're opposing this, to make sure that

10:07:10  12  we don't just keep getting this.  Last week, there was

10:07:13  13  another one.  We tried to respond early in case Your Honor

10:07:18  14  wanted to take it up.  We certainly are not intending to

10:07:21  15  argue that, but who knows what's next.

10:07:23  16         We've got some additional discovery coming up that

10:07:26  17  Your Honor has allowed, and there are several pending

10:07:28  18  motions right now.

10:07:29  19         And we just hope that there's not supplemental

10:07:34  20  briefing after supplemental briefing.  And that's why we

10:07:37  21  oppose it.

10:07:37  22         But, Your Honor, we want hearings to be fulsome

10:07:40  23  and both sides be able to argue their points.  We want to

10:07:43  24  be able to argue our points without someone objecting that

10:07:45  25  we didn't technically raise some nuance in our briefing.

10:07:49   1   And so, let's go have the Daubert hearings.  That's --

10:07:53   2   that's relators' position, and let's quit writing about it.

10:07:58   3            THE COURT:  All right.

10:07:59   4            MR. DUCK:  Thank you.

10:07:59   5            THE COURT:  Thank you.

10:08:00   6            Ms. Grant, do you have anything else?

10:08:02   7            MS. GRANT:  Your Honor, just briefly.

10:08:05   8            I want to reiterate that we have no objection to

10:08:12   9   the denial of our motion so long as the understanding is

10:08:16  10   that this will not be an argument at the hearing by

10:08:20  11   surprise, that we have notified relators of what we intend

10:08:23  12   to argue, we've notified the Court, and that we're entitled

10:08:26  13   to argue all of the issues that we've raised in our

10:08:28  14   supplemental briefing is absolutely fine with us.

10:08:31  15            Respect --

10:08:33  16            THE COURT:  Well, let me ask you this.

10:08:34  17            MS. GRANT:  Yes, Your Honor.

10:08:35  18            THE COURT:  Did you pick up the phone and call the

10:08:41  19   relators and say, you know, we think this has been

10:08:45  20   developed further in the discovery after the briefing on

10:08:48  21   the Daubert was concluded?  We want to make sure you're not

10:08:52  22   going to try to hold us to an artificially technical

10:09:00  23   standard, and if you're not, no, no big deal.  If you are,

10:09:03  24   then we may feel like we have to ask the Court to allow us

10:09:06  25   to file some additional briefing?

10:09:08   1          Did you do that by -- before you filed this

10:09:10   2   motion?

10:09:11   3          MS. GRANT:  We did.

10:09:11   4          THE COURT:  Because you should have, if you

10:09:12   5   didn't.

10:09:13   6          MS. GRANT:  Yes, Your Honor, we did --

10:09:14   7          THE COURT:  And did they tell you they were going

10:09:16   8   to hold you to an artificially technical standard, and

10:09:19   9   that's why you felt like you had to go ahead, or did they

10:09:22  10   tell you what I just heard from them now, that we both want

10:09:25  11   a fulsome argument at the time the motion is taken up on

10:09:28  12   the -- on the merits?

10:09:29  13          MS. GRANT:  It was articulated that they would

10:09:32  14   oppose the relief that we were requesting.  So we

10:09:34  15   anticipated that that meant that they were opposing that.

10:09:38  16          And I certainly did not mean to burden Your Honor

10:09:41  17   with arguments that are unnecessary and we can have

10:09:41  18   discussions -- make sure that's clearly --

10:09:41  19          THE COURT:  Well --

10:09:44  20          MS. GRANT:  -- developed in the future, but we

10:09:45  21   certainly did call and discuss.

10:09:46  22          THE COURT:  -- then that means somebody is not

10:09:48  23   telling me exactly the way it really happened because I'm

10:09:51  24   hearing it in two very diametrically opposed versions.

10:10:00  25          I'm going to deny this motion, and I suggest to

10:10:02  1   you that unless there's something wholly unique about the

10:10:06  2   one that just completed briefing, it's probably going to

10:10:10  3   suffer the same fate.

10:10:12  4          I'm going to tell both sides that I intend to hear

10:10:15  5   fulsome argument on the merits when we get to the Daubert

10:10:20  6   motions at pre-trial.

10:10:21  7          And unless there is a compelling reason why I need

10:10:25  8   to constrain those arguments, I don't -- probably won't do

10:10:29  9   that.

10:10:30  10         And I know that relators' lawyers are experienced

10:10:35  11  enough before this Court to know that is this Court's

10:10:39  12  general approach.

10:10:41  13         And I know counsel -- co-counsel to you on the

10:10:43  14  Defendants' side are experienced enough before this Court

10:10:46  15  to know that is going to be this Court's typical approach.

10:10:49  16         I'm not sure why I need to spend the time this

10:10:52  17  morning hearing about whether I should allow certain number

10:10:56  18  of additional pages to be filed.

10:11:02  19         Again, my questions during the argument were:  Is

10:11:04  20  there going to be some prejudice because somebody is going

10:11:08  21  to be precluded because there's going to be a surprise here

10:11:12  22  if these pages don't get filed?  And I'll be honest, I

10:11:16  23  really haven't heard that.

10:11:17  24         And in my reading of the briefing, most of what

10:11:20  25  you've raised in your motion, if not all of what you've

| | | |
|---|---|---|
| 10:11:23 | 1 | raised in your motion at least has been touched on in the |
| 10:11:27 | 2 | underlying motion and the briefing related to it which to |
| 10:11:31 | 3 | me would make it clear that it's fair game for argument |
| 10:11:37 | 4 | when we get there. |
| 10:11:38 | 5 | So I'll be honest, I really, in reading the |
| 10:11:41 | 6 | briefing, didn't see a compelling reason why this motion |
| 10:11:46 | 7 | needed to be presented. |
| 10:11:46 | 8 | I've got enough to do without having unnecessary |
| 10:11:53 | 9 | motions to allow additional pages of briefing when a lot of |
| 10:12:00 | 10 | what's mentioned is in the original report, and then you |
| 10:12:04 | 11 | have the benefit of the supplemental report before you file |
| 10:12:06 | 12 | your reply. |
| 10:12:10 | 13 | I don't -- I don't feel compelled to give either |
| 10:12:13 | 14 | side three bites at the apple.  We will tee this up when we |
| 10:12:21 | 15 | get to pre-trial on the merits when the motion is taken up, |
| 10:12:21 | 16 | and I'll hear everybody's arguments. |
| 10:12:21 | 17 | And somebody's going to have to show me a very |
| 10:12:23 | 18 | compelling reason why I should keep an opposing counsel |
| 10:12:27 | 19 | from making an argument on the merits of the motion at that |
| 10:12:30 | 20 | time. |
| 10:12:31 | 21 | But both sides knowing that's the Court's general |
| 10:12:34 | 22 | approach, I can't really view what's before me now as much |
| 10:12:43 | 23 | more than a waste of my time. |
| 10:12:44 | 24 | I'm not imputing any bad motive, but by the same |
| 10:12:50 | 25 | token, I've been on this bench nine years this month, and I |

10:12:58  1  think pretty much everybody in this courtroom knows how I'm

10:13:01  2  going to handle this Daubert motion when we get there.

10:13:03  3        So, again, all things considered, the motion to

10:13:09  4  allow leave to file the additional briefing as sought by

10:13:13  5  the Defendants in regard to the Daubert motion pending

10:13:16  6  regarding Kristen Folding is denied.

10:13:19  7        All right.  Thank you, Ms. Grant.

10:13:21  8        MS. GRANT:  Thank you, Your Honor.

10:13:21  9        THE COURT:  Are there additional matters that are

10:13:23  10  set for argument this morning that the Court somehow has

10:13:26  11  overlooked or not taken up that either side is aware of?

10:13:29  12        MR. DUCK:  Not to my knowledge, Your Honor.

10:13:31  13        MR. FINDLAY:  No, Your Honor.

10:13:32  14        THE COURT:  All right.  I will say this before I

10:13:45  15  step down off the bench today.  I think Defendants should

10:13:49  16  be acknowledged by the Court as having allowed Ms. Grant to

10:13:54  17  argue this motion.

10:13:55  18        I see too many cases where lawyers of considerable

10:14:02  19  age and experience feel compelled to take everything on

10:14:05  20  their own shoulders, and the young lawyers don't get a

10:14:09  21  chance.  And it's an important part of preparing our

10:14:13  22  profession for the future that young lawyers get a chance.

10:14:16  23        And, Ms. Grant, you did a good job this -- this

10:14:18  24  morning, even though I denied your motion.  And I commend

10:14:23  25  Mr. Melsheimer and the defense team as a whole for allowing

10:14:25   1   you to do that.

10:14:26   2           That said, don't file some motions just so the

10:14:31   3   young lawyers get a chance to argue them.

10:14:34   4           MR. MELSHEIMER:  Your Honor, we'll pick a better

10:14:36   5   motion.

10:14:37   6           THE COURT:  I did want to acknowledge that in the

10:14:39   7   record.

10:14:39   8           MR. MELSHEIMER:  Thank you, Your Honor.  And Merry

10:14:43   9   Christmas and happy holidays to the Court and its staff.

10:14:47   10           THE COURT:  All right.  Same to everyone else.

10:14:47   11   That competes this morning's hearing.

10:14:51   12           Court is adjourned.

10:14:52   13           COURT SECURITY OFFICER:  All rise.

10:14:53   14           (Hearing concluded.)

           15

           16

           17

           18

           19

           20

           21

           22

           23

           24

           25

1                          <u>CERTIFICATION</u>

2

3          I HEREBY CERTIFY that the foregoing is a true and

4     correct transcript from the stenographic notes of the

5     proceedings in the above-entitled matter to the best of my

6     ability.

7

8

9     <u> /S/ Shelly Holmes       </u>         <u>12/15/2020 </u>
      SHELLY HOLMES, CSR, TCRR                Date
10    OFFICIAL REPORTER
      State of Texas No.: 7804
11    Expiration Date: 12/31/2020

12

13

14

15

16

17

18

19

20

21

22

23

24

25