# EXHIBIT 1

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice, and Team Health Holdings Inc., Team Finance LLC, Team Health Inc. (now Team Health, LLC), AmeriTeam Services LLC, HCFS Health Care Financial Services LLC, and Quantum Plus LLC (d/b/a TeamHealth West) (collectively, the "Defendants" or "TeamHealth"), and Caleb Hernandez and Jason Whaley (collectively, the "Relators") (all hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A.  During the time period covered by this Agreement, TeamHealth was a national healthcare organization that consisted of holding companies, operating subsidiaries, affiliated professional entities, and individuals. TeamHealth staffing company subsidiaries contract with hospitals, hospital systems or other clinical care entities to provide medical staffing services through professional or other entities that contract with TeamHealth-affiliated clinicians, who provide medical services at various facilities including hospital emergency departments. Defendant Quantum Plus LLC was a medical staffing company that contracted with hospitals, hospital systems or other clinical care entities to provide medical staffing services through professional or other entities that contract with TeamHealth-affiliated clinicians. Defendant AmeriTeam Services LLC provided administrative-support services to certain affiliated staffing companies. Defendant HCFS Health Care Financial Services LLC performed billing and collection services on behalf of certain local entities that contracted directly with health care providers. Defendant HCFS Health Care Financial Services LLC billed Medicare, among other payors, for professional services performed by medical providers who contracted with staffing

companies such as Quantum Plus LLC. Defendant Team Health Holdings Inc. is a holding company for Defendant Team Finance LLC, which is a holding company for multiple operating subsidiaries in the TeamHealth organization. Defendant Team Health Inc. employed support center employees and certain senior executives in the TeamHealth organization and provided administrative and support services until December 31, 2014. Defendant AmeriTeam Services LLC replaced Team Health Inc. as an employer and provider of administrative and support services on January 1, 2015, at which time Team Health Inc. became a holding company for multiple operating subsidiaries in the TeamHealth organization.

B.   On April 25, 2016, Relators filed a *qui tam* action in the U.S. District Court for the Eastern District of Texas captioned *United States ex rel. Hernandez, et al. v. TeamHealth Holdings, Inc., et al.*, No. 2:16-cv-00432-JRG, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Civil Action"). On June 28, 2018, the United States filed a notice of election to decline intervention in the Civil Action. Relators filed amended complaints on November 12, 2018; September 19, 2019; and September 15, 2020. Relators allege that Defendants knowingly submitted or caused to be submitted false claims for payment to Medicare by instituting and executing two schemes, one to overbill for emergency services provided at least in part by mid-level providers, and the other to overbill ordinary emergency services as critical care services. Relators also allege that, in furtherance of the two schemes, Defendants made, used, or caused to be made or used, false records and statements material to false or fraudulent claims.

C.   The United States contends that Defendants submitted or caused to be submitted claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395lll ("Medicare").

D.  The United States contends that it has certain civil claims against Defendants arising from the following conduct (the "Covered Conduct"). The United States contends that Defendants knowingly submitted or caused the submission of false claims to Medicare Part B by billing for outpatient emergency department evaluation and management ("E/M") services under physicians' National Provider Identifiers ("NPIs"), when the services should have been billed under the NPIs of mid-level providers (*i.e.*, Physician Assistants ("PAs") and Nurse Practitioners ("NPs")), including because Defendants did not have adequate documentation to bill the claim under the physicians' NPI, thereby obtaining higher reimbursement at 100% of the Medicare physician rate instead of 85% of the Medicare physician rate, during the period from May 1, 2006 through December 31, 2020. The United States further contends that Defendants knowingly submitted or caused the submission of false claims to Medicare Part B by billing for outpatient emergency department critical care services under Current Procedural Terminology ("CPT") codes 99291 and 99292, when the services should have been billed using codes evidencing a lower and less expensive level of medical service, including because Defendants did not have adequate documentation to bill the claim for critical care services, during the period from May 1, 2006 through December 31, 2020.

E.  Defendants deny any allegations by Relators in connection with the Civil Action.

F.  Defendants deny the United States' allegations in Paragraph D.

G.  This Agreement is neither an admission of liability by Defendants nor a concession by the United States that its claims are not well founded.

H.  Relators claim entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relators' reasonable expenses, attorneys' fees and costs.

3

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1. Defendants shall pay to the United States Forty Two Million Five Hundred Thousand ($42,500,000.00) (Settlement Amount), of which Twenty One Million Two Hundred Fifty Thousand ($21,250,000.00) is restitution, no later than fourteen (14) days after the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions to be provided by the Office of the United States Attorney for the Eastern District of Texas.

2. Conditioned upon the United States receiving the Settlement Amount and as soon as feasible after receipt, the United States shall pay $12,112,500.00 to Relators by electronic funds transfer ("Relators' Share").

3. Defendants agree to pay Relators' reasonable expenses, attorneys' fees and costs ("Attorneys' Fees Payment") and shall make one payment totaling $5,500,000.00 by electronic funds transfer pursuant to written instructions to be provided by Relators' counsel (Nix Patterson, LLP). Defendants will use their counsel to facilitate the collection and transmission of the payment from the Defendants to Relators' counsel. The foregoing payment to Relators' counsel will be completed no later than fourteen (14) days after the Effective Date of this Agreement. Relators and their counsel agree that this payment will fully satisfy any actual or potential claims for statutory fees, expenses, and costs related to this matter. Relators and Relators' counsel also represent and warrant that no other counsel that has represented Relators in connection with the Civil Action has and/or will make a claim for attorneys' fees, expenses, or costs and that they have in no way assigned any claim for fees and costs to any other person or entity. Relators and

Relators' counsel agree to indemnify and hold harmless Defendants for any subsequently asserted claim for attorney's fees, costs, or expenses related to this case.

4. Subject to the exceptions in Paragraph 6 (concerning reserved claims) below, and upon the United States' receipt of the Settlement Amount, the United States releases Defendants, together with each of their current and former parent corporations; direct and indirect subsidiaries; affiliates; brother or sister corporations; including each of their divisions; current or former corporate owners; and the corporate successors and assigns of any of them, from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

5. Subject to the exceptions in Paragraph 6 below, and upon (a) the United States' receipt of the Settlement Amount and (b) Relators' counsel's receipt of the Attorneys' Fees Payment, Relators and Relators' counsel, for themselves and for their heirs, successors, attorneys, agents, and assigns, fully and finally release Defendants and any "Affiliated Companies" ("Affiliated Companies" is defined herein as Defendants, together with each current and former parent corporation of any Affiliated Companies; direct and indirect subsidiaries of any Affiliated Companies; professional entities (e.g., professional corporations, professional associations, and professional limited liability companies) managed by or otherwise affiliated with direct and indirect subsidiaries of any Affiliated Companies, and including each of their divisions; current or former corporate owners, members, officers, directors, employees, agents, attorneys, or insurers; and the corporate successors and assigns of any of them), from any claims that Relators have asserted, could have asserted, or may assert in the future, relating to any conduct that occurred on

or before the Effective Date of this Agreement. The release includes, without limitation, the entities listed in Attachment A, "TeamHealth Affiliated Companies."

6. Notwithstanding the releases given in Paragraphs 4 and 5 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

   a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

   b. Any criminal liability;

   c. Except as explicitly stated in this Agreement, any administrative liability or enforcement right, including mandatory or permissive exclusion from Federal health care programs;

   d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

   e. Any liability based upon obligations created by this Agreement;

   f. Any liability of individuals;

   g. Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

   h. Any liability for failure to deliver goods or services due;

   i. Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

7. Relators and their heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relators'

receipt of the Relators' Share, Relators and their heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

8. Subject to Relators' counsel's receipt of the Attorneys' Fees Payment, Relators, for themselves, and for their heirs, successors, attorneys, agents, and assigns, release Defendants and their Affiliated Companies, and their officers, agents, and employees, from any liability to Relators arising from the filing of the Civil Action, or under 31 U.S.C. § 3730(d) for expenses or attorneys' fees and costs.

9. Defendants waive and shall not assert any defenses Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

10. Defendants fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendants have asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct or the United States' investigation or prosecution thereof.

11. Defendants fully and finally release the Relators from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendants have

asserted, could have asserted, or may assert in the future against the Relators, related to the Covered Conduct and the Relators' investigation and prosecution thereof.

12. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (*e.g.*, Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payer, related to the Covered Conduct; and Defendants agree not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, agree not to appeal any such denials of claims, and agree to withdraw any such pending appeals.

13. Defendants agree to the following:

    a. <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395lll and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Defendants, their present or former officers, directors, employees, shareholders, and agents in connection with:

        (1) the matters covered by this Agreement;

        (2) the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

        (3) Defendants' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

        (4) the negotiation and performance of this Agreement; and

8

(5) the payment Defendants make to the United States pursuant to this Agreement and any payments that Defendants may make to Relators, including costs and attorneys' fees

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as "Unallowable Costs").

b. <u>Future Treatment of Unallowable Costs</u>: Unallowable Costs shall be separately determined and accounted for by Defendants, and Defendants shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Defendants or any of their subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c. <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Defendants further agree that within 120 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Defendants or any of their subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Defendants agree that the United States, at a minimum, shall be entitled to recoup from Defendants any overpayment plus applicable interest and penalties as a result of

the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Defendants or any of their subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this paragraph) on Defendants or any of their subsidiaries or affiliates' cost reports, cost statements, or information reports.

d. Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Defendants' books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this paragraph.

14. Defendants agree to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement. Upon reasonable notice, Defendants shall encourage, and agree not to impair, the cooperation of its directors, officers, and employees, and shall use their best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. Defendants further agree to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that they have undertaken, or that has been performed by another on any of Defendants' behalf.

15. This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 16 (waiver for beneficiaries paragraph), below.

16. Defendants agree that they waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

17. Relators' counsel also is a party to the agreement with respect to Paragraphs 5, 7, 8, 17, 18, 21, 24-28, and 31-32.

18. Relators and Relators' counsel represent that they have filed no other lawsuits or initiated any other proceedings against Defendants that remain pending other than the Civil Action; that they are not currently involved in, aware of, or conducting any investigation related to facts that might reasonably be viewed as potentially giving rise to an action against Defendants that might be filed pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b); and that they have no present intention of conducting such an investigation or pursuing such an action against Defendants. To clarify, the representation with respect to awareness is limited to non-public information.

19. Relators represent that they are not currently employed or engaged (e.g., as an independent contractor) by Defendants or any Affiliated Companies, parent, or subsidiary thereof. Relators waive and relinquish any and all claims, rights, or interest in reinstatement or future employment or engagement with Defendants or any Affiliated Companies, parent, or subsidiary thereof, except as stated herein. Relators will not apply for or otherwise seek employment or engagement with Defendants or with any Affiliated Companies, parent or subsidiary thereof. This

Paragraph shall not apply to any scenario wherein Defendants or any Affiliated Companies, parent, or subsidiary thereof acquires, merges with, or otherwise obtains a contract to receive services from or perform services for any physicians group, locums practice, or facility after the Effective Date of this Agreement with which any Relator is employed or contracted at the time of such acquisition, merger, or contractual agreement.

20. Within sixty (60) days of the dismissal with prejudice of this Civil Action, Relators and Defendants will comply with paragraph 21 of the Stipulated Protective Order entered in this matter at Docket No. 69 with respect to the destruction of Protected Documents including Confidential Health Information.

21. Relators and Relators' counsel agree not to issue press releases or initiate (directly or indirectly, including through an agent or third party) media inquiries in connection with the settlement, nor to post information regarding the settlement on social media or website, with the exception that Relators' counsel can state, if an inquiry is made by a third party and not initiated by Relators or Relators' counsel (directly or indirectly, including through an agent or third party), that they were the counsel of record in the Civil Action.

22. Upon receipt of the payments described in Paragraph 1, 2, and 3, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1).

23. Except as described herein, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

24. Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

25. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Eastern District of Texas. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

26. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

27. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

28. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

29. This Agreement is binding on Defendants' successors, transferees, heirs, and assigns.

30. This Agreement is binding on Relators' successors, transferees, heirs, and assigns.

31. All Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

32. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

SIGNATURE PAGES TO FOLLOW

THE UNITED STATES OF AMERICA

DATED: 06/14/21     BY: /s/ Kelly A. Quinn
Kelly A. Quinn
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice

DATED: 6/14/21     BY: /s/ James Gillingham
James Gillingham
Assistant United States Attorney
Eastern District of Texas

DEFENDANTS

DATED: _____     BY: _____
Phil McSween
TeamHealth Holdings Inc., Team Finance LLC,
TeamHealth Inc., Ameriteam Services LLC, HCFS Health
Care Financial Services LLC, and Quantum Plus LLC

DATED: _____     BY: _____
Thomas M. Melsheimer
Winston & Strawn LLP
Counsel for Defendants TeamHealth Holdings Inc.,
Team Finance LLC, TeamHealth Inc., Ameriteam Services
LLC, HCFS Health Care Financial Services LLC, and
Quantum Plus LLC

14

**THE UNITED STATES OF AMERICA**

DATED: _____   BY:   _____
Kelly A. Quinn
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice


DATED: _____   BY:   _____
James Gillingham
Assistant United States Attorney
Eastern District of Texas


**DEFENDANTS**

DATED: 6/14/2021   BY:   */s/ Phil McSween/*
Phil McSween
TeamHealth Holdings Inc., Team Finance LLC,
TeamHealth Inc., Ameriteam Services LLC, HCFS Health
Care Financial Services LLC, and Quantum Plus LLC


DATED: 6/14/2021   BY:   */s/ Thomas M. Melsheimer/*
Thomas M. Melsheimer
Winston & Strawn LLP
Counsel for Defendants TeamHealth Holdings Inc.,
Team Finance LLC, TeamHealth Inc., Ameriteam Services
LLC, HCFS Health Care Financial Services LLC, and
Quantum Plus LLC

14

## RELATORS

DATED: 6-14-2021    BY: *[signature]*
Caleb Hernandez

DATED: 6-11-2021    BY: *[signature]*
Jason Whaley

DATED: 6/11/2021    BY: *[signature]*
Trey Duck
Nix Patterson, LLP
Counsel for Caleb Hernandez and Jason Whaley

15