# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., ex rel. CALEB HERNANDEZ and JASON WHALEY, Relators, *Plaintiffs*, v. TEAM HEALTH HOLDINGS INC., et al., *Defendants*. | CASE NO. 2:16-CV-00432-JRG |

## DEFENDANTS' RESPONSE TO LOREN ADLER'S SUPPLEMENTAL BRIEF IN SUPPORT OF HIS MOTION TO INTERVENE

## INTRODUCTION

The Fifth Circuit placed "[t]he decision to grant or deny Adler's intervention . . . firmly in th[is C]ourt's hands." Op. 10, *United States ex rel. Hernandez v. Team Fin., L.L.C.*, 80 F.4th 571 (5th Cir. 2023) (attached) (citing *Turner v. Cincinnati Ins. Co.*, 9 F.4th 300, 317 (5th Cir. 2021)). This is no surprise. As the Fifth Circuit recognized, this Court "is better situated to assess the exact length of Adler's delay, any explanations for such delay," and other "relevant" considerations for timeliness. *Id*. And in any event, "[p]ermissive intervention is wholly discretionary and may be denied even when the requirements of Rule 24(b)"—including timeliness—"are satisfied." *Turner*, 9 F.4th at 317 (quotation omitted); *see also* Op. 10 ("reiterat[ing this C]ourt's discretion in ultimately deciding Adler's motion"); *id*. at 2 (recognizing that "courts are afforded great discretion in deciding intervention pursuant to Federal Rule of Civil Procedure 24(b)").

As discussed below, Adler's petition to intervene was untimely, whether that delay is measured from the announcement of the settlement (10 months), the dismissal of the case (6 months), or even his self-proclaimed discovery of the litigation (2 months). This Court can and should find that this kind of unexplained delay is just too long. And the Fifth Circuit did not disturb this Court's previous findings about the prejudice to TeamHealth and the lack of prejudice to Adler personally. Denying intervention remains the right decision.

## ARGUMENT

**I.  Adler waited too long to seek intervention.**

The Fifth Circuit's guidance focuses on the first *Stallworth* factor: "the length of time the movant waited to file." *See* Op. 8–9 (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir. 1977)). The court clarified that the delay must be measured from "the moment that the prospective intervenor knew that his interests would no longer be protected." Op. 9 (internal

1

quotations and citation omitted).  This is an objective test.  *Rotstain v. Mendez*, 986 F.3d 931, 937 (5th Cir. 2021) (measuring "[t]he length of time during which the would-be intervenor actually knew ***or reasonably should have known*** of his interest in the case before he petitioned for leave to intervene") (emphasis added) (quoting *Stallworth*, 558 F.2d at 264).  It is now up to this Court to identify the relevant "moment"—and to evaluate Adler's delay in light of it.

Under the Fifth Circuit's guidance, the relevant moment is ***February 25, 2021***, when the parties announced that they had reached a settlement.  ECF 423 at 1.  As Adler recognizes, the news of the settlement put the public on notice that the scheduled trial would not happen and that the parties would be "'complacent or non-adversarial'" with respect to sealing issues.  *See* ECF 473 at 3 (arguing that "it was not apparent that the parties would be 'complacent or non-adversarial' as to the sealing of court records until they finally reached a settlement") (quoting Op. 9).  Thus, February 25, 2021 is the date when Adler "reasonably should have known" of his interest in the matter (*Rotstain*, 986 F.3d at 937) and that it would not be protected (Op. 9).  Yet he waited almost 10 months—until ***December 14, 2021***—to file his petition for permissive intervention.  It is entirely within this Court's discretion to find this period too long.  *See, e.g.*, *United States v. Allegheny-Ludlum Indus., Inc.*, 553 F.2d 451, 453 (5th Cir. 1977) (affirming finding of untimeliness where prospective intervenor waited 7.5 months after judgment and 6 months after challenged decrees were implemented); *United States v. U.S. Steel Corp.*, 548 F.2d 1232, 1235 (5th Cir. 1977) (affirming finding of untimeliness after delay of "almost a year").

Adler's delay is particularly dramatic in context.  The first sealing order (in mid-2020) was generally uncontested, though the parties assured the Court that the First Amendment standard for sealing had been met.  *See, e.g.*, ECF 139 (document to be sealed "contains confidential information and the public disclosure of such creates a substantial risk of harm that

2

outweighs the strong presumption in favor of public access to judicial proceedings"). Dozens more sealing orders followed. *See* ECF 142, 163, 174, 191, 221, 232, 254, 261, 283, 287, 293, 297, 306–07, 316, 323, 328, 331, 341, 348, 351, 358, 366, 384, 387, 399, 411–12, 421, 435. As trial approached, Relators sought to make many of the documents public by challenging their confidentiality designations. ECF 263, 327. At a December 2020 hearing, this Court upheld the designations, but with what the Fifth Circuit later called a "caveat": that the sealing orders "could be reconsidered later in the context of trial." Op. 2–3; *see also* Hr'g Tr. (ECF 353) 32:8–13 (the Court explaining, "I'm not prejudging whether that confidentiality . . . would prevent [confidential material] from being used ***during an open trial during the trial of the merits***") (emphasis added). In context, then, Adler is wrong when he says the sealing orders were entered "provisionally." *See* ECF 473 at 3. The orders were the orders. They were tentative only to the extent that they might be reconsidered in the context of the upcoming public trial. *See* ECF 340 (trial set for March 1, 2021).

The parties' February 25, 2021 announcement put Adler and the public on notice that they could no longer count on a public trial—and thus that the Court would have no occasion to reconsider or modify its prior orders.[1] The Fifth Circuit appreciated the significance of the averted trial, and for good reason. *See* Op. 10 (directing this Court to assess its "prior consideration [of sealing issues] by the court and litigants, and the tentative nature of the court's evidentiary rulings in light of an upcoming, but ultimately averted, trial"). Once the settlement was announced, Adler could no longer rely on the possibility that the orders "could be reconsidered later in the context of trial." Op. 2–3. Further, the settlement announcement made

---

[1] Starting the intervention clock at this late stage of the case, years from "the onset of litigation," obviates the Fifth Circuit's concern about "encouraging premature action." Op. 9 (citing *Stallworth*, 558 F.2d at 264–65).

3

it "apparent that the parties would be 'complacent or non-adversarial' as to the sealing of court records." ECF 473 at 3 (quoting Op. 9). At that point, Adler "reasonably should have known of his interest in the case" (*Stallworth*, 558 F.2d at 264) and that it "would no longer be protected" (Op. 9).

For his part, Adler does not offer a precise date or event from which the delay should be measured, arguing instead that "it was not until months after the settlement—when it was apparent that this Court was not going to further interrogate the sealing of the court records—that Adler knew his interests were not otherwise protected." ECF 473 at 4. This cannot be squared with the timeline of the case. We assume that "months after the settlement" refers to late June 2021, when the settlement was finalized and the case was dismissed. But it was the settlement in principle and the averted trial—not the dismissal of the case—that put Adler on notice that the parties were no longer adversarial and the Court's sealing decisions would not be reconsidered. None of the papers the parties filed to extend the stay suggested that the settlement was not on solid footing. To the contrary, the parties assured the Court of their progress and blamed the delays on bureaucracy. *See, e.g.*, ECF 423 at 1 (explaining that finalizing the settlement would require "multiple approvals within the Department of Justice"); ECF 428 at 1 ("progress [had been] made in finalizing the settlement," including "draft[ing] an initial settlement agreement," but the government was still "working to obtain approval for the settlement from the responsible [DOJ] officials"); ECF 430 at 1 (despite the process "requir[ing] discussions with and various approvals by [DOJ, t]he parties anticipate completing that process in the next few weeks").

Nor was there any reason to suspect that the Court would revisit its sealing orders *sua sponte* during the four months it took to formalize the settlement. To the contrary, the Court's orders—in reluctantly agreeing to extend the stay a fourth and final time in June 2021—

4

confirmed that it wanted the case to be over. *See* ECF 436 at 2 (ordering that "appropriate dismissal papers **shall** be filed with the Court" within 7 days) (emphasis in original). It was unreasonable for Adler to continue to wait for the Court to act *sua sponte* while the parties were finalizing the settlement and awaiting approval (ECF 423, 428, 430, 432), while the agreement was being performed (ECF 437–38), and while the case was being dismissed with prejudice (ECF 439), when the supposed moment to do so—the averted trial—had long passed.

Tellingly, Adler cites no case to support his statement that "courts routinely exercise their independent duty to protect the public's right of access after a case settles." ECF 473 at 3. Our system is an adversarial system, and there is no rule or practice requiring a court to reconsider an order when no one asked it to. It is far from "routine" for a court to reverse its own orders *sua sponte* and unseal documents following a settlement; TeamHealth's nationwide docket searches turned up only one such instance, by a judge in a different circuit. *See Adana Investing, Inc. v. Wells Fargo Bank, N.A.*, No. 16-21562 (S.D. Fla., July 24, 2017) (Ungaro, J.), ECF 217.[2] In the lone case Adler pointed to in his Fifth Circuit briefing on this issue (Opening Br. 47), the district court unsealed two orders **on motion of a party**, not on its own initiative. *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 203 (5th Cir. 2015). And unsealing made sense there, given that the case was headed up on appeal, the non-movant "d[id] not identify any particular confidential information in the orders that may cause it harm, and much of the information therein is available elsewhere." *Id.* at 203–04. Here, the sealed documents contain "people's private health information" and "proprietary business information . . . at the heart of what TeamHealth does"—the types of information that remain highly sensitive indefinitely.

---

[2] *Sua sponte* evaluations of the record seem to be Judge Ungaro's personal practice. *See, e.g., PETA, Inc. v. Miami Seaquarium*, No. 15-22692 (S.D. Fla, July 18, 2016) (Ungaro, J.), ECF 215 (*sua sponte* unsealing certain record documents following appeal of summary judgment).

ECF 535 at 27:19–23, 28:16–29:8. Particularly under these circumstances, it was unreasonable for Adler to sit back and assume that the Court would reconsider its orders *sua sponte*.

Although Adler argues that he did not actually learn of the case until October 2021, he concedes that "this Court need not even consider" that fact. ECF 473 at 4. Actual knowledge is irrelevant; under *Stallworth*, the starting point of the delay is an ***objective*** standard based on when the prospective intervenor knew "or reasonably should have known" his interest would not be protected. *See Rotstain*, 986 F.3d at 937 (quoting *Stallworth*, 558 F.2d at 264).

But even under an actual-knowledge standard, the two-plus months it took Adler to review the court record, consult with counsel, and prepare his ten-page motion to intervene would have been too long. Timely motions to intervene are filed within days or weeks. *See id.* at 938 (collecting cases where motions filed in three weeks, one month, 37 days, and 47 days were timely). Even measured from the order closing the case, the delay here is still measured in months. This Court would be well within its discretion to deny the intervention on this basis alone. *See, e.g.*, *United States v. Covington Cnty. Sch. Dist.*, 499 F.3d 464, 465–66 (5th Cir. 2007) (15 weeks); *Engra, Inc. v. Gabel*, 958 F.2d 643, 645 (5th Cir. 1992) (8 months was "untimely as a matter of law"); *see also Hill v. Gen. Motors LLC*, 2015 WL 11117873, at *3 (N.D. Tex. Apr. 28, 2015) ("several month[s]").

**II.     There is no reason to second-guess the earlier finding of prejudice to TeamHealth.**

The second *Stallworth* factor—prejudice to the non-movant (TeamHealth)—also weighs against a finding of timeliness. This Court found as much a year ago (ECF 464 at 8), and there is no need for it to revisit its analysis, which the Fifth Circuit left undisturbed. *See* Op. 10 ("error relates to only one *Stallworth* factor"—length of delay).

This Court found that "Adler's failure to assert his purported rights to access sealed documents in a timely manner would force [TeamHealth] to relitigate issues that they justifiably

6

thought were resolved." ECF 464 at 8. TeamHealth's assumption that the issues were resolved was not based on any "erroneous interpretation of Fifth Circuit sealing law," as Adler contends. ECF 473 at 6. Instead, it was based on the fact that these issues had been "decided nearly a year prior to Adler's Motion to Intervene." ECF 464 at 8. The Court entered its first sealing orders in mid-2020 and reaffirmed them in December 2020, saying it would reconsider them only in the context of trial. But then the case settled. And the trial was canceled. And then later, the case was closed. In the meantime, no one objected to the sealing orders, and no one intervened. It was reasonable for TeamHealth to move on.

And so it did. Were these sealing issues to be revisited now, when TeamHealth's case team has all but disbanded (and any remaining team members' familiarity with the documents has waned over time), the prejudice would be compounded. This Court rightly recognized that the breadth of Adler's unsealing request—which "risks 'duplication, inefficiency, and increased costs,'" especially so long after the fact—"tip[ped] this factor toward a finding of untimeliness." *Id.* (quoting *Rotstain*, 986 F.3d at 938) ("belated request for intervention" would have necessitated second round of discovery); *see also, e.g.*, *SEC v. Tipco, Inc.*, 554 F.2d 710, 711 (5th Cir. 1977) (late motion to intervene to challenge distribution of assets would have prejudiced non-movants "by permitting full-blown development of the plan of distribution after all claims had been submitted and no objections filed"). There is no reason to disturb that finding now. This too militates against allowing intervention.

### III. *Stallworth*'s third factor assesses any prejudice to *Adler*, not to the public.

This Court also need not question its earlier finding that "Adler will suffer little, if any, prejudice if the Motion to Intervene is denied"—also part of the *Stallworth* analysis. ECF 464 at 9; Op. 10 (district court "better situated to assess . . . prejudice to the parties"). Adler's prejudice argument conflates prejudice to **the movant**—the proper query under *Stallworth*—with "the

7

public's interest in access to the court documents." *Compare* ECF 473 at 6, *with Stallworth*, 558 F.2d at 265 (third factor is "[t]he extent of the prejudice that ***the would-be intervenor*** may suffer") (emphases added). Adler all but abandons the argument that he will personally suffer prejudice (ECF 473 at 6–7), and his new declaration confirms this Court's earlier suspicion that "Adler seeks only 'general' information." *See* ECF 473-1 ¶¶ 3–5 (observing that Adler "was interested in seeing the case records unsealed . . . in service of [his] own academic research"). The Fifth Circuit's analysis of Adler's standing to intervene (*see* ECF 473 at 6) has nothing to do with the *Stallworth* inquiry into prejudice to "the would-be intervenor" himself, which for a permissive intervenor is already limited. *See Stallworth*, 558 F.2d at 265.

That said, Adler is wrong that "[t]his Court's prior analysis of this factor focused on [his] particular research interests" alone. ECF 473 at 6. Its focus was on Adler's public-interest argument as well: the Court "appreciate[d] the right of the public to access court records" but reasoned that the sealing decisions had been "best left to" its own discretion, and when those decisions were made, "Adler's interests related to sealing and confidentiality were adequately represented . . . by Relators." ECF 464 at 9; *see also Rotstain*, 986 F.3d at 939 ("If the proposed intervenors' interests are adequately represented, then the prejudice from keeping them out will be slight."). Nothing about the Fifth Circuit's opinion disturbs this finding; the court of appeals expressly declared this Court "better suited" to account for the "prior consideration" of the issues "by the court and litigants," as well as "the contents of the sealed documents" (which it knew contained contain sensitive personal health and competitive business information, *see supra* p. 5). Op. 10. This Court has firsthand knowledge of these considerations. It should not revisit its findings about the lack of prejudice to Adler himself.

8

**IV.    There are no unusual circumstances here to excuse Adler's untimeliness.**

This Court previously found the final *Stallworth* factor—"unusual circumstances" that might justify a movant's failure to intervene sooner (558 F.2d at 266)—to be "neutral." ECF 464 at 9.  But the Court is free to weigh any "ancillary considerations" and "reconsider[] . . . other unexplored reasons for denial" (Op. 10), and this is a good opportunity to do so.  Under the fourth factor, courts look at whether the prospective intervenor "ma[de] a 'convincing' showing 'that for reasons other than lack of knowledge he was unable to intervene sooner.'" *Jones v. Caddo Par. Sch. Bd.*, 735 F.2d 923, 937 (5th Cir. 1984) (quoting *Stallworth*, 558 F.2d at 266).

Adler has not made any such "convincing showing."  To the contrary, despite his previous attestations of a professional interest in this suit (ECF 443-1 ¶ 4)—and even though he was following other litigation against TeamHealth at the time[3]—Adler says in his new declaration that he "ha[s] not closely followed all litigation against Team Health" and "was not aware of [this] case until October 8, 2021." ECF 473-1 ¶ 2.  This is precisely the kind of "lack of knowledge" excuse that the Fifth Circuit has found does ***not*** justify a late intervention. *Jones*, 735 F.2d at 937.

Even now—two years on—Adler has "offered no compelling reason for waiting" to intervene.  In fact, Adler's story has changed yet again on remand.  Initially, he offered no reason at all for intervening when he did.  *See* ECF 440, 443-1, 456 (briefing and declaration in support

---

[3] *See* @LorenAdler, X (f/k/a Twitter) (July 31, 2020, 8:48 PM), https://bit.ly/3JrVare:



Loren Adler
@LorenAdler

New class action lawsuit filed against TeamHealth (one of the large PE-backed staffing firms well known for their role in surprise billing), alleging hospital and ER billing fraud.

businesswire.com/news/home/2020…

8:48 PM · Jul 31, 2020

of motion to intervene). In the Fifth Circuit, Adler implied that he was waiting for this Court to unseal the records after the case settled and was dismissed. Opening Br. 47 ("Courts routinely unseal documents after a case settles"). But Adler now admits that he was not following the case at all. ECF 473-1 ¶ 2.

Adler's evolving story is not credible. This Court can and should take the lack of a credible explanation into account. *See* Op. 10 ("The district court is better situated to assess . . . any explanations for such delay"). Whether the delay is measured from the announcement of the settlement (10 months), the order dismissing the case (6 months), or even Adler's purported "discovery" of the litigation (2 months), he waited too long—and he has no good explanation.

## CONCLUSION

As noted above, "[p]ermissive intervention is wholly discretionary and may be denied even when the requirements of Rule 24(b)"—including timeliness—"are satisfied." *Turner*, 9 F.4th at 317 (quotation omitted); Op. 10 ("reiterat[ing this C]ourt's discretion in ultimately deciding Adler's motion"). Here, though, Adler has not satisfied even the most basic requirements. Under the *Stallworth* factors, Adler's proposed intervention is untimely. For all these reasons—including the length of the delay, the prejudice to TeamHealth, the lack of prejudice to Adler personally, and the absence of any sufficient justification for the delay—permissive intervention should be denied.

Dated: October 30, 2023							Respectfully submitted,

  By:  *Michael Brett Johnson*
Thomas M. Melsheimer
Michael Brett Johnson
Chad B. Walker
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Tel: (214) 453-6500
Fax: (214) 453-6400
tmelsheimer@winston.com
mbjohnson@winston.com
cbwalker@winston.com

Linda T. Coberly
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
Tel: (312) 558-5600
Fax: (312) 558-5700
lcoberly@winston.com

Wesley Hill
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Tel: (903) 757-6400
Fax: (903) 757-2323
wh@wsfirm.com

***Counsel for Defendants Team Health Holdings Inc., Team Finance, L.L.C., Team Health Inc., AmeriTeam Services, L.L.C., HCFS Health Care Financial Services, L.L.C., and Quantum Plus, L.L.C.***

## CERTIFICATE OF SERVICE

I certify that on October 30, 2023, I electronically filed this document with the Clerk of Court using the CM/ECF system, which will automatically notify all counsel of record via email.

                                        */s/ Michael Brett Johnson*
                                        Michael Brett Johnson