# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ET AL., EX REL. CALEB HERNANDEZ & JASON WHALEY, RELATORS<br><br>*Plaintiffs*,<br><br>v.<br><br>TEAM FINANCE, L.L.C., TEAM HEALTH, INC., TEAM HEALTH HOLDINGS, INC., AMERITEAM SERVICES, L.L.C., HCFS HEALTH CARE FINANCIAL SERVICES, L.L.C., QUANTUM PLUS, L.L.C., (D/B/A TEAMHEALTH WEST),<br><br>*Defendants*, | Case No. 2:16-CV-00432-JRG |

**SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF MOTION TO INTERVENE**

## INTRODUCTION

Team Health cannot evade the fact that Adler did not even know about this case until October 2021. And even casting aside all facts specific to Adler, under the well-established law of the Fifth Circuit, it is more than reasonable for a member of the public to believe that the court will protect the public's right of access after a case settles and it becomes clear that the initial reason for sealing—to avoid trying the merits of the case in the public—no longer applies. Finally, the Fifth Circuit's decision should influence the court's analysis of all the *Stallworth* factors—not just the first factor regarding delay.

**I.** Adler has filed a sworn declaration stating that he did not even know about this case or its sealed records until October 8, 2021—approximately two months before the motions to intervene and unseal were filed. *See* Ex. A, Declaration of Loren Adler, September 14, 2023 [Doc 473-1] ¶ 1. He then diligently reviewed the court record and underlying settlement agreement, consulted with counsel, sought approval from his employer to become involved in the litigation, and worked with counsel in preparing the necessary filings. *Id.* ¶¶ 3-7. There was thus no delay in seeking to intervene for the purpose of moving to unseal court records.[1]

Team Health tries to wave this fact away by claiming that timeliness is an objective standard. *See* Team Health's Supp. Br. at 9. But *Stallworth*, as clarified by the Fifth Circuit's decision, provides that delay should be measured from the "length of time during which the would-be intervenor *actually knew or reasonably should have known*" that his interest in the case would not be protected. It is not reasonable to expect Adler to know, much less closely follow, every pending case against Team Health. Indeed, this case was not highly publicized and there was

---

[1] Team Health questions the credibility of Adler's declaration because Adler did not provide this explanation on appeal. *See* Team Health's Supp. Br. at 10. But Adler could not have done so because he was not permitted to supplement the factual record at that time.

nothing particularly newsworthy about it until it was discovered that the government settled the case for $48 million. Members of the public routinely discover their interest in accessing a court record after a case has closed and it is untenable to require members of the public to be constantly following all litigation across the country, in real time, in order to have an opportunity to vindicate their common law and First Amendment right of access to court records. And at minimum, even if Adler's lack of knowledge of the case did not change the calculation of his "delay," it is at least an "explanation[] for such delay," which the Fifth Circuit recognized as a relevant factor under *Stallworth*. *See United States ex rel Hernandez*, 80 F.4th at 579 (listing factors for the district court to consider on remand).

**II.** Nonetheless, even if members of the public are expected to follow all litigation, and even if we must ignore facts regarding Adler's actual knowledge of this case, any purported delay should be measured from around the same time period: a few months after the settlement was finalized and it became clear that the court was not going to independently assess whether all the sealed records should remain sealed. It was then, and only then, that it would be apparent to a member of the public that their "interest" in access to the court records "would no longer be protected." *United States ex rel Hernandez v. Team Fin., L.L.C.*, 80 F.4th 571, 578 (5th Cir. 2023).

Team Health argues in response that the delay should be measured from February 25, 2021 when it was first announced that the parties intended to settle the case, even though the settlement was not yet finalized. Team Health's Supp. Br. [Doc. 474] at 2. This makes little sense. The settlement could still have fallen through and then there would still have been a trial. Team Health itself states that the tentative settlement was contingent on a series of DOJ approvals that the parties had not yet received. *See id.* at 4. The stated reason for tentatively sealing the documents prior to a trial—to avoid trying the merits of the case in the media, *see* Hearing Transcript [Doc 353] at

2

25:7-13—applied until the settlement was finalized and the case was dismissed. It was only then that there was no longer any possibility of a trial.

Team Health also argues that it would be unreasonable for a member of the public to think that the court itself would reconsider its prior sealing orders after the case settled. This argument rests on two claims, neither of which are true. First, Team Health argues that the court's sealing orders were only provisional in the sense that the court would consider unsealing documents if a trial took place (but not if a trial *didn't* take place). This is an inaccurate interpretation of the record. The district court permitted the confidential documents to remain sealed pending trial because it was concerned about having the case tried in the media. *See* Hearing Transcript at 25:7-13. A desire not to create bias among the public and taint a jury pool can be a legitimate reason for provisionally sealing court records. But it logically follows that if a trial is averted, and tainting a jury pool is no longer a concern, then the court may lift its sealing order. It is thus perfectly reasonable for a member of the public to believe that these sealing orders were provisional and may be lifted once it was confirmed that no trial would take place.

And it is more than reasonable for a member of the public to interpret the district court's provisional sealing orders in this manner because that is what the law requires. The law on sealing does not treat court records that serve as the basis of dispositive motions any differently than courtroom testimony; the same high standard for sealing applies. *See Binh Hoa Le*, 990 F.3d at 421 (applying the compelling reasons standard to "judicial records"). It is thus reasonable for a member of the public like Adler to assume, in accordance with Fifth Circuit law on standing, that the district court intended to revisit its provisional sealing orders regardless of whether there was a trial or the case settled without one.

Team Health also argues that it would be unreasonable for a member of the public to think that the court would sua sponte revisit its sealing orders after a settlement because "there is no rule or practice requiring a court to reconsider an order when no one asked it to." *See* Team Health's Supp. Br. at 5. That's wrong. There is such a rule in the Fifth Circuit. In *Binh Hoa Le*, the Fifth Circuit instructed that courts must engage in "a case-by-case, 'document-by-document,' 'line-by-line' balancing of 'the public's common law right of access against the interests favoring nondisclosure'" and "articulate any reasons that would support sealing." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 418-19 (5th Cir. 2021). *And that this obligation applies even when there is "stipulated secrecy." Id.* at 421. Indeed, the Fifth Circuit explained that a court's affirmative duty to protect the right of access is especially important when the parties are mutually interested in secrecy because the judge is then the public's "only champion." *See id.* Thus, it is more than reasonable for a member of the public to believe that the court would reassess the provisional sealing orders once a case settles and the initial reason for provisional sealing dissipates.

Also, contrary to Team Health's argument, courts can and do sua sponte unseal court records. The Fifth Circuit itself has explained that "we routinely unseal documents that were sealed in the district court when those documents are used on appeal and there is no legal basis for sealing" and "we often do this sua sponte." *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 518 (5th Cir. 2022); *see also Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142-43 (2d Cir. 2004) (holding that a court may sua sponte disclose sealed summary judgment documents after the parties have filed a stipulation of dismissal) (collecting cases). District courts in this circuit have likewise recognized that "it falls to the courts, *usually sua sponte*, to undertake a case-by-case, document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure." *Baines v. City of Atlanta, Georgia*, No. 1:19-CV-0279-TWT-JSA, 2021 WL

4

2457209, at *2 (N.D. Ga. June 2, 2021) (emphasis added); *see also Trans Tool, LLC v. All State Gear Inc.*, No. SA-19-CV-1304-JKP, 2022 WL 608945, at *7 (W.D. Tex. Mar. 1, 2022) (sua sponte revisiting sealing order). Thus, even looking at this case completely divorced from Adler's particular circumstances, and assuming that members of the public have some obligation to closely follow every case in which they might have an interest in access to the court record, it was not apparent that the public's interest in access would not be protected until the settlement was finalized, the case was dismissed, and the court did not revisit its sealing orders.

**III.** Finally, Team Health is wrong that the Fifth Circuit's decision does not impact the court's analysis of the other *Stallworth* factors. The second factor—prejudice to Team Health caused by the delay—is necessarily going to be impacted by *the extent* of the delay (if there was any at all). And most importantly, the Fifth Circuit decision recognized that Adler was properly representing not just his own interest in access to court records, but the public's right of access. *Id.* at 576 (explaining Adler "seeks to represent an important public interest"). Because Adler, as the movant, represents the public, the "prejudice to the movant" factor should consider the prejudice the public will suffer if his motion to intervene is denied solely on timeliness grounds. Relatedly, the fact that Adler is representing the public interest provides an "unusual circumstance" permitting intervention. The public's right of access should not be curtailed based on circumstances that are specific to Adler.

## CONCLUSION

Accordingly, this Court should grant Adler's motion to intervene.

Date: November 6, 2023

Respectfully submitted,

/s/ Ellen Noble

5

Ellen Noble (pro hac vice)
Leah Nicholls (pro hac vice)
Public Justice
1620 L Street, NW, Suite 630
Washington, D.C. 20036
(240) 620-3645
enoble@publicjustice.net
lnicholls@publicjustice.net

Martin Woodward
Kitner Woodward PLLC
13101 Preston Road, Suite 110-3323
Dallas, TX 75240
(214) 443-4300
martin@kitnerwoodward.com

*Counsel for Movant Loren Adler*

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

/s/ Ellen Noble