IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ET AL., EX REL. CALEB HERNANDEZ & JASON WHALEY, RELATORS<br><br>*Plaintiffs*,<br><br>v.<br><br>TEAM FINANCE, L.L.C.,  TEAM HEALTH, INC.,  TEAM HEALTH HOLDINGS, INC.,  AMERITEAM SERVICES, L.L.C.,  HCFS HEALTH CARE FINANCIAL SERVICES, L.L.C., QUANTUM PLUS, L.L.C., (D/B/A TEAMHEALTH WEST),<br><br>*Defendants*. | CIVIL ACTION NO.  2:16-CV-00432-JRG |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Loren Adler's ("Adler") Motion to Intervene for the Limited Purpose of Challenging the Court's Sealing Orders (the "Motion to Intervene") (Dkt. No. 440) and Adler's Motion to Unseal Documents on Public Docket (the "Motion to Unseal") (Dkt. No. 442). Having considered the motions, supplemental briefing, and relevant authorities, the Court is of the opinion that the Motion to Intervene should be and hereby is **DENIED** for the reasons set forth herein. The Court finds that the Motion to Unseal should be and hereby is **DENIED AS MOOT**.

I. **BACKGROUND**

On April 25, 2016, Relators Dr. Caleb Hernandez and Jason Whaley (together, "Relators" or "Plaintiffs") filed this case against Defendants Team Finance, L.L.C., Team Health, Inc., Team Health Holdings, Inc., Ameriteam Services, L.L.C., HCFS Health Care Financial Services, L.L.C., and Quantum Plus, L.L.C. (collectively, "Team Health" or "Defendants") pursuant to the *qui tam*

1

provisions of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (Dkt. No. 2.) On June 28, 2018, the United States filed its Notice of Election to Decline Intervention. (Dkt. No. 20.) On July 2, 2018, the Court entered an order unsealing the case and ordering Relators to serve their complaint on Defendants. (Dkt. No. 21.) After lengthy litigation, and on the eve of trial, Relators and Defendants (the "Parties") filed a Joint Motion to Stay All Deadlines and Notice of Settlement. (Dkt. No. 423.) On June 25, 2021, the Court accepted and acknowledged the Parties' Stipulation of Dismissal and closed the case, noting that the Court retained jurisdiction for the purpose of enforcing the settlement agreement between the Parties. (Dkt. No. 439.)

On December 14, 2021, Adler moved to intervene "for the limited purpose of seeking public access to records sealed in this matter." (Dkt. No. 440 at 2; Dkt. No. 442.) Adler identifies himself as Associate Director of the USC-Brookings Schaeffer Initiative for Health Policy, where he "focus[es] on a range of topics related to health care economics and policy . . . ." (Dkt. No. 440 at 3; Dkt. No. 443-1 at ¶ 1.) Adler purports to "stud[y] and publish[] extensively on TeamHealth" and "believes that the information in this case would be highly informative to his work . . . ." (Dkt. No. 440 at 4.)

The Court originally denied Adler's Motion on October 28, 2022 on three independent grounds: (1) that Adler lacked standing, (2) that Adler failed to demonstrate "a claim or defense that shares with the main action a common question of law or fact," and (3) that Adler's motion was not timely. (Dkt. No. 464.) Adler appealed the Court's denial to the Fifth Circuit.

On appeal, the Fifth Circuit reversed this Court on the first two grounds, finding that "Adler has satisfied standing to bring his motion to intervene in this otherwise closed matter" and "Adler's claim shares a common question of law with the district court's decision related to sealing records." (Dkt. No. 471-1 at 6.) The Fifth Circuit did not opine whether Adler's motion was or was not

timely. Instead, the Fifth Circuit found that this Court applied an incorrect measurement as to the length of Adler's delay, being the first of four factors laid out in the Fifth Circuit's opinion in *Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir. 1977). This Court originally measured Adler's delay as the time between Adler's general awareness of the case and the filing of his petition. (Dkt. No. 464 at 7). Specifically, the Court observed when the protective order was entered (2.5 years from Adler's petition), when the information Adler sought was sealed (18 months from Adler's petition), Adler's online activity following the Team Health litigation (2 years from Adler's petition), and when the Court unsealed this case (3 years from Adler's petition). The Court found that 1.5 to 2.5 years was the length of delay between the time when Adler "should have known" of his interest and the time when he filed the petition. The Court found that this length of time "weigh[ed] strongly against timeliness." (Dkt. No. 464 at 8.)

The Fifth Circuit found that this Court applied the wrong standard for measuring the length of Adler's delay. Specifically, the Fifth Circuit explained that the length of delay under the first *Stallworth* factor is correctly measured from the moment that the prospective intervenor knew that his interest would "no longer be protected," not his general awareness of the case. (Dkt. No. 471-1 at 9) (quoting *Stallworth*, 558 F.2d at 264). The Fifth Circuit explained:

> A nonparty movant's awareness of a case's ***existence*** says little about whether their interests are protected. ***A court must also look to the actions of the litigants***. For example, it would be error to measure the length of delay solely from the parties' motions regarding sealing—***a court would need to observe that the parties were complacent or non-adversarial*** as to not protect the interests of potential intervenors. In this case, Adler's interests were protected by the Relators' litigation of the protective orders and confidentiality designations.

(*Id.*) (emphasis added).

The Fifth Circuit reversed this Court's order and "remand[ed] [the motion] for reconsideration of timeliness and other unexplored reasons for denial." (*Id.* at 10.) However, in doing so, the Fifth Circuit acknowledged again "the district court's discretion in ultimately

3

deciding Adler's motion. The district court is better situated to assess the exact length of Adler's delay, any explanations for such delay, and prejudice to the parties—along with ancillary considerations such as the contents of the sealed documents, prior considerations by the court and litigants, and the tentative nature of the court's evidentiary rulings in light of an upcoming, but ultimately averted trial." (*Id.*)

After the Fifth Circuit remanded the case, this Court ordered the parties to "file updated briefs in light of the Fifth Circuit's opinion and address its effect on this Court's analysis and decision regarding Mr. Adler's Motion to Intervene." (Dkt. No. 472.) The Court directed that the supplemental briefs should "address whether Mr. Adler's Motion to Intervene is timely under the four Stallworth factors given the Fifth Circuit's articulation of the first factor: delay." (*Id.*)

## II. LEGAL STANDARD

Courts may permit intervention in a civil action on an applicant's timely motion if the applicant: "(A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). A threshold issue regarding an applicant's motion to intervene, whether as of right under Rule 24(a) or permissively under either prong of Rule 24(b), is that the application must be timely. *Nat'l Ass'n for Advancement of Colored People v. New York*, 413 U.S. 345, 365 (1973). Timeliness under the permissive intervention standard is evaluated more strictly than under mandatory intervention. *Stallworth*, 558 F.2d at 266; *see also Rotstain v. Mendez*, 986 F.3d 931, 942 (5th Cir. 2021).

"[T]imeliness is not limited to chronological considerations but 'is to be determined from all the circumstances.'" *Stallworth*, 558 F.2d at 263. The Fifth Circuit "assesses [timeliness] through the factors set forth in *Stallworth v. Monsanto Co.*: (1) the length of time the movant waited to file, (2) the prejudice to the existing parties from any delay, (3) the prejudice to the

4

movant if the intervention is denied, and (4) any unusual circumstances." (Dkt. No. 471-1 at 8-9) (citing 558 F.2d 257).

Further, "[p]ermissive intervention is 'wholly discretionary' and may be denied even when the requirements of Rule 24(b) are satisfied." *Turner v. Cincinnati Ins. Co.*, 9 F.4th 300, 317 (5th Cir. 2021) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 471–72 (5th Cir. 1984)).

### III.  DISCUSSION

#### 1.  The length of delay

As a preliminary matter, the Court reaffirms its findings that Adler reasonably should have been aware of the case in general anywhere from 1.5 to 2.5 years prior to the filing of his petition. The Fifth Circuit did not disturb the merits of this finding. Rather, the Fifth Circuit indicated that Adler's general awareness of the case was not the appropriate starting point by which to measure Adler's delay. This finding is relevant because it sets boundaries for determining what "actions of the litigants" Adler was or should have been aware of to put him on notice that the litigants became non-adversarial and complacent as to his interests. (Dkt. No. 471-1.) As the Fifth Circuit explained, "[a] court must . . . look to the actions of the litigants" and determine "the moment that the prospective intervenor knew that his interest would 'no longer be protected.'" (*Id.*) Of course, an intervenor cannot reasonably be aware of "the actions of the litigants" prior to the moment he reasonably should have been aware of the case in general. Thus, the moment Adler should have been generally aware of the case informs what "actions of the litigants" Adler could have observed that "reasonably should have"[1] put Adler on notice that his rights would no longer be protected.

---

[1] The Fifth Circuit in *Stallworth* stated that the first factor was "[t]he length of time during which the would-be intervenor ***actually [knew] or reasonably should have known*** of his interest in the case before he petitioned for leave to intervene." 558 F.2d at 264. The Fifth Circuit in *Stallworth* articulated that "[a]ctual knowledge is not required" for the first factor. *Id*. In the remand order, the Fifth Circuit omits "or reasonably should have known." (*See* Dkt. No. 471-1.) However, this Court does not interpret such omission to be a narrowing this *Stallworth* factor. In the remand order

5

Further, although the Fifth Circuit instructed that this Court must observe "the actions of the litigants," the Court finds that consideration of the Court's actions—in addition to the actions of the litigants—would be appropriate in this case given that the specific interest to be protected here is the right of public access. As Adler and the Fifth Circuit put it, "[w]hen it comes to protecting the right of access, the judge is the principal champion." (Dkt. No. 473 at 3) (citing *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 421 (5th Cir. 2021)).

Having found that Adler reasonably should have known generally of the case anywhere from 1.5 to 2.5 years prior to the filing of the petition, the Court now looks to the actions of the litigants and the Court to determine when Adler knew or reasonably should have known "that [his] interests would no longer be protected." *Stallworth*, 558 F.2d at 264 (internal quotations omitted).

Adler argues that it was not apparent that his interest would go unprotected until "months" after the case settled when the Court left the sealing orders in place. (Dkt. No. 473 at 3.) In other words, the earliest date that could start the clock on his delay is the date when it became known to non-litigants that the parties "finally reached settlement." (*Id.*) That would be in of June 2021.[2] Adler argues that "it was not until months after the settlement—when it was apparent that this Court was not going to further interrogate the sealing of the court records." (*Id.* at 4.) Further, Adler has now filed a declaration with his supplement brief stating that he was first made aware of the underlying case and settlement on October 8, 2021. (*Id.* at 4.) Adler admits that the Court need not consider when Adler actually learned of the sealed records. (*Id.* at 4.) However, this fact places Adler's proposed length of delay somewhere between two and six months. Adler does not

---

for this case, the Fifth Circuit does not purport to cabin or limit the test from *Stallworth*, but rather faithfully apply it. Absent a clear indication that the Fifth Circuit intends to reverse itself, the Court finds that it is appropriate to consider when Adler knew "or ***reasonably should have known*** of his interest in the case," and that "[a]ctual knowledge is not required." *Stallworth*, 558 F.2d at 264.

[2] Adler does not provide a specific date. However, based on Adler's articulation, the Court concludes that his position on the date the parties "finally reached settlement" refers to the final notice of settlement in June 2021 and not the first notice of settlement in principle in February of 2021.

6

provide any specific dates, nor does he explain how long after the settlement he reasonably should have known that his interests would not be protected beyond his broad statement that it would have been "months after the settlement." (*Id.*)

Adler argues that, in context, it was reasonable for him to wait "months" after the settlement to move to intervene and unseal. Specifically, Adler argues that the documents "were (***improperly***) ***provisionally*** sealed pursuant to a protective order so as not to delay ongoing litigation." (*Id.* at 3) (emphasis added.) He argues that "courts routinely exercise their independent duty to protect the public's right of access after the case settles," and he contends that it was the Court's silence months after the litigation concluded that indicated his interests would not be protected. (*Id.*) Again, Adler does not provide a specific date or indicate how many "months" he reasonably should have waited for the Court to act *sua sponte* before reasonably concluding that his interests would go unprotected.

Team Health argues that Adler should have known that his interests would not be protected—by the parties or by the Court—as of February 25, 2021, when the parties ***first*** announced that they had reached a settlement in their Joint Motion to Stay All Deadlines and Notice of Settlement (Dkt. No. 423). (Dkt. No. 474 at 2.) It was on this date, Team Health argues, that the parties "put the public on notice that the scheduled trial would not happen and that the parties would be 'complacent or non-adversarial' with respect to sealing issues." (*Id.*) This would put Adler's delay at almost ten months.

Team Health disagrees that the context excuses Adler's delay, and it argues that Adler's delay is "particularly dramatic in context." (*Id.*) Team Health argues that the Court did not "***improperly***" and "***provisionally***" order the sealing of documents. Rather, throughout 2020 dozens of sealing orders were filed in this case, and Relators sought to make many of the documents public

7

by challenging their confidentiality designations. At a December 2020 hearing, this Court upheld the designations with the caveat that the sealing orders could be reconsidered later in the context of trial. (*Id.*) Team Health argues that it is far from "routine" for a court to reverse its own orders *sua sponte* and unseal documents following a settlement, and it was therefore unreasonable for Adler to continue to wait for the Court to act *sua sponte* while the parties were finalizing the settlement. (*Id.*)

The Court agrees with Team Health. On February 25, 2021, the day the parties publically announced their settlement, Adler should have known the parties had become "complacent or non-adversarial" to his interests. Adler provides no compelling reason why he should have expected the litigants to reopen the issue of confidentiality designations after reaching a settlement. Indeed, his arguments largely do not relate to the "actions of the litigants," but instead they relate to the actions—or lack thereof—by the Court. The Fifth Circuit instructed that this Court was to observe the "actions of the litigants" to determine when the parties became complacent or non-adversarial as to Adler's interest. Yet, Adler devotes very little argument to the actions of the parties beyond stating that his delay should be counted from some vague number of "months" after the parties finally announced their settlement. Further, Adler provides no compelling reason why his delay should be counted from the parties' final settlement in June 2021 as opposed to their initial announcement of a settlement in principle in February 2021. Indeed, the announcement that all matters had been settled in principle in February 2021 should have reasonably put Adler on notice that the parties were thereafter non-adversarial and complacent to all pending issues in the litigation, including issues related to the confidentiality designations.

Even when looking to the actions by the Court, Adler still reasonably should have known that the documents would not be unsealed as of February 25, 2021.

First, Adler's argument that the Court "improperly" sealed the documents goes to the merits of his Motion to Unseal. The Court will not decide the merits of Adler's Motion to Unseal unless Adler can show that intervention is proper. Further, the issue of whether the sealing was "improper" was already litigated by the parties in this case, and having considered the parties' arguments the Court found that sealing was proper. (Dkt. No. 353 at 32:7-13.)

Second, Adler's appeal to the "provisional[]" nature of the Court's sealing is unavailing as an excuse for his failure to intervene sooner. Adler argues that he could not have reasonably known that his interests would not be protected unless he sat idly by for "months" waiting for the Court to act *sua sponte* to overturn one of its own orders. The Court provided **one** caveat in which the sealing could be readdressed: assessing whether such documents could be used in an open trial on the merits. (*Id.*) The Court did not give any indication that it intended to unseal the documents in any other context, and it did not indicate or even hint at any intention to unseal the documents *sua sponte* at some later date. It is not the practice of many trial courts, including this Court, to *sua sponte* reverse its own orders sealing documents with confidential information, especially when the propriety of the confidentiality designations has already been litigated at length by the parties. Adler has offered nothing to show that such a practice is "routine" or that it would be reasonable for a person to assume that this would have occurred in a case like this. When it became apparent that no "trial on the merits" would occur, Adler should have known that neither the parties nor the Court would automatically pursue the unsealing of the documents. The moment of this transition was February 25, 2021, when the parties moved to stay all deadlines and announced that a settlement in principle had been reached.

On February 25, 2021, the parties announced their intention that they would no longer be having a "trial of the merits." Adler should have been aware that his interests would no longer be protected from this moment. Adler delayed approximately ten months from that moment until the filing of his petition. This delay weighs against timeliness. *See, e.g.*, *United States v. Covington Cnty. Sch. Dist.*, 499 F.3d 464, 465–66 (5th Cir. 2007) (finding 15 weeks to be untimely); *Engra, Inc. v. Gabel*, 958 F.2d 643, 645 (5th Cir. 1992) (finding 8 months to be untimely); *United States v. U.S. Steel Corp.*, 548 F.2d 1232, 1235 (5th Cir. 1977) (finding "almost a year" to be untimely); *see also Hill*, 2015 WL 11117873, at *3 (finding "several month delay" to be untimely).

Adler's excuse for delay—that he needed to silently wait "months" before the Court's silence indicated that it would not unseal the documents—is unpersuasive. Again, the Court affirmed at the protective motion hearing that the sealing was proper due to "an underlying element of confidentiality." (Dkt. No. 353 at 32:8.) It is not reasonable under these facts to wait for some undisclosed number of "months" to pass after a public settlement is announced to see if the Court will act of its own initiative, especially when the Court has explicitly stated during litigation that the only context in which it will readdress the confidentiality designations is in regard to a "trial of the merits."

Finally, although Adler argues that he first became aware of the sealed records on October 8, 2021, as Adler himself admits, the "Court need not even consider additional facts of when Adler first learned of the sealed court records." (Dkt. No. 473 at 4.) The test for the first *Stallworth* factor is whether the "intervenor ***actually [knew] or reasonably should have known***" that his interests would not be protected. 558 F.2d at 264. "Actual knowledge is not required." *Id.* The Court finds that even if Adler actually first learned that his interests were no longer protected just two months prior to his petition, he ***reasonably should have known*** that his interest would not be protected ten

months prior to his petition. This finding weighs against the timeliness of his motion. However, as explained by the Fifth Circuit, "timeliness is not limited to chronological considerations but 'is to be determined from all the circumstances.'" *Stallworth*, 558 F.2d at 263. While this factor weighs against timeliness, it is the totality fo the circumstances that ultimately makes Adler's Motion to Intervene untimely in the trial Court's view.

### 2.    The prejudice to the existing parties

On the original briefing for Adler's Motion to Intervene this Court found:

> Under the second *Stallworth* factor, the prejudice to the existing parties, including Defendants, caused by Alder's delay also weighs against a finding of timeliness. Adler's failure to assert his purported rights to access sealed documents in a timely manner would force Defendants to relitigate issues that they justifiably thought were resolved, including Defendants' Motions for Protection Regarding Confidentiality Designations (Dkt. Nos. 263, 327), which were decided nearly a year prior to Adler's Motion to Intervene.  *See Engra*, 958 F.2d at 645.  Adler's broad request for all sealed documents in the case (*see* Dkt. No. 442 at 3, 15) also tips this factor toward a finding of untimeliness, as the breadth of the request risks "duplication, inefficiency, and increased costs." *Rotstain*, 986 F.3d at 938.  Adler's arguments regarding prejudice to TeamHealth, relying on out-of-circuit authority (Dkt. No. 456 at 4), are unavailing.

(Dkt. No. 464 at 8.)

The Fifth Circuit did not disturb this finding. Nonetheless, Adler again argues that there is no prejudice to the existing parties because "there was no meaningful delay." (Dkt. No. 473 at 5.) Adler argues that "[t]he relevant prejudice is that created by the intervenor's delay in seeking to intervene" and "not prejudice to existing parties if intervention is allowed." (*Id.*) (quoting *Ford v. City of Huntsville*, 242 F.3d 235, 240 (5th Cir. 2001)). However, even when considering prejudice caused by intervention (as opposed to delay), Adler contends that Team Health's alleged prejudice rests on an erroneous interpretation of Fifth Circuit caselaw. Specifically, Adler contends that the Fifth Circuit requires "a case-by-case, 'document-by-document,' 'line-by-line' balancing of the 'public's common law right of access against the interests favoring nondisclosure'" and requires

11

courts to "articulate any reasons that would support sealing." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410 (5th Cir. 2021). According to Adler, no such analysis took place, and thus Team Health cannot claim prejudice in "revisit[ing] the issue." (Dkt. No. 473 at 5.)

Team Health argues that there is no reason to second-guess the Court's earlier finding of prejudice to Team Health given that the Fifth Circuit left it undisturbed. (Dkt. No. 474 at 6.) Team Health points out that this Court found "Adler's failure to assert his purported rights to access sealed documents in a timely manner would force [Team Health] to relitigate issues that they justifiably thought were resolved." (*Id.* at 7) (quoting Dkt. No. 464 at 8.) Team Health argues that this assumption was not based on any "erroneous interpretation of Fifth Circuit sealing law," as Adler suggests, but rather it was based on the fact that the confidentiality issues had been "decided nearly a year prior to Adler's Motion to Intervene." (*Id.*) (quoting Dkt. No. 464 at 8.) Team Health argues:

> The Court entered its first sealing orders in mid-2020 and reaffirmed them in December 2020, saying it would reconsider them only in the context of trial. But then the case settled. And the trial was canceled. And then later, the case was closed. In the meantime, no one objected to the sealing orders, and no one intervened. It was reasonable for TeamHealth to move on. And so it did.

(Dkt. No. 474 at 7.)

The Court agrees with Team Health. When parties settle a case, they do not expect to get pulled back into that same case many months later after all business has been concluded, the parties have made their peace, and their respective trial teams have disbanded and moved on. Familiarity with a case wanes over time. There is a six month gap between the final settlement of the parties and Adler's motion requesting the parties regroup fight a "document-by-document" and "line-by-line" confidentiality issue that they already fought through, had been ruled on, and they reasonably thought was over. That six month gap is a direct result of Adler's ten month delay. Had Adler intervened when he should have known his interest would not be protected, his motion could have

been filed four months before the final settlement, when knowledge surrounding the relevant documents was fresh. This does not count the financial costs to the parties and the value of the Court's time in returning to this issue which Adler had allowed to go stale.

The Court disagrees with Adler's contention that the sealing of the documents was never fully visited. The Court first entered its sealing orders in 2020 and reaffirmed them in the December 2020 hearing. The Court gave both parties an opportunity to argue the basis for sealing or unsealing on a "document-by-document" and "line-by-line" basis. The parties did. Team Health provided the Court with charts analyzing the basis for the confidentiality designations on a "document-by-document" basis. (*See e.g.,* Dkt. No. 263-5); (Dkt. No. 284-5) (redacted in full). The charts also provided, on a "line-by-line" basis, sections of transcripts that Team Health contended gave rise to the confidentiality designations. (*Id.*) Relators provided specific documents to the Court filed under seal and invited the Court to examine the specific documents at the December 2020 hearing. (*See e.g.*, Dkt. No. 309); (Dkt. No. 343); (Dkt. No. 353 at 26:10-22). The Court considered the record and granted the relief that Team Health requested and articulated why sealing was proper to protect confidential information in the documents. (Dkt. No. 353 at 32.) Adler's contention that this Court never performed a complete analysis of the confidentiality of the documents at issue is belied by the record. The parties extensively litigated the issue of the confidentiality designations, and the Court intently examined the issue in advance of its rulings.

Adler's delay in filing his petition creates a six month window between the disbanding of the case and the parties being pulled back in to fight confidentiality issues that they reasonably believed had been put to rest. This is prejudice was "created by [Adler's] delay in seeking to intervene." *See Ford*, 242 F.3d at 240. Had Adler moved to intervene when he reasonably should have known that his interest would no longer be protected, the Court may have been able to address

13

such issues while the parties' knowledge and participation in the case was ongoing. Instead, Adler moved half a year after the parties had put the case behind them. Such is prejudicial, and it weighs against the timeliness of Adler's intervention.

### 3. The prejudice to the movant if intervention is denied

On the original briefing for Adler's Motion to Intervene this Court found:

> Under the third *Stallworth* factor, the Court finds that Adler will suffer little, if any, prejudice if the Motion to Intervene is denied. Adler complains that he and the public will be prejudiced if they are denied access to the sealed records in this case because "how and how much TeamHealth bills the federal government is central to his research into health care pricing, and he cannot get the information from any other source." (Dkt. No. 456 at 5.) The Court appreciates the right of the public to access court records, but the decision to seal or unseal records is best left to the trial court "in light of the relevant facts and circumstances of the particular case." *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 450 (5th Cir. 2019). Adler's interests related to sealing and confidentiality were adequately represented earlier in this case by Relators, and to the extent Adler seeks only "general" information, that information could be sought elsewhere, without unsealing.

(Dkt. No. 464 at 9.)

Adler argues that the Fifth Circuit's remand order sheds new light on this analysis. Specifically, Adler argues that the "Court's prior analysis of this factor focused on Adler's particular research interests, but the Fifth Circuit's analysis—when discussing why Adler had standing to intervene—recognized that Adler is properly representing the public's interest in access to the court documents." (Dkt. No. 473 at 6.) The remainder of Adler's arguments are devoted to the prejudice to the public in general if Adler's intervention is denied.

Team Health argues that the Court need not disturb its prior findings. (Dkt. No. 474 at 7.) Team Health argues that the proper query under *Stallworth* is the prejudice visited upon the ***movant***, not the prejudice to the general public. (*Id.* at 8.) Nonetheless, Team Health points out that the Court's original decision did, in fact, consider Adler's public-interest arguments. (*Id.*) Specifically, the Court stated that it "appreciate[d] the right of the public to access court records"

but reasoned that the sealing decision had been "best left to" its own discretion, and when those decisions were made, "Adler's interests related to sealing and confidentiality were adequately represented . . . by Relators." (*Id.*) (quoting Dkt. No. 464 at 9.)

The Court agrees with Team Health. The Fifth Circuit's explanation of this factor in *Stallworth* is helpful:

> Factor 3. The extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied. . . . The basis for this factor is the rule, first announced by this court in *Diaz* and *Lavino*, that the district court should apply a more lenient standard of timeliness if the would-be intervenor qualifies for intervention under section (a) than if he qualifies for intervention under section (b). The rule arose out of a concern that a section (a) intervenor "may be seriously harmed if he is not permitted to intervene." . . . Restating the rule in this fashion makes explicit its implicit foundation and permits varying degrees of harm among intervenors of the same type to be taken into consideration.

*Stallworth*, 558 F.2d at 266 (quoting *McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1073 (5th Cir. 1970)). This factor contemplates whether the "***intervenor*** 'may be seriously harmed,'" if his intervention is denied. The Fifth Circuit clearly explained that qualification for intervention under section (a) versus section (b) is relevant. (*Id.*) Section (a) intervenors have a more personal stake and are in greater threat of being "seriously harmed" if their intervention is denied.

Adler qualifies for intervention under section (b). While this is not dispositive, it is worth noting. Adler is not the type of intervenor that this factor was originally designed to protect. Adler will suffer little, if any, prejudice if the Motion to Intervene is denied.

In light of the Fifth Circuit's explanation regarding the third *Stallworth* factor, the Court is not convinced that the prejudice to the public—rather than Adler himself—is the pertinent inquiry. Such is more appropriately considered under the ancillary considerations of the fourth factor. Indeed, Adler argues that his representation of the public's right to access is a basis for granting his motion to intervene under both the third and fourth *Stallworth* factor. The Court finds it would be inappropriate to give this fact undue weight by counting it twice. Further, in the remand order,

15

the Fifth Circuit articulated that this factor concerns prejudice to the "movant." (Dkt. No. 471-1 at 8-9.) Nonetheless, the Court considered the prejudice to the public in originally denying Adler's Motion to Intervene. (Dkt. No. 464 at 9) ("The Court appreciates the right of the public to access court records"). The Court also considered such harm in originally sealing the documents.

The Fifth Circuit makes it plain that the prejudice to the "movant" is the relevant inquiry under this factor. (*See* Dkt. No. 471-1 at 8-9.) The Court reaffirms its finding that Adler will suffer little, if any, harm—which weighs against timeliness.

### 4.    Any unusual circumstances

On the original briefing for Adler's motion this Court found:

> Under the fourth *Stallworth* factor, Adler has not made a convincing showing of any unusual circumstances that militate in favor of a determination of timeliness. Likewise, Defendants argue that this case is "arguably 'unusual' only in that it was a FCA case brought on behalf of the United States, which was also a party to the settlement and stipulated dismissal." (Dkt. No. 450 at 7.) The Court finds that there are no unusual circumstances militating for or against timeliness, and thus this factor is neutral.

The Fifth Circuit did not disturb this finding. Nonetheless, Adler argues that the Fifth Circuit's recognition that he was representing the public's right of access to court records—not just his own personal interest—"creates an unusual circumstance that militates in favor of permitting intervention." (Dkt. No. 473 at 7.) Adler argues that "even if this Court concluded . . . that Adler could have acted more promptly in intervening, it does not make sense to deny the *public* its right of access for circumstances that are particular to Adler." (*Id.* at 8.)

Team Health argues that although the Court previously found this factor to be neutral, the Court should now find that the ancillary considerations weigh against Adler's intervention. (Dkt. No. 474 at 9.) Specifically, Team Health argues that under the fourth factor, courts look at whether the prospective intervenor "ma[de] a 'convincing' showing 'that for reasons other than lack of knowledge he was unable to intervene sooner.'" (*Id.*) Team Health argues that Adler has not made

16

a "convincing showing," but instead has changed his story since the remand. According to Team Health, Adler (1) originally offered no reason for intervening when he did, (2) implied at the Fifth Circuit that he was waiting for this Court to unseal the records after the case settled, and (3) now contends that he was not following the case at all until October 2021. (*Id.* at 9-10.) Team Health argues that the reduction in Adler's credibility given his changing story should weigh against him on this factor.

The Fifth Circuit invited this Court to re-address "ancillary considerations such as the contents of the sealed documents, prior consideration by the court and litigants, and the tentative nature of the court's evidentiary rulings in light of an upcoming, but ultimately averted trial." (Dkt. No. 471-1 at 10.) The contents of the sealed documents are the private health information of individuals and proprietary business information. The private health information of individuals is the type of information that remains highly sensitive indefinitely. Proprietary business information also warrants protection. The Court took these facts into account when it extensively litigated the issue of the confidentiality designations throughout the course of this case, and ultimately determined that the documents should be sealed. Adler is not the only one in this case who has represented the public's interest. Relators fought the confidentiality designations in this case, and the Court considered the interests of the public when deciding to seal the documents. The issue was litigated at length. While Adler now waves the flag of public interest, his absence from the case does not leave the public's interests unaddressed or undefended. The Court is not persuaded that Adler's identified ancillary consideration tips the analysis to now make his motion timely.

When viewing all four *Stallworth* factors and the totality of the circumstances, the Court finds that Adler's Motion to Intervene was not timely.

### 5. Additional Observations

The Court finds that Adler's Motion was not timely when considering the totality of the circumstances and when analyzing the four *Stallworth* factors. However, even if Adler's motion were to be found timely "[p]ermissive intervention is wholly discretionary and may be denied even when the requirements of Rule 24(b)"—including timeliness—"are satisfied," *Turner*, 9 F.4th at 317, and under such heightened discretion the Court would still deny Adler's motion.

Adler purports to "stud[y] and publish[] extensively on TeamHealth" and "believes that the information in this case would be highly informative to his work . . . ."  (Dkt. No. 440 at 4.) "The Judicial Branch belongs to the American people," which is why public access is important to uphold faith in our justice system. *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 421 (5th Cir. 2021). However, also important in upholding faith in the justice system is the assurance to litigants that their confidential information, and the confidential and highly personal information of their clients, will not be handed out to everyone who believes their own professional interests might benefit. These competing interests, the protection of confidentiality and the public's right to access often stand in direct opposition to each other. The Court must strike a fair balance after considering both interests as it strives to uphold the public's faith in our justice system.

The Court finds on balance under the particular circumstances of this case, that Adler's intervention should be denied. Adler seeks to reopen this case, months after the parties have disbanded and memory of the case has faded. He does not do so to relitigate any issue concerning the merits of the case, but to litigate an evidentiary issue regarding confidentiality designations. He does so even after the parties extensively litigated this very issue while familiarity with the case was active and fresh. He does so even though he could likely find the same or similar information from other sources. While the Court exists to serve the public, it is not a public library.

## IV.  CONCLUSION

After careful consideration of the record, the parties' supplemental briefing, and the Fifth Circuit's remand, and based on the foregoing reasons and analysis, the Court **DENIES** Adler's Motion to Intervene (Dkt. No. 440). Since Adler has not successfully intervened in this matter, the Court **DENIES AS MOOT** Adler's Motion to Unseal. (Dkt. No. 442.)

**So ORDERED and SIGNED this 15th day of March, 2024.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE